IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FEBIT HOLDING GMBH,                    )
                                        )
                  Plaintiff,            )
                                        )
        v.                              )    C.A. No. 07-385 (GMS)
                                        )
CODON DEVICES, INC.,                    )
                                        )
                  Defendant.            )

**DECLARATION OF RIP FINST IN SUPPORT OF CODON DEVICES, INC.'S
MOTION TO DISMISS FEBIT BIOTECH GMBH'S COMPLAINT
OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

I, Rip Finst, declare:

1.      I am an attorney admitted *pro hac vice* to practice in the United States

District Court for the District of Delaware, and am an associate at Weil, Gotshal & Manges

L.L.P., attorneys of record for Defendant Codon Devices, Inc. ("Codon").    The matters referred

to in this declaration are based on my personal knowledge and if called as a witness I could, and

would, testify competently to those matters.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Complaint

(D.I. 1) and Exhibit A (United States Patent No. 6,586,211) thereto filed by febit biotech GmbH

against Codon on June 15, 2007 in *febit biotech GmbH v. Codon Devices, Inc.,* Civil Action No.

07-385 (D. Del.).

3.      Attached hereto as Exhibit 2 is a true and correct copy of the Report On

The Filing Or Determination Of An Action Regarding A Patent Or Trademark (D.I. 4) filed on

June 15, 2007, in *febit biotech GmbH v. Codon Devices, Inc.*, Civil Action No. 07-385 (D. Del.).

4.      Attached hereto as Exhibit 3 is a true and correct copy of an email dated

July 24, 2007 from Rip Finst to Mark Evens.

5.      Attached hereto as Exhibit 4 is a true and correct copy of an email dated

July 27, 2007 from Rip Finst to Mark Evens.

6.    Attached hereto as Exhibit 5 is a true and correct copy of an email and accompanying letter, without attachments, dated July 31, 2007 from Mark Evens to Edward Reines.

7.    Attached hereto as Exhibit 6 is a true and correct copy of a letter dated August 1, 2007 from Rip Finst to Mark Evens.

8.    Attached hereto as Exhibit 7 is a true and correct copy of a letter dated August 8, 2007 from Rip Finst to Mark Evens.

9.    Attached hereto as Exhibit 8 is a true and correct copy of an email dated August 8, 2007 from Mark Evens to Rip Finst.

10.    Attached hereto as Exhibit 9 is a true and correct copy of a letter dated August 15, 2007 from Rip Finst to Mark Evens.

11.    Attached hereto as Exhibit 10 is a true and correct copy of an email dated August 15, 2007 from Mark Evens to Rip Finst.

12.    Attached hereto as Exhibit 11 is a true and correct copy of an email dated August 17, 2007 from Rip Finst to Mark Evens.

13.    Attached hereto as Exhibit 12 is a true and correct copy of an email dated August 24, 2007 from Rip Finst to Mark Evens.

14.    Attached hereto as Exhibit 13 is a true and correct copy of an email dated August 27, 2007 from Mark Evens to Rip Finst.

15.    Attached hereto as Exhibit 14 is a true and correct copy of an email dated September 5, 2007 from Mark Evens to Edward Reines.

16.    Attached hereto as Exhibit 15 is a true and correct copy of an email dated September 18, 2007 from Mark Evens to Rip Finst.

17.    Attached hereto as Exhibit 16 is a true and correct copy of an email and accompanying letter, without attachments, dated September 19, 2007 from Mark Evens to Edward Reines.

18.     Attached hereto as Exhibit 17 is a true and correct copy of an email, without attachments, dated September 28, 2007 from Mark Evens to E. Reines.

19.     Attached hereto as Exhibit 18 is a true and correct copy of Codon's Complaint for Declaratory Judgment filed in the United States District Court in the District of Columbia against febit biotech GmbH, Febit Ferrarius Biotechnology GmbH and febit, GmbH filed on June 29, 2007, *Codon Devices, Inc. v. febit biotech GmbH, Febit Ferrarius Biotechnology, GmbH, and Febit, Inc.*, Case No. 1:07-cv-01177 RBW.

20.     Attached hereto as Exhibit 19 is a true and correct copy of 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004).

21.     Attached hereto as Exhibit 20 is a true and correct copy of 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed. 2004).

22.     Attached hereto as Exhibit 21 is a true and correct copy of *UD Tech. Corp. v. Phenomenex, Inc.*, C.A. No. 05-842-GMS, 2007 WL 28295 (D. Del. Jan. 4, 2007).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 1, 2007 at Redwood Shores, California.


*/s/ Rip Finst*
Rip Finst

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on October 1, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Mary Matterer, Esquire
> MORRIS JAMES

I also certify that copies were caused to be served on October 1, 2007 upon the following in the manner indicated:

**BY ELECTRONIC MAIL
and HAND DELIVERY**

Mary Matterer, Esquire
MORRIS JAMES
500 Delaware Avenue
Suite 1500
Wilmington, DE    19801

**BY ELECTRONIC MAIL
and FIRST CLASS MAIL**

Mark Fox Evens, Esquire
Edward J. Kessler, Esquire
W. Blake Coblentz, Esquire
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1100 New York Avenue, NW
Washington, DC    20005-3934

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FEBIT BIOTECH GMBH,
IM Neuenheimer Feld 519,
69120 Heidelberg, Germany

                             Plaintiff,

v.

CODON DEVICES, INC.,
One Kendall Square,
Building 300, Third Floor,
Cambridge, MA 02139

                            Defendant.

Civil Action No.:

**JURY TRIAL DEMANDED**

### COMPLAINT

      Plaintiff febit biotech GmbH (hereinafter "febit"), through its undersigned attorneys, as and for its Complaint against Defendant Codon Devices, Inc. (hereinafter "Codon Devices"), alleges as follows:

### NATURE OF THE ACTION

      1.     This is an action arising under the patent laws of the United States (35 U.S.C. §§ 271 et seq.) based upon Defendant Codon Devices' infringement of U.S. Patent No. 6,586,211 B1 entitled "Method for Producing Polymers."

### THE PARTIES

      2.     Plaintiff febit is a German corporation having its principal place of business at IM Neuenheimer Feld 519, 69120 Heidelberg, Germany.

3.     Upon information and belief, Defendant Codon Devices, is a Delaware corporation, having its principal place of business at One Kendall Square, Building 300, Third Floor, Cambridge, MA 02139.

## JURISDICTION AND VENUE

4.     This action for patent infringement arises under the patent laws of the United States, United States Code, Title 35.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     This Court has personal jurisdiction over Defendant Codon Devices because Codon Devices is incorporated in Delaware.

7.     Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400.

## THE PATENT-IN-SUIT

8.     febit is the owner of the entire right, title and interest in and to U.S. Patent No. 6,586,211 B1 (hereinafter "the '211 patent"), issued July 1, 2003, entitled "Method for Producing Polymers." The named inventors of this patent are Peer F. Stähler, Cord F. Stähler and Manfred Muller. A true and correct copy of the '211 patent is attached to this Complaint as Exhibit A.

9.     The independent claims of the '211 patent are:

Claim 1:

> Method for synthesizing polymers, wherein said method comprises synthesizing a plurality of oligomeric building blocks by parallel synthesis steps, wherein each oligomeric building block is synthesized on a different area of a common support, detaching the plurality of oligomeric building blocks from the support and bringing the oligomeric building blocks into contact with one another to synthesize the polymer, and wherein said different areas of said common support are at least partially in fluid communication during synthesis.

2

Claim 25:

> Method for synthesizing polymers that are greater than 10,000 bp in length, wherein said method comprises synthesizing a plurality of oligomeric building blocks by parallel synthesis steps, wherein each oligomeric building block is synthesized on a different area of a common support, detaching the plurality of oligomeric building blocks from the support and bringing the oligomeric building blocks into contact with one another to synthesize the polymer, and wherein said different areas of said common support are at least partially in fluid communication during synthesis.

## COUNT I

### (Infringement of the '211 Patent Pursuant to 35 U.S.C. § 271(g))

10.    The allegations of paragraphs 1-9 above are repeated and re-alleged as if set forth fully herein.

11.    Upon information and belief, Defendant Codon Devices manufactures and uses a gene synthesis platform called the BioFAB® platform.

12.    Upon information and belief, Defendant Codon Devices' BioFAB® platform, and the methods it performs, synthesizes molecular biology devices such as DNA and protein clones, variant libraries and operon and operon variant libraries.  More specifically, Codon Devices' BioFAB® platform is used to synthesize oligonucleotides, hybridize oligonucleotides into duplexes and assemble genes from the duplexes.  Codon Devices is currently scaling the platform to design and construct molecular biology devices hundreds of kilobases to megabases in length.

13.    Upon information and belief, in 2005, Defendant Codon Devices began offering for sale and selling in the United States molecular biology devices made using its BioFAB® platform.

14.    Upon information and belief, Defendant Codon Devices continues to offer for sale and sell in the United States molecular biology devices made using its BioFAB® platform.

3

15.    Upon information and belief, Defendant Codon Devices's manufacturing process to synthesize molecular biology devices using the BioFAB® platform, if practiced in the United States, infringes literally or under the doctrine of equivalents or will infringe literally or under the doctrine of equivalents one or more claims of the '211 patent pursuant to 35 U.S.C. § 271(g).

16.    Upon information and belief, Defendant Codon Devices' offer for sale, sale or use within the United States of its molecular biology devices made using its BioFAB® platform infringes literally or under the doctrine of equivalents, one or more claims of the '211 patent pursuant to 35 U.S.C. § 271(g).

17.    Upon information and belief, Defendant Codon Devices' infringement of the '211 patent has been knowing and willful.

18.    Defendant Codon Devices' infringement of the '211 patent has caused and continues to cause febit to suffer substantial money damages.

19.    Defendant Codon Devices' infringement of the '211 patent has caused and continues to cause febit to suffer irreparable harm for which there is no adequate remedy at law.

## COUNT II

### (Infringement of the '211 Patent Pursuant to 35 U.S.C. § 271(a))

20.    The allegations of paragraphs 1-19 above are repeated and re-alleged as if set forth fully herein.

21.    Upon information and belief, Defendant Codon Devices' offer for sale, sale or use within the United States of its molecular biology devices made using its BioFAB® platform infringes literally or under the doctrine of equivalents, one or more claims of the '211 patent pursuant to 35 U.S.C. § 271(a).

4

22.    On information and belief, Defendant Codon Devices' infringement of the '211 patent has been knowing and willful.

23.    Defendant Codon Devices' infringement of the '211 patent has caused and continues to cause febit to suffer substantial money damages.

24.    Defendant Codon Devices' infringement of the '211 patent has caused and continues to cause febit to suffer irreparable harm for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, febit prays for a judgment:

A.    Entering judgment that Defendant Codon Devices has infringed the '211 patent;

B.    Entering a preliminary and permanent injunction enjoining Codon Devices and their affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns and all those acting for them or on their behalf, or acting in concert or privity with them, from committing further infringement of the '211 patent;

C.    Awarding febit compensatory damages under 35 U.S.C. § 284;

D.    Awarding febit treble damages for Codon Devices' willful infringement;

E.    Awarding costs and reasonable attorney's fees in favor of febit; and

F.    Awarding febit any further relief that this Court may deem appropriate.

**JURY DEMAND**

febit demands a jury trial as to all issues that are triable by a jury in this action.

FEBIT BIOTECH GMBH

Date:   June 15, 2007

By:   _____
P. Clarkson Collins, Jr. (#739)
Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

Mark Fox Evens
Edward J. Kessler
W. Blake Coblentz
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1100 New York Avenue, NW
Washington, D.C.  20005-3934
(202) 371-2600

*Attorneys for Plaintiff*

# EXHIBIT  A

(12) **United States Patent**
Stähler et al.

(10) Patent No.: **US 6,586,211 B1**
(45) Date of Patent: **Jul. 1, 2003**

(54) **METHOD FOR PRODUCING POLYMERS**

(75) Inventors: **Peer F. Stähler**, Mannheim (DE); **Cord F. Stähler**, Weinheim (DE); **Manfred Müller**, Schriesheim (DE)

(73) Assignee: **FeBit Ferrarius Biotechnology GmbH** (DE)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/869,332**

(22) PCT Filed: **Feb. 18, 2000**

(86) PCT No.: **PCT/EP00/01356**
§ 371 (c)(1),
(2), (4) Date: **Aug. 26, 2001**

(87) PCT Pub. No.: **WO00/49142**
PCT Pub. Date: **Aug. 24, 2000**

(30) **Foreign Application Priority Data**

| | | |
|---|---|---|
| Feb. 19, 1999 | (DE) | 199 07 080 |
| Jun. 24, 1999 | (DE) | 199 28 843 |
| Aug. 27, 1999 | (DE) | 199 40 752 |
| Aug. 27, 1999 | (WO) | PCT/EP99/06316 |
| Nov. 26, 1999 | (DE) | 199 57 116 |

(51) Int. Cl.$^7$ ............................ C12P 19/34; C12Q 1/68; C07H 21/02; C07H 21/04; G06F 19/00

(52) U.S. Cl. ......................... **435/91.1**; 435/6; 536/23.1; 536/24.3; 702/19; 702/20

(58) Field of Search .................... 435/91.1, 6; 536/23.1, 536/24.3; 702/19, 20

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,510,270 A | * | 4/1996 | Fodor et al. | 436/518 |
| 6,020,481 A | * | 2/2000 | Benson et al. | 536/26.6 |
| 6,238,884 B1 | * | 5/2001 | Short et al. | 435/69.1 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0022242 | 1/1981 |
| EP | 0130166 | 1/1985 |
| EP | 0316018 | 5/1989 |
| EP | 0385410 | 9/1999 |
| WO | WO 90 00626 | 1/1990 |
| WO | WO 94 12632 | 6/1994 |
| WO | WO 95 17413 | 6/1995 |
| WO | WO 99 14318 | 3/1999 |
| WO | WO 00 13017 | 3/2000 |

OTHER PUBLICATIONS

Stemmer W. P. C. et al., "Single–step assembly of a gene and entire plasmid from large numbers of oligodeoxyribonucleotides", Gene, vol. 164, pp. 49–53 (1995).*

S. Rayner et al.: "MerMade: An oligodeoxyribonucleotide synthesizer for high throughput oligonucleotide production in dual 96–well plates" PCR Methods and Applications, US, Cold Spring Harbor, NY vol. 8, No. 7 Jul. 1, 1998 pp. 741–747.

L E Sindelar and J M Jaklevic: High–throughput DNA synthesis in a multichannel format Nucleic Acids Research, GB, Oxford University Press, Surrey, vol. 23, No. 6, Jan. 1, 1995, pp. 982–987.

Lashkari D A et al.: "An Automated Multiplex Oligonucleotide Synthesizer: Development of High–Throughput, Low–Cost DNA Synthesis" Proceedings of the National Academy of Sciences of USA, US, National Academy of Science. Washington, vol. 92, No. 17, Aug. 15, 1995 pp. 7912–7915.

* cited by examiner

*Primary Examiner*—Kenneth R. Horlick
*Assistant Examiner*—Teresa Strzelecka
(74) *Attorney, Agent, or Firm*—Rothwell, Figg, Ernst & Manbeck, PC

(57) **ABSTRACT**

The invention relates to a method for producing polymers, in particular synthetic nucleic acid double strands of optional sequence, comprising the steps:

(a) provision of a support having a surface area which contains a plurality of individual reaction areas,

(b) location-resolved synthesis of nucleic acid fragments having in each case different base sequences in several of the individual reaction areas, and

(c) detachment of the nucleic acid fragments from individual reaction areas.

**26 Claims, 7 Drawing Sheets**

# Fig.1



**U.S. Patent**    **Jul. 1, 2003**    **Sheet 2 of 7**    **US 6,586,211 B1**

# Fig.2

# Fig.3



# Fig.4





Fig.5



Fig.6



Fig.7



Fig.8

US 6,586,211 B1

1

# METHOD FOR PRODUCING POLYMERS

## DESCRIPTION

The invention relates to a method for producing polymers, in particular synthetic nucleic acid double strands of optional sequence.

### 1. Technical Background of the Invention

Manipulation and construction of genetic elements such as, for example, gene fragments, whole genes or regulatory regions through the development of DNA recombination technology, which is often also referred to as genetic engineering, led to a particular need for genetic engineering methods and further development thereof in the areas of gene therapy, molecular medicine (basic research, vector development, vaccines, regeneration, etc.). Important areas of application are also the development of active substances, production of active substances in the context of the development of pharmaceuticals, combinatorial biosynthesis (antibodies, effectors such as growth factors, neural transmitters, etc.), biotechnology (e.g. enzyme design, pharming, biological production methods, bioreactors, etc.), diagnostics (BioChips, receptors/antibodies, enzyme design, etc.) and environmental technology (specialized or custom microorganisms, production processes, cleaning-up, sensors, etc.).

### 2. Prior Art

Numerous methods, first and foremost enzyme-based methods, allow specific manipulation of DNA for different purposes.

All of said methods have to use available genetic material. Said material is, on the one hand, well-defined to a large extent but allows, on the other hand, in a kind of "construction kit system" only a limited amount of possible combinations of the particular available and slightly modified elements.

In this connection, completely synthetic DNA has so far played only a minor part in the form of one of these combinatorial elements, with the aid of which specific modifications of the available genetic material are possible.

The known methods share the large amount of work required, combined with a certain duration of appropriate operations, since the stages of molecular biological and in particular genetic experiments such as DNA isolation, manipulation, transfer into suitable target cells, propagation, renewed isolation, etc. usually have to be repeated several times. Many of the operations which come up can only insufficiently be automated and accelerated so that the corresponding work remains time-consuming and labor-intensive. For the isolation of genes, which must precede functional study and characterization of the gene product, the flow of information is in most cases from isolated RNA (mRNA) via cDNA and appropriate gene libraries via complicated screening methods to a single clone. The desired DNA which has been cloned in said clone is frequently incomplete, so that further screening processes follow.

Finally, the above-described recombination of DNA fragments has only limited flexibility and allows, together with the described amount of work required, only few opportunities for optimization. In view of the variety and complexity in genetics, functional genomics and proteomics, i.e. the study of gene product actions, such optimizations in particular are a bottleneck for the further development of modern biology.

A common method is recombination by enzymatic methods (in vitro): here, DNA elements (isolated genomic DNA,

2

plasmids, amplicons, viral or bacterial genomes, vectors) are first cut into fragments with defined ends by appropriate restriction enzymes. Depending on the composition of these ends, it is possible to recombine the fragments formed and to link them to form larger DNA elements (likewise enzymatically). For DNA propagation purposes, this is frequently carried out in a plasmid acting as cloning vector.

The recombinant DNA normally has to be propagated clonally in suitable organisms (cloning) and, after this time-consuming step and isolation by appropriate methods, is again available for manipulations such as, for example, recombinations. However, the restriction enzyme cleavage sites are a limiting factor in this method: each enzyme recognizes a specific sequence on the (double-stranded) DNA, which is between three and twelve nucleotide bases in length, depending on the particular enzyme, and therefore, according to statistical distribution, a particular number of cleavage sites at which the DNA strand is cut is present on each DNA element. Cutting the treated DNA into defined fragments, which can subsequently be combined to give the desired sequence, is important for recombination. Sufficiently different and specific enzymes are available for recombination technology up to a limit of 10–30 kilo base pairs (kbp) of the DNA to be cut. In addition, preliminary work and commercial suppliers provide corresponding vectors which take up the recombinant DNA and allow cloning (and thus propagation and selection). Such vectors contain suitable cleavage sites for efficient recombination and integration.

With increasing length of the manipulated DNA, however, the rules of statistics give rise to the problem of multiple and unwanted cleavage sites. The statistical average for an enzyme recognition sequence of 6 nucleotide bases is one cleavage site per 4000 base pairs ($4^6$) and for 8 nucleotide bases it is one cleavage site per 65,000 ($4^8$). Recombination using restriction enzymes therefore is not particularly suitable for manipulating relatively large DNA elements (e.g. viral genomes, chromosomes, etc.).

Recombination by homologous recombination in cells is known, too. Here, if identical sequence sections are present on the elements to be recombined, it is possible to newly assemble and manipulate relatively large DNA elements by way of the natural process of homologous recombination. These recombination events are substantially more indirect than in the case of the restriction enzyme method and, moreover, more difficult to control. They often give distinctly poorer yields than the above-described recombination using restriction enzymes.

A second substantial disadvantage is restriction to the identical sequence sections mentioned which, on the one hand, have to be present in the first place and, on the other hand, are very specific for the particular system. The specific introduction of appropriate sequences itself then causes considerable difficulties.

An additional well-known method is the polymerase chain reaction (PCR) which allows enzymatic DNA synthesis (including high multiplication) due to the bordering regions of the section to be multiplied indicating a DNA replication start by means of short, completely synthetic DNA oligomers ("primers"). For this purpose, however, these flanking regions must be known and be specific for the region lying in between. When replicating the strand, however, polymerases also incorporate wrong nucleotides, with a frequency depending on the particular enzyme, so that there is always the danger of a certain distortion of the starting sequence. For some applications, this gradual dis-

US 6,586,211 B1

| 3 | 4 |

tortion can be very disturbing. During chemical synthesis, sequences such as, for example, the above-described restriction cleavage sites can be incorporated into the primers. This allows (limited) manipulation of the complete sequence. The multiplied region can now be in the region of approx. 30 kbp, but most of this DNA molecule is the copy of a DNA already present.

The primers are prepared using automated solid phase synthesis and are widely available, but the configuration of all automatic synthesizers known to date leads to the production of amounts of primer DNA (μmol-range reaction mixtures) which are too large and not required for PCR, while the variety in variants remains limited.

Synthetic DNA Elements

Since the pioneering work of Khorana (inter alia in: Shabarova: Advanced organic Chemistry of Nucleic Acids, VCH Weinheim;) in the 1960s, approaches in order to assemble double-stranded DNA with genetic or coding sequences from chemically synthesized DNA molecules have repeatedly been described. State of the art here is genetic elements of up to approx. 2 kbp in length which are synthesized from nucleic acids. Chemical solid phase synthesis of nucleic acids and peptides has been automated. Appropriate methods and devices have been described, for example, in U.S. Pat. Nos. 4,353,989 and 5,112,575.

Double-stranded DNA is synthesized from short oligonucleotides according to two methods (see Holowachuk et al., PCR Methods and Applications, Cold Spring Harbor Laboratory Press): on the one hand, the complete double strand is synthesized by synthesizing single-stranded nucleic acids (with suitable sequence), attaching complementary regions by hybridization and linking the molecular backbone by, for example, ligase. On the other hand, there is also the possibility of synthesizing regions overlapping at the edges as single-stranded nucleic acids, attachment by hybridization, filling in the single-stranded regions via enzymes (polymerases) and linking the backbone.

In both methods, the total length of the genetic element is restricted to only a few thousand nucleotide bases due to, on the one hand, the expenditure and production costs of nucleic acids in macroscopic column synthesis and, on the other hand, the logistics of nucleic acids being prepared separately in macroscopic column synthesis and then combined. Thus, the same size range as in DNA recombination technology is covered.

To summarize, the prior art can be described as a procedure in which, in analogy to logical operations, the available matter (in this case genetic material in the form of nucleic acids) is studied and combined (recombination). The result of recombination experiments of this kind is then studied and allows conclusions, inter alia about the elements employed and their combined effect. The procedure may therefore be described as (selectively) analytical and combinatorial.

The prior art thus does not allow any systematic studies of any combinations whatsoever. The modification of the combined elements is almost impossible. Systematic testing of modifications is impossible.

## SUBJECT OF THE INVENTION AND OBJECT ACHIEVED THEREWITH

It is intended to provide a method for directly converting digital genetic information (target sequence, databases, etc.) into biochemical genetic information (nucleic acids) without making use of nucleic acid fragments already present.

The invention therefore relates to a method for producing polymers, in which a plurality of oligomeric building blocks

is synthesized on a support by parallel synthesis steps, is detached from the support and is brought into contact with one another to synthesize the polymer. Preference is given to synthesizing double-stranded nucleic acid polymers of at least 300 bp, in particular at least 1000 bp in length. The nucleic acid polymers are preferably selected from genes, gene clusters, chromosomes, viral and bacterial genomes or sections thereof. The oligomeric building blocks used for synthesizing the polymer are preferably 5–150, particularly preferably 5–30, monomer units in length. In successive steps, it is possible to detach in each case partially complementary oligonucleotide building blocks from the support and to bring them into contact with one another or with the polymer intermediate under hybridization conditions. Further examples of suitable polymers are nucleic acid analogs and proteins.

In a particularly preferred embodiment, the invention relates to a method for producing synthetic DNA of any optional sequence and thus any known or novel functional genetic elements which are contained in said sequence. This method comprises the steps

(a) provision of a support having a surface area which contains a plurality of individual reaction areas,

(b) location-resolved synthesis of nucleic acid fragments having in each case different base sequences in several of the individual reaction areas, and

(c) detachment of the nucleic acid fragments from individual reaction areas.

The base sequences of the nucleic acid fragments synthesized in individual reaction areas are preferably chosen such that they can assemble to form a nucleic acid double strand hybrid. The nucleic acid fragments can then be detached in step (c) in one or more steps under conditions such that a plurality, i.e. at least some of the detached nucleic acid fragments assemble to form a nucleic acid double strand hybrid. Subsequently, the nucleic acid fragments forming one strand of the nucleic acid double strand hybrid can at least partially be linked covalently to one another. This may be carried out by enzymatic treatment, for example using ligase, or/and filling in gaps in the strands using DNA polymerase.

The method comprises within the framework of a modular system the synthesis of very many individual nucleic acid strands which serve as building blocks and, as a result, a double-stranded nucleic acid sequence which can be more than 100,000 base pairs in length is generated, for example in a microfluidic reaction support.

The highly complex synthetic nucleic acid which preferably consists of DNA is produced according to the method and according to the following principle: first, relatively short DNA strands are synthesized in a multiplicity of reaction areas on a reaction support by. in situ synthesis. This may take place, for example, using the supports described in the patent applications DE 199 24 327.1, DE 199 40 749.5, PCT/EP99/06316 and PCT/EP99/06317. In this connection, each reaction area is suitable for the individual and specific synthesis of an individual given DNA sequence of approx. 10–100 nucleotides in length. These DNA strands form the building blocks for the specific synthesis of very long DNA molecules. The fluidic microprocessor used here may carry reaction spaces specially designed for the application.

The DNA synthesis itself is thus carried out by following the automated solid phase synthesis but with some novel aspects: the "solid phase" in this case is an individual reaction area on the surface of the support, for example the wall of the reaction space, i.e. it is not particles introduced

5                                    6

into the reaction space as is the case in a conventional synthesizer. Integration of the synthesis in a microfluidic reaction support (e.g. a structure with optionally branched channels and reaction spaces) makes it possible to introduce the reagents and other components such as enzymes.

After synthesis, the synthesized building blocks are detached from said reaction areas. This detachment process may be carried out location- or/and time-specifically for individual, several or all DNA strands.

In a preferred variant of the method it is provided for a plurality of reaction areas to be established and utilized within a fluidic space or compartment so that the DNA strands synthesized therein can be detached in one operation step and taken away from the compartment which fluidically connects the reaction areas.

Subsequently, suitable combinations of the detached DNA strands are formed. Single-stranded or/and double-stranded building blocks are then assembled, for example, within a reaction space which may comprise one or more reaction areas for the synthesis. Expediently, the sequence of the individual building blocks is chosen such that, when bringing the individual building blocks into contact with one another, regions complementary to one another are available at the two ends brought together, in order to make possible specific attachment of further DNA strands by hybridizing said regions. As a result, longer DNA hybrids are formed. The phosphorus diester backbone of these DNA hybrids may be covalently closed, for example by ligases, and possible gaps in the double strand may be filled in in a known manner enzymatically by means of polymerases. Single-stranded regions which may be present may be filled in by enzymes (e.g. Klenow fragment) with the addition of suitable nucleotides. Thus longer DNA molecules are formed. By bringing together clusters of DNA strands synthesized in this way within reaction spaces it is in turn possible to generate longer part sequences of the final DNA molecule. This may be done in stages, and the part sequences are put together to give ever longer DNA molecules. In this way it is possible to generate very long DNA sequences as completely synthetic molecules of more than 100,000 base pairs in length.

The amount of individual building blocks which is required for a long synthetic DNA molecule is dealt with in the reaction support by parallel synthesis of the building blocks in a location- or/and time-resolved synthesis process. In the preferred embodiment, this parallel synthesis is carried out by light-dependent location- or/and time-resolved DNA synthesis in a fluidic microprocessor which is also described in the patent applications DE 199 24 327.1, DE 199 40 749.5, PCT/EP99/06316 and PCT/EP99/06317.

The miniaturized reaction support here causes a reduction in the amount of starting substances by at least a factor of 1000 compared with a conventional DNA synthesizer. At the same time, an extremely high number of nucleic acid-double strands of defined sequence is produced. Only in this way is it possible to generate a very large variety of individual building blocks, which is required for the synthesis of long DNA molecules, by using an economically sensible amount of resources. The synthesis of a sequence of 100,000 base pairs, composed of overlapping building blocks of 20 nucleotides in length, requires 10,000 individual building blocks. This can be achieved using appropriately miniaturized equipment in a highly parallel synthesis process.

For efficient processing of genetic molecules and systematic inclusion of all possible variants it is necessary to produce the individual building block sequences in a flexible and economic way. This is achieved by the method preferably by using a programmable light source matrix for the

light-dependent location- or/and time-resolved in situ synthesis of the DNA strands, which in turn can be used as building blocks for the synthesis of longer DNA strands. This flexible synthesis allows free programming of the individual building block sequences and thus also generation of any variants of the part sequences or the final sequence, without the need for substantial modifications of system components (hardware). This programmed synthesis of the building blocks and thus the final synthesis products makes it possible to systematically process the variety of genetic elements. At the same time, the use of computer-controlled programmable synthesis allows automation of the entire process including communication with appropriate databases.

With a given target sequence, the sequence of the individual building blocks can be selected efficiently, taking into account biochemical and functional parameters. After putting in the target sequence (e.g. from a database), an algorithm makes out suitable overlapping regions. Depending on the task, different amounts of target sequences can be produced, either within one reaction support or spread over a plurality of reaction supports. The hybridization conditions for formation of the hybrids, such as, for example, temperature, salt concentrations, etc., are adjusted to the available overlap regions by an appropriate algorithm. Thus, maximum attachment specificity is ensured. In a fully automatic version, it is also possible to take target sequence data directly from public or private databases and convert them into appropriate target sequences. The products generated may in turn be introduced optionally into appropriately automated processes, for example into cloning in suitable target cells.

Synthesis in stages by synthesizing the individual DNA strands in reaction areas within enclosed reaction spaces also allows the synthesis of difficult sequences, for example those with internal repeats of sequence sections, which occur, for example, in retroviruses and corresponding retroviral vectors. The controlled detachment of building blocks within the fluidic reaction spaces makes a synthesis of any sequence possible, without problems being generated by assigning the overlapping regions on the individual building blocks.

The high quality requirements necessary for synthesizing very long DNA molecules can be met inter alia by using real-time quality control. This comprises monitoring the location-resolved building block synthesis, likewise detachment and assembly up to production of the final sequence. Then all processes take place, in a transparent reaction support. In addition, the possibility to follow reactions and fluidic processes in transmitted light mode, for example by CCD detection, is created.

The miniaturized reaction support is preferably designed such that a detachment process is possible in the individual reaction spaces and thus the DNA strands synthesized on the reaction areas located within these reaction spaces are detached individually or in clusters. In a suitable embodiment of the reaction support it is possible to assemble the building blocks in reaction spaces in a process in stages and also to remove building blocks, part sequences or the final product or else to sort or fractionate the molecules.

The target sequence, after its completion, may be introduced as integrated genetic element into cells by transfer and thereby be cloned and studied in functional studies. Another possibility is to firstly further purify or analyze the synthesis product, a possible example of said analysis being sequencing. The sequencing process may also be initiated by direct coupling using an appropriate apparatus, for example using

7

a device described in the patent applications DE 199 24 327.1, DE 199 40 749.5, PCT/EP99/06316 and PCT/EP99/06317 (corresponding 35 U.S.C. §371 application is U.S. patent application Ser. No. 09/763,914) for the integrated synthesis and analysis of polymers It is likewise conceivable to isolate and analyze the generated target sequences after cloning.

The method of the invention provides via the integrated genetic elements generated therewith a tool which, for the further development of molecular biology, includes biological variety in a systematic process. The generation of DNA molecules with desired genetic information is thus no longer the bottleneck of molecular biological work, since all molecules, from small plasmids via complex vectors to mini chromosomes, can be generated synthetically and are available for further work.

The production method allows generation of numerous different nucleic acids and thus a systematic approach for questions concerning regulatory elements, DNA binding sites for regulators, signal cascades, receptors, effect and interactions of growth factors, etc.

The integration of genetic elements into a fully synthetic complete nucleic acid makes it possible to further utilize known genetic tools such as plasmids and vectors and thus to build on the relevant experience. On the other hand, this experience will change rapidly as a result of the intended optimization of available vectors, etc. The mechanisms which, for example, make a plasmid suitable for propagation in a particular cell type can be studied efficiently for the first time on the basis of the method of the invention.

This efficient study of large numbers of variants makes it possible to detect the entire combination space of genetic elements. Thus, in addition to the at the moment rapidly developing highly parallel analysis (inter alia on DNA arrays or DNA chips), the programmed synthesis of integrated genetic elements is created as a second important element. Only both elements together can form the foundation of an efficient molecular biology.

The programmed synthesis of appropriate DNA molecules makes possible not only random composition of the coding sequences and functional elements but also adaptation of the intermediate regions. This may rapidly lead to minimal vectors and minimal genomes, whose small size in turn generates advantages. As a result, transfer vehicles such as, for example, viral vectors can be made more efficient, for example when using retroviral or adenoviral vectors.

In addition to the combination of known genetic sequences, it is possible to develop novel genetic elements which can build on the function of available elements. Especially for such developmental work, the flexibility of the system is of enormous value.

The synthetic DNA molecules are in each stage of the development of the method described here fully compatible with the available recombination technology. For "traditional" molecular biological applications it is also possible to provide integrated genetic elements, for example by appropriate vectors. Incorporation of appropriate cleavage sites even of enzymes little used so far is not a limiting factor for integrated genetic elements.

## IMPROVEMENTS IN COMPARISON WITH PRIOR ART

This method makes it possible to integrate all desired functional elements as "genetic modules" such as, for example, genes, parts of genes, regulatory elements, viral packaging signals, etc. into the synthesized nucleic acid molecule as carrier of genetic information. This integration leads to inter alia the following advantages:

8

It is possible to develop therewith extremely functionally integrated DNA molecules, unnecessary DNA regions being removed (minimal genes, minimal genomes).

The free combination of the genetic elements and also modifications of the sequence such as, for example, for adaptation to the expressing organism or cell type (codon usage) are made possible as well as modifications of the sequence for optimizing functional genetic parameters such as, for example, gene regulation.

Modifications of the sequence for optimizing functional parameters of the transcript, for example splicing, regulation at the mRNA level, regulation at the translation level, and, moreover, the optimization of functional parameters of the gene product, such as, for example, the amino acid sequence (e.g. antibodies, growth factors, receptors, channels, pores, transporters, etc.) are likewise made possible.

On the whole, the system created by the method is extremely flexible and allows in a manner previously not available the programmed production of genetic material under greatly reduced amounts of time, materials and work needed.

Using the available methods, it has been almost impossible to specifically manipulate relatively large DNA molecules of several hundred kbp, such as chromosomes for example. Even more complex (i.e. larger) viral genomes of more than 30 kbp (e.g. adenoviruses) are difficult to handle and to manipulate using the classical methods of gene technology.

The method of the invention leads to a considerable shortening up to the last stage of cloning a gene: the gene or the genes are synthesized as DNA molecule and then (after suitable preparation such as purification, etc.) introduced directly into target cells and the result is studied. The multi-stage cloning process which is mostly carried out in microorganisms such as *E. coli* (e.g. DNA isolation, purification, analysis, recombination, cloning in bacteria, isolation, analysis, etc.) is thus reduced to the last transfer of the DNA molecule into the final effector cells. For synthetically produced genes or gene fragments clonal propagation in an intermediate host (usually *E. coli*) is no longer required. This avoids the danger of the gene product destined for the target cell exerting a toxic action on the intermediate host. This is distinctly different from the toxicity of some gene products, which, when using classical plasmid vectors, frequently leads to considerable problems for cloning of the appropriate nucleic acid fragments.

Another considerable improvement is the reduction in time and the reduction in operational steps to after the sequencing of genetic material, with potential genes found being verified as such and cloned. Normally, after finding interesting patterns, which are possible open reading frames (ORF), probes are used (e.g. by means of PCR) to search in cDNA libraries for appropriate clones which, however, need not contain the whole sequence of the mRNA originally used in their production. In other methods, an expression gene library is searched by means of an antibody (screening). Both methods can be shortened very substantially using the method of the invention: if a gene sequence determined "in silico" is present (i.e. after detection of an appropriate pattern in a DNA sequence by the computer) or after decoding a protein sequence, an appropriate vector with the sequence or variants thereof can be generated directly via programmed synthesis of an integrated genetic element and introduced into suitable target cells.

The synthesis taking place in this way of DNA molecules of up to several 100 kbp allows the direct complete synthesis

US 6,586,211 B1

9

of viral genomes, for example adenoviruses. These are an important tool in basic research (inter alia gene therapy) but, due to the size of their genome (approx. 40 kbp), are difficult to handle using classical genetic engineering methods. As a result, the rapid and economic generation of variants for optimization in particular is greatly limited. This limitation is removed by the method of the invention.

The method leads to integration of the synthesis, detachment of synthesis products and assembly to a DNA molecule being carried out in one system. Using production methods of microsystem technology, it is possible to integrate all necessary functions and process steps up to the purification of the final product in a miniaturized reaction support. These may be synthesis areas, detachment areas (clusters), reaction spaces, feeding channels, valves, pumps, concentrators, fractionation areas, etc.

Plasmids and expression vectors may be prepared directly for sequenced proteins or corresponding part sequences and the products may be analyzed biochemically and functionally, for example by using suitable regulatory elements. This omits the search for clones in a gene library. Correspondingly, ORFs from sequencing work (e.g. Human Genome Project) can be programmed directly into appropriate vectors and be combined with desired genetic elements. An identification of clones, for example by complicated screening of cDNA libraries, is removed. Thus, the flow of information from sequence analysis to function analysis has been greatly reduced, because on the same day on which an ORF is present in the computer due to analysis of primary data, an appropriate vector including the putative gene can be synthesized and made available.

Compared with conventional solid-phase synthesis for obtaining synthetic DNA, the method according to the invention is distinguished by a small amount of material needed. In order to produce thousands of different building blocks for generating a complex integrated genetic element of several 100,000 kbp in length, in an appropriately parallelized format and with appropriate miniaturization (see exemplary embodiments), a microfluidic system needs markedly fewer starting substances for an individual DNA oligomer than a conventional solid-phase synthesis apparatus (when using a single column). Here, microliters compare with the consumption of milliliters, i.e. a factor of 1000.

Taking into account the newest findings in immunology, the presented method allows an extremely efficient and rapid vaccine design (DNA vaccines).

## EXEMPLARY EMBODIMENTS

To carry out the method, the present invention requires the provision of a large number of nucleic acid molecules, usually DNA, whose sequence can be freely determined. These building blocks must have virtually 100% identical sequences within one building block species (analogously to the synthesis performance of conventional synthesizers). Only highly parallel synthesis methods are suitable for generating the required variance. In order for the system to be able to work flexibly and, despite the necessary multiplicity of different building blocks to be synthesized, to require as little space and as few reagents as possible, the method is preferably carried out in a microfluidic system within which the individual sequences are produced in a determinable form. Two types of programmed synthesis are suitable for systems of this kind, which are also described in the patent applications DE 199 24 327.1, DE 199 40 749.5, PCT/EP99/06316 and PCT/EP99/06317: these are first the synthesis by programmable fluidic individualization of the

10

reaction areas and, secondly, the synthesis by programmable light-dependent individualization of the reaction areas.

In both variants, synthesis is carried out in a microfluidic reaction support. The design of this reaction support may provide in the system for the bringing together in stages the detached synthesis products, i.e. building blocks, by collecting the nucleic acid strands, after detaching them, in appropriate reaction areas and the assembly taking place there. Groups of such assembly areas may then for their part be brought into contact again with one another so that during the course of a more or less long cascade the final synthesis products are produced: genetic information carriers in the form of DNA molecules. The following variants are suitable here: Either synthesis, detachment and assembly are carried out chronologically but spatially integrated in a microfluidic reaction support or synthesis, detachment and assembly are carried out partially in parallel in one or more microfluidic reaction supports. It is furthermore possible that the microfluidic reaction support contains only reaction areas for the programmed synthesis and that subsequently detachment and elution into a reaction vessel for the assembly are carried out.

In the case of very large DNA molecules, synthesis, detachment and assembly can be supplemented by condensation strategies which prevent break-up of the molecules. This includes, for example, the use of histones (nuclear proteins which make condensation of the chromosomes in the nucleus possible in eukaryotes), the use of topoisomerases (enzymes for twisting DNA in eukaryotes and prokaryotes) or the addition of other DNA-binding, stabilizing and condensing agents or proteins. Depending on the design of the reaction support, this may take place by integrating the condensation reaction in another reaction chamber provided therefor or by addition during the combination and assembly in stages of the building blocks.

The free choice of sequence is of essential importance for the controlled and efficient building block assembly in stages to the final product. For the choice of overlapping complementary ends influences the specificity of the assembly and the overall biochemical conditions (salt concentration, temperature, etc.). When providing a sequence for the gene of interest and after automatic or manual selection of the other genetic elements (regulatory regions, resistance genes for cloning, propagation signals, etc.) for determination of the final product (e.g. a plasmid vector), the provided sequence is fragmented into suitable building blocks which are then synthesized in the required number of reaction supports. The fragments or their overlap regions to be hybridized are chosen such that the conditions for hybridizing are as similar as possible (inter alia GC : AT ratio, melting points, etc.).

Further extension of the system provides for elements for purification and isolation of the product forming, which are likewise designed by microfluidics or microsystem technology. Said elements may be, for example, methods in which the final double-stranded DNA after its synthesis using fluorescent synthons must have a particular total fluorescence. When using proteins with condensing action, these proteins, where appropriate, may also carry a fluorescent label which is preferably detectable separately (reference signal). It is then possible to sort the mixture of final reaction product in the reaction support structures according to fluorescence (see Chou et al., Proceedings of the National Academy of Science PNAS 96:11–13, 1999). Thus a sufficient quality is achieved in order to directly provide a product for further work.

Information from sequencing projects, which is present in databases, may be studied for genes fully automatically

US 6,586,211 B1

11

(computer-assisted). Identified or putative genes (ORFs) are converted into completely synthetic DNA which may contain, where appropriate, regulatory and other genetic elements which seem suitable, so that, for example, one or more vectors are generated. The product is either made available (e.g. as pure DNA) or directly introduced to functional studies, inter alia by transfer into suitable target cells. The information may come from public databases, from work of decentralized users or from other sources, for example the method described in the patent applications DE 199 24 327.1 and DE 199 40 749.5.

It may be of interest that a variance of randomized sequence occurs at a particular site or sites of the target sequence. An example is the testing of variants of a binding site into which, for example over an area of 20 amino acids, i.e. 60 nucleotides, random variations of nucleotides were incorporated. This may take place in an embodiment in that during the synthesis process, after activating a reaction area, a mixture of synthons is added so that all added synthons can hybridize in a statistically distributed manner. A modification of this process may provide for DNA building blocks of different length to be used at a particular position of the target sequence, for example by producing different building blocks on different reaction areas, which show the same sequence for overlapping and hybridization.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows a vertical section of a reaction support **30** which is orthogonal to the microchannels **33** present thereon, which are separated from one another by walls **32**. The bottom **31** of the reaction support is transparent. Furthermore, a single-stranded nucleic acid **10** with the designation of the 5′ and 3′ ends according to convention is depicted diagrammatically. These are depicted as **10a** with the 3′ end covalently bound to the reaction support **30** by solid-phase synthesis. A light source matrix **20** with a light source and a controllable illumination exit facing the reaction support **30** is likewise depicted.

FIG. 2 shows a top view of the reaction support **30** with reaction areas **12** and the walls **32** between the microchannels **33**. The arrows indicate the direction of flow.

FIG. 3 shows, similar to FIG. 1, a vertical section through the reaction support **30**, with the single-stranded nucleic acids in the microchannel **33** being detached.

FIG. 4 again depicts a top view of the reaction support **30**, with the single-stranded nucleic acids in the microchannel **33** being detached.

FIG. 5 shows a top view of the arrangement of microchannels with fluidic reaction spaces **50**, which contain the individual reaction areas, and reaction chambers, where a part sequence is assembled. In the reaction space **54** all microchannels within a reaction support are brought together. The final synthesis product is assembled there, too, and is removed through exit **55**. The reference numbers **51a** and **51b** indicate the representations of a reaction chamber which are shown in enlarged form in FIG. 6 and FIG. 7 and FIG. 8. The arrows again signal the direction of flow.

FIG. 6 shows an enlarged representation of a reaction chamber **51a** after a microchannel with detached single-stranded nucleic acids.

FIG. 7 shows an enlarged representation of a reaction chamber **51a** after a microchannel with a double-stranded hybrid **60** composed of two attached complementary nucleic acid single strands.

FIG. 8 shows an enlarged representation of a reaction chamber **51b** after bringing together two microchannels with

12

an assembled double-stranded nucleic acid hybrid **62**, enzyme **63** (e.g. ligases) for the covalent linkage of the building blocks of the nucleic acid hybrid **85**, a linear covalently linked nucleic acid double strand **65** and a circular closed nucleic acid double strand **66** (e.g. vector).

The reference number **64** represents a reaction of the enzymes with the nucleic acid hybrid.

What is claimed is:

1. Method for synthesizing polymers, wherein said method comprises synthesizing a plurality of oligomeric building blocks by parallel synthesis steps, wherein each oligomeric building block is synthesized on a different area of a common support, detaching the plurality of oligomeric building blocks from the support and bringing the oligomeric building blocks into contact with one another to synthesize the polymer, and wherein said different areas of said common support are at least partially in fluid communication during synthesis.

2. Method according to claim 1, wherein double-stranded nucleic acid polymers of at least 300 bp in length are synthesized.

3. A method according to claim 1, wherein the polymers are nucleic acid polymers which are selected from the group consisting of genes or sections thereof, gene clusters or sections thereof, chromosomes or sections thereof, and viral and bacterial genomes or sections thereof.

4. Method according to claim 1, wherein the oligomeric building blocks are from 5 to 150 monomer units in length.

5. Method according to claim 1, wherein partially complimentary oligonucleotide building blocks are detached from the support and are brought into contact with one another or with a polymer intermediate under hybridization conditions in successive steps.

6. Method according to claim 1 for producing synthetic nucleic acid double strands, wherein said method comprises the steps:

(a) providing a support having a surface area which contains a plurality of individual reaction areas,

(b) synthesizing nucleic acid fragments in a location-resolved manner, wherein said nucleic acid fragments comprise different base sequences, as compared to other nucleic acid fragments, in several of the individual reaction areas, and

(c) detaching the nucleic acid fragments from the individual reaction areas.

7. Method according to claim 6, wherein the base sequences of the nucleic acid fragments synthesized in individual reaction areas are chosen such that they can assemble to form a nucleic acid double strand hybrid.

8. Method according to claim 6 wherein the nucleic acid fragments according to step (c) are detached in one or more steps under conditions such that a plurality of the detached nucleic acid fragments assemble to form a nucleic acid double strand hybrid.

9. Method according to claim 8, wherein several nucleic acid fragments which form one strand of the nucleic acid double strand hybrid are linked covalently to one another.

10. Method according to claim 9, wherein the covalent linking includes treatment with ligase or/and filling in gaps in the strands using DNA polymerase.

11. Method according to claim 6, wherein the sequence comprises at one or more position recognition sequences for specific interaction with other molecules.

12. Method according to claim 6, wherein the sequence of the nucleic acid double strands is a naturally occurring sequence, a not naturally occurring sequence or a combination of these two.

US 6,586,211 B1

13

13. Method according to claim 6, wherein the sequence is taken from a database, a sequencing experiment or a device for the integrated synthesis and analysis of polymers.

14. Method according to claim 1, wherein the oligomeric building blocks are synthesized by location- or/and time-resolved illumination by means of a programmable light source matrix.

15. Method according to claim 1, wherein the synthesizing step is a location- or/and time-resolved synthesis of the oligomeric building blocks in a microfluidic reaction support having one or more fluidic reaction compartments and one or more reaction areas within a fluidic reaction compartment.

16. Method according to claim 1, wherein the oligomeric building blocks contain nucleotides occurring in nature, modified nucleotides or mixtures thereof.

17. Method according to claim 1, wherein said oligomeric building blocks contain synthesis building blocks carrying labeling groups for subsequent detection of the polymer.

18. Method according to claim 17, wherein the labeling groups are detectable in a light-dependent manner.

19. The method of claim 1, wherein said method further comprises stabilizing, condensing and/or topologically manipulating a nucleic acid double strand or nucleic acid double strand precursor during or following the assembly of the nucleic acid double strand.

20. A method according to claim 19, where the stabilization, condensation or/and topological manipulation is carried out by functional molecules selected from the group consisting of histones, topoisomerases, DNA-binding agents, DNA-binding proteins, DNA-stabilizing agents, DNA-stabilizing proteins, DNA-condensing agents and DNA-condensing proteins.

21. Method according to claim 1, wherein double-stranded nucleic acid polymers of at least 1000 bp in length are synthesized.

14

22. Method according to claim 1, wherein partially complimentary oligonucleotide building blocks are detached from the support and are brought into contact with (1) one another or with second partially complimentary oligonucleotide building blocks to form a polymer intermediate or (2) with a polymer intermediate under hybridization conditions, to form an advanced polymer intermediate, and thereafter third partially complimentary oligonucleotide building blocks are detached and brought into contact with (1) fourth partially complimentary oligonucleotide building blocks or with third partially complimentary oligonucleotide building blocks to form a polymer intermediate or (2) with a polymer intermediate under hybridization conditions, to form an advanced polymer intermediate, and these steps are repeated.

23. Method according to claim 11, wherein the other molecules are selected from the group consisting of proteins, nucleic acids, peptides, pharmaceuticals, saccharides, lipids, hormones, and organic compounds.

24. Method according to claim 20, wherein the other functional molecules are selected from the group consisting of histones or topoisomerases.

25. Method for synthesizing polymers that are greater than 10,000 bp in length, wherein said method comprises synthesizing a plurality of oligomeric building blocks by parallel synthesis steps, wherein each oligomeric building block is synthesized on a different area of a common support, detaching the plurality of oligomeric building blocks from the support and bringing the oligomeric building blocks into contact with one another to synthesize the polymer, and wherein said different areas of said common support are at least partially in fluid communication during synthesis.

26. Method according to claim 1, wherein the oligomeric building blocks are from 5 to 30 monomer units in length.

* * * * *

# EXHIBIT 2

AO 120 (Rev. 3/04)

| TO: | **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____ Delaware _____ on the following  X Patents or  ☐ Trademarks:

| DOCKET NO.<br>07-385 | DATE FILED<br>6/15/07 | U.S. DISTRICT COURT<br>DISTRICT OF DELAWARE |
|---|---|---|
| PLAINTIFF<br><br>febit biotech GmbH | | DEFENDANT<br><br>Codon Devices Inc. |

| | PATENT OR | DATE OF PATENT | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 6,586,211 B1 | 7/1/2003 | FeBit Ferrarius Biotechnology GmbH |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment  ☐ Answer  ☐ Cross Bill  ☐ Other Pleading | |
|---|---|---|
| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK<br>PETER T. DALLEO, CLERK OF COURT | (BY) DEPUTY CLERK | DATE<br>6/15/07 |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy**

# EXHIBIT 3

·Rip Finst/SV/WGM/US      To   mevens@skgf.com
07/24/2007 12:36 PM      cc   jblumenfeld@mnat.com, mmatterer@morrisjames.com,
                      edward.reines@weil.com
      bcc

Subject  febit v. Codon

Dear Mark -

Thanks for returning my call and for agreeing to a 30-day extension for Codon to respond to febit biotech's complaint. Per our discussion, I'll ask our local counsel Jack Blumenfeld (cc'd on this email) to work with your local counsel (who I understand is Mary Matterer) to prepare and file a stipulation extending the deadline for Codon to answer or otherwise respond to the complaint from July 30 to August 30.

We look forward to receiving your letter regarding ownership of the patent-in-suit this Friday, July 27.

Best regards,

Rip Finst
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
650-802-3220 office
650-802-3100 fax

< END >

# EXHIBIT 4



**"Mark F. Evens"**
**<MEVENS@skgf.com>**
07/27/2007 01:43 PM

To  Rip.Finst@weil.com

cc  jblumenfeld@mnat.com, mmatterer@morrisjames.com,
edward.reines@weil.com, "Ed Kessler"
<EKESSLER@skgf.com>, "Blake Coblentz"

bcc

Subject  RE: febit v. Codon

Rip,

                I did not receive the translation. I should get it Monday and
will then forward it to you for review.

Mark Fox Evens
Director
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Ave., NW
Washington, DC 20005

202-772-8888 (direct)
202-371-2540 (fax)
202-371-2600 (reception)

-----Original Message-----
From: Rip.Finst@weil.com [mailto:Rip.Finst@weil.com]
Sent: Tuesday, July 24, 2007 3:37 PM
To: Mark F. Evens
Cc: jblumenfeld@mnat.com; mmatterer@morrisjames.com;
edward.reines@weil.com
Subject: febit v. Codon

Dear Mark -

Thanks for returning my call and for agreeing to a 30-day extension for
Codon to respond to febit biotech's complaint.  Per our discussion, I'll
ask our local counsel Jack Blumenfeld (cc'd on this email) to work with
your local counsel (who I understand is Mary Matterer) to prepare and
file a stipulation extending the deadline for Codon to answer or
otherwise respond to the complaint from July 30 to August 30.

We look forward to receiving your letter regarding ownership of the
patent-in-suit this Friday, July 27.

Best regards,

Rip Finst
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
650-802-3220 office
650-802-3100 fax

< END >

-------------------------------------------

# EXHIBIT 5



| | | | |
|---|---|---|---|
| Robert Greene Sterne | Peter A. Jackman | Cynthia M. Bouchez | Michael R. Malek* | Scott M. Woodhouse |
| Jorge A. Goldstein | Brian J. Del Buono | Timothy A. Doyle | Carla Ji-Eun Kim | Peter A. Socarras |
| David K.S. Cornwell | Mark Fox Evens | Gaby L. Longsworth | Doyle A. Siever* | Jeffrey K. Mills |
| Robert W. Esmond | Vincent L. Capuano | Lori A. Gordon | Ulrike Winkler | Danielle L. Letting |
| Tracy-Gene G. Durkin | Elizabeth J. Haanes | Laura A. Vogel | Bryan L. Skelton* | Lori Brandes |
| Michele A. Cimbala | Michael D. Specht | Bryan S. Wade | Paul A. Calvo | Steven C. Oppenheimer |
| Michael B. Ray | Kevin W. McCabe | Bashir M.S. Ali | Robert A. Schwartzman | Aaron S. Lukas |
| Robert E. Sokohl | Glenn J. Perry | Shannon A. Carroll | C. Matthew Rozier | Gaurav Asthana |
| Eric K. Steffe | Edward W. Yee | Anbar E. Khal | | |
| Michael Q. Lee | Grant E. Reed | Michelle K. Holoubek | | Of Counsel |
| John M. Covert | Virgil Lee Beaston | Marsha A. Rose | Registered Patent Agents• | Edward J. Kessler |
| Robert C. Millonig | Theodore A. Wood | Scott A. Schaller | Karen R. Markowicz | Kenneth C. Bass III |
| Donald J. Featherstone | Joseph S. Ostroff | Lei Zhou | Matthew J. Dowd | Marvin C. Guthrie |
| Timothy J. Shea, Jr | Jason D. Eisenberg | Young Tang | Katriea Yujian Pei Quach | Christopher P. Wrist |
| Michael V. Messinger | Tracy L. Muller | Christopher J. Walsh | Julie A. Helder | |
| Judith U. Kim | Jon E. Wright | W. Blake Coblentz* | Mita Mukherjee | *Admitted only in Maryland |
| Jeffrey T. Helvey | LuAnne M. DeSantis | James J. Pohl | | *Admitted only in Virginia |
| Eldora J. Ellison | Ann E. Summerfield | John T. Haran | | •Practice Limited to |
| Donald R. Banowit | Helene C. Carlson | Mark W. Rygiel | | Federal Agencies |

July 31, 2007

WRITER'S DIRECT NUMBER:
(202) 772-8550
(202) 772-8888
INTERNET ADDRESS:
EKESSLER@SKGF.COM
MEVENS@SKGF.COM

Edward R. Reines, Esq.
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065

*Via Email*

> Re:    febit biotech GmbH v. Codon Devices Inc.,
>          U.S. District Court for the District of Delaware, Case No. 1:2007cv00385

Dear Ed:

Following up on our phone call and Rip Finst's email of July 24, I am transmitting the promised information that, hopefully, will facilitate our ability to move this case forward expeditiously. We are providing you with these documents with the understanding that you will treat them as "Attorneys Eyes Only" until we work out a Protective Order in this case.

We have checked the "proper party" issue with our client. Based on the attached documents, febit biotech GmbH is the current owner of U.S. Patent No. 6,586,211. We enclose a certified English translation of the name change documents for your reference. Additionally, we also enclose the German language name change document demonstrating the name change from FeBit Ferrarius Biotechnology GmbH to febit ag. We are in the process of obtaining a certified English translation of this document. In the meantime, we had one of our associates fluent in German provide the following summary of this document:

> The document indicates that the company founders requested a change in the status of the company in May 2001. The company transformed from a limited liability company (Gesellschaft mit beschrankter Haftung; GmbH) into a stock corporation (Aktiengesellschaft; AG).
>
> FeBiT Ferrarius Biotechnology GmbH, Mannheim
>
> Hier: Umwandlung in die FeBiT Aktiengesellschaft, Mannheim

Edward R. Reines
July 31, 2007
Page 2

    [here:   the   transformation   into   FeBiT   Aktiengesellschaft,
    Mannheim]

    As soon as we receive the certified English translation, we will forward a copy to you.
Please let us know if you have any further questions regarding this matter.

                    Very truly yours,

                    STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                    Mark Fox Evens

MFE/WBC:cpn
Enclosures
699304_1.DOC



"Mark F. Evens"
<MEVENS@skgf.com>
07/31/2007 04:02 PM

To  edward.reines@weil.com, Rip.Finst@weil.com
cc  "Blake Coblentz" <BCOBLENT@skgf.com>
Subject  FW: [draft]Name change documents

Ed and Rip,
    I didn't want to delay and felt it better to send you the materials we have in hand now. I will send the last certified translation when we receive it.
I am providing these documents "attorneys eyes only" until we figure out a more appropriate designation.

Mark Fox Evens
Director
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Ave., NW
Washington, DC 20005

202-772-8888 (direct)
202-371-2540 (fax)
202-371-2600 (reception)

**From:** Blake Coblentz
**Sent:** Tuesday, July 31, 2007 6:58 PM
**To:** Mark F. Evens
**Subject:** [draft]Name change documents

Dear Ed,

Please see the attached letter regarding the name change documents for febit biotech GmbH. The name change documents are also attached for your reference.

With best regards,

Mark



**W. Blake Coblentz, Esq.**
Associate
Sterne, Kessler, Goldstein & Fox P.L.L.C.
1100 New York Avenue, NW
Washington, DC 20005
Direct: 202.772.8782
Fax: 202.371.2540
Main: 202.371.2600
Email: bcoblent@skgf.com
www.skgf.com

Administrative Assistant: Carol Phillip Nouchet
Direct: 202.772.8549

Notice: The information in this electronic transmission
(including any attachments) may
contain confidential or legally privileged information and is
intended solely for the
individual(s) or entity(ies) named above.  If you are not an
intended recipient or an
authorized agent, you are hereby notified that reading,
distributing, or otherwise
disseminating or copying, or taking any action based on the
contents of this
transmission is strictly prohibited.  Any unauthorized
interception of this
transmission is illegal under the law.  If you have received this
transmission
in error, please immediately notify the sender by return email
and then destroy all
copies of the transmission.

                         
LETTER.pdf  DOCUMENT1.pdf  DOCUMENT2.pdf  DOCUMENT3.pdf  DOCUMENT4.pdf  DOCUMENT5.pdf

# EXHIBIT 6

# WEIL, GOTSHAL & MANGES LLP

### SILICON VALLEY OFFICE
### 201 REDWOOD SHORES PARKWAY
### REDWOOD SHORES, CALIFORNIA 94065
### (650) 802-3000
### FAX: (650) 802-3100

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SINGAPORE
WARSAW
WASHINGTON, D.C.

WRITER'S DIRECT LINE
*650-802-3220*
rip.flnst@weil.com

August 1, 2007

**Via Email**

Mark Fox Evens
Stern, Kessler, Goldstein & Fox PLLC
1100 New York Ave. NW
Washington, DC 20005-3934

> Re:  *Febit Biotech GmbH, et al. v. Codon Devices, Inc.*
> **District of Delaware Case No. 07-385 GMS**

Dear Mark:

Thank you for the letter and attendant documents of July 31. We have reviewed those materials and concluded that they do not resolve the patent ownership issue.

The documents paint an ambiguous record concerning the past and current ownership of the '211 patent. Indeed, the only document that expressly references the '211 patent is a vague, one-page "Annex" (Document 2). However, other materials that we have not received may add some clarity, including the six "Annex"es identified in the TechnoStart-Neckarburg contract (Document 1) and the contract of sale of April 18, 2005 referenced in the Mayer letter (Document 4). Please let us as soon as possible if, and when, we can expect to receive these materials (and translations, if necessary).

Further, you state in your letter that "febit biotech GmbH is the current owner of" the '211 Patent. Are you representing that no entity or person other than febit biotech, GmbH currently holds any right, title and interest in the '211 Patent? Similarly, is it your position that febit, GmbH and Febit Ferrarius Biotechnology, GmbH have no claims in and demand against the '211 Patent?

WEIL, GOTSHAL & MANGES LLP

Mark Fox Evens
Re: Febit, et al. v. Codon
August 1, 2007
Page 2

        With the deadline for Codon to respond to febit biotech, GmbH's complaint approaching, we hope that this matter can be promptly resolved, and look forward to your response.

        Best regards,

        Rip

        Rip Finst

# EXHIBIT 7

# WEIL, GOTSHAL & MANGES LLP

SILICON VALLEY OFFICE

201 REDWOOD SHORES PARKWAY

REDWOOD SHORES, CALIFORNIA 94065

(650) 802-3000

FAX: (650) 802-3100

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SINGAPORE
WARSAW
WASHINGTON, D.C.

WRITER'S DIRECT LINE
*650-802-3220*
rip.finst@weil.com

August 8, 2007

**Via Email**

Mark Fox Evens
Stern, Kessler, Goldstein & Fox PLLC
1100 New York Ave. NW
Washington, DC 20005-3934

> Re: *Febit Biotech GmbH, et al. v. Codon Devices, Inc.*
> **District of Delaware Case No. 07-385 GMS**

Dear Mark:

      We have received no response to our letter of August 1, 2007 regarding the patent ownership issue.  Please provide us with your response as soon as possible.

Best regards,

*Rip*

Rip Finst

# EXHIBIT 8



**"Mark F. Evens"**
**<MEVENS@skgf.com>**

08/08/2007 09:55 AM

To  Rip.Finst@weil.com

cc

bcc

Subject  Re: febit biotech - Codon Devices correspondence

Rip,
Am out the next few days. This is hospital week in the Evens household.
My wife undergoes a procedure otday, and I drive my daughter to a specialist at UNC tonight for a 3 day stay.
We talked to the client about your concerns yesterday morning.
We should have the resposive docs in a week or so, hopefully sooner.

-----Original Message-----
From: Rip.Finst@weil.com <Rip.Finst@weil.com>
To: Mark F. Evens
CC: edward.reines@weil.com <edward.reines@weil.com>
Sent: Wed Aug 08 12:30:52 2007
Subject: febit biotech - Codon Devices correspondence

Mark -

Please see the attached correspondence concerning the febit biotech v.
Codon Devices matter.

Best regards,

Rip Finst
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
650-802-3220 office
650-802-3100 fax

(See attached file: letter.PDF)

< END >

------------------------------------------
The information contained in this email message is intended only
for use of the individual or entity named above. If the reader of
this message is not the intended recipient, or the employee or
agent responsible to deliver it to the intended recipient, you are
hereby notified that any dissemination, distribution or copying of
this communication is strictly prohibited. If you have received
this communication in error, please immediately notify us by email
(postmaster@weil.com), and destroy the original message. Thank you

Notice: The information in this electronic transmission
(including any attachments) may
contain confidential or legally privileged information and is

# EXHIBIT 9

# WEIL, GOTSHAL & MANGES LLP

SILICON VALLEY OFFICE

201 REDWOOD SHORES PARKWAY

REDWOOD SHORES, CALIFORNIA 94065

(650) 802-3000

FAX: (650) 802-3100

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SINGAPORE
WARSAW
WASHINGTON, D.C.

WRITER'S DIRECT LINE
650-802-3220
rip.finst@weil.com

August 15, 2007

**Via Email**

Mark Fox Evens
Stern, Kessler, Goldstein & Fox PLLC
1100 New York Ave. NW
Washington, DC 20005-3934

> Re:  *Febit Biotech GmbH v. Codon Devices, Inc.*
> **District of Delaware Case No. 07-385 GMS**

Dear Mark:

I write to follow up on a number of open issues stemming from the ownership questions related to the patent-in-suit. In the lawsuit pending in the District of Delaware, febit biotech, GmbH alleged in its complaint that it was the sole owner of the '211 patent; however, the patent identifies Febit Ferrarius Biotechnology, GmbH as the assignee. In a letter to Codon Devices, dated December 6, 2006, your colleague, Mr. Kessler, stated that a third entity – "febit, GmbH" – was the sole owner of the patent. Codon Devices detailed these conflicting claims of ownership in its complaint for declaratory relief in the District of Columbia, a courtesy copy of which was hand-delivered to your firm on July 2. Shortly thereafter, you and Ed Reines discussed this conflicting ownership issue and you agreed to send us a letter and information establishing that febit biotech, GmbH was the true owner of the '211 patent. You and I revisited the matter on July 24, and you renewed your agreement to send us relevant materials. We received a small set of materials on July 31, and informed you on August 1 that those materials did not resolve the ownership issue and, in fact, raised more questions concerning the past and current ownership of the '211 patent.

WEIL, GOTSHAL & MANGES LLP

Mark Fox Evens
August 1, 2007
Page 2


Concerning the District of Delaware lawsuit, we have not yet received responses to the issues raised in my letter, dated August 1. Further, we understood from your e-mail of August 8 that we would receive within one week additional documents supporting febit biotech, GmbH's allegation that it is the sole owner of the patent, but we have not yet received any documents. Codon's response to febit biotech's complaint in the District of Delaware litigation is due August 30. If we have to file motion papers due to the ownership issues, we reserve all our rights. We have been attempting to work with you on this cooperatively for some time and hold out hope we can resolve it as soon as possible.

Regarding the District of Columbia action, we have not received a response to Ed Reines' letter to Mr. Kessler, dated July 2, 2007. Given the lack of progress on the ownership issues, we are in a position where we need your position on the service of these complaints.

Best regards,

*Rip*

Rip Finst

# EXHIBIT 10



**"Mark F. Evens"**
**&lt;MEVENS@skgf.com&gt;**

08/15/2007 12:11 PM

To ·Rip.Finst@weil.com

cc "Ed Kessler" &lt;EKESSLER@skgf.com&gt;, "Blake Coblentz"
   &lt;BCOBLENT@skgf.com&gt;

bcc

Subject  RE: febit biotech - Codon Devices correspondence

Rip,

        I don't think it productive to engage in disputing your
characterization of whether the information already provided is or is
not sufficient to address your stated concerns about ownership. To keep
this matter from becoming an issue, we advised you that we would provide
additional information. As I indicated to you last week, the client is
putting together materials that should resolve this question about
ownership. We checked this morning and hope the materials will arrive
soon. If not, we have no problem agreeing to extending your need to
respond to the Delaware action. I suggest we agree to a tolling of the
DC case pending resolution, although frankly, if our client agrees to
accept service in Delaware, that should resolve that issue.
        I do not understand your reference to information that I owe you
on the Delaware case. The information discussed above should resolve the
ownership issue, which I thought was the basis for your questions. If
you have ownership questions after that, they should be addressed
through the discovery process.
Best,

Mark Fox Evens
Director
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Ave., NW
Washington, DC 20005

202-772-8888 (direct)
202-371-2540 (fax)
202-371-2600 (reception)


-----Original Message-----
From: Rip.Finst@weil.com [mailto:Rip.Finst@weil.com]
Sent: Wednesday, August 15, 2007 2:25 PM
To: Mark F. Evens
Cc: edward.reines@weil.com
Subject: febit biotech - Codon Devices correspondence

Mark -

Please see the attached correspondence concerning the febit biotech /
Codon Devices matters.

Best regards,

Rip Finst
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
650-802-3220 office

650-802-3100 fax

(See attached file: evens ltr 8-15-07.pdf)

< END >

-------------------------------------------
The information contained in this email message is intended only for use
of the individual or entity named above. If the reader of this message
is not the intended recipient, or the employee or agent responsible to
deliver it to the intended recipient, you are hereby notified that any
dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please
immediately notify us by email (postmaster@weil.com), and destroy the
original message. Thank you


Notice: The information in this electronic transmission (including any
attachments) may
contain confidential or legally privileged information and is intended solely
for the
individual(s) or entity(ies) named above.  If you are not an intended
recipient or an
authorized agent, you are hereby notified that reading, distributing, or
otherwise
disseminating or copying, or taking any action based on the contents of this
transmission is strictly prohibited.  Any unauthorized interception of this
transmission is illegal under the law.  If you have received this transmission
in error, please immediately notify the sender by return email and then
destroy all
copies of the transmission.

# EXHIBIT 11

·Rip Finst/SV/WGM/US
08/17/2007 09:00 AM

To   MEVENS@skgf.com

cc   edward.reines@weil.com

bcc  nicholas.brown@weil.com

Subject   RE: febit biotech - Codon Devices correspondence

Mark -

Thanks for the update.  With your representation that your client is continuing to collect additional materials and that we should receive those soon, we think an extension is the sensible approach and appreciate your offer.  Please let us know if the following language for a stipulation is OK and whether we have permission to file on your behalf (I'll ask our local counsel to work with Mary to get this filed).

IT IS HEREBY STIPULATED by the parties, subject to the approval of the Court, that the time in which the defendant may move, answer or otherwise plead in response to the complaint is extended until September 30, 2007.  The parties are continuing to discuss a threshold patent ownership issue, and plaintiff has agreed to provide defendant with materials concerning ownership of the patent-in-suit.  An extension of the deadline for Codon's response will permit the parties additional time to attempt to informally resolve this issue, thereby potentially obviating the need for judicial resolution of that issue.

Thanks,

Rip Finst
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
650-802-3220 office
650-802-3100 fax
"Mark F. Evens" <MEVENS@skgf.com>



"Mark F. Evens"
<MEVENS@skgf.com>
08/15/2007 12:11 PM

To   Rip.Finst@weil.com

cc   "Ed Kessler" <EKESSLER@skgf.com>, "Blake Coblentz"
     <BCOBLENT@skgf.com>

Subject   RE: febit biotech - Codon Devices correspondence

Rip,
          I don't think it productive to engage in disputing your
characterization of whether the information already provided is or is
not sufficient to address your stated concerns about ownership. To keep
this matter from becoming an issue, we advised you that we would provide
additional information. As I indicated to you last week, the client is
putting together materials that should resolve this question about
ownership. We checked this morning and hope the materials will arrive
soon. If not, we have no problem agreeing to extending your need to
respond to the Delaware action. I suggest we agree to a tolling of the
DC case pending resolution, although frankly, if our client agrees to
accept service in Delaware, that should resolve that issue.
          I do not understand your reference to information that I owe you
on the Delaware case. The information discussed above should resolve the
ownership issue, which I thought was the basis for your questions. If

you have ownership questions after that, they should be addressed
through the discovery process.
Best,

Mark Fox Evens
Director
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Ave., NW
Washington, DC 20005

202-772-8888 (direct)
202-371-2540 (fax)
202-371-2600 (reception)


-----Original Message-----
From: Rip.Finst@weil.com [mailto:Rip.Finst@weil.com]
Sent: Wednesday, August 15, 2007 2:25 PM
To: Mark F. Evens
Cc: edward.reines@weil.com
Subject: febit biotech - Codon Devices correspondence

Mark -

Please see the attached correspondence concerning the febit biotech /
Codon Devices matters.

Best regards,

Rip Finst
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
650-802-3220 office
650-802-3100 fax

(See attached file: evens ltr 8-15-07.pdf)

< END >

------------------------------------------
The information contained in this email message is intended only for use
of the individual or entity named above. If the reader of this message
is not the intended recipient, or the employee or agent responsible to
deliver it to the intended recipient, you are hereby notified that any
dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please
immediately notify us by email (postmaster@weil.com), and destroy the
original message. Thank you


Notice: The information in this electronic transmission (including any
attachments) may
contain confidential or legally privileged information and is intended solely
for the
individual(s) or entity(ies) named above.  If you are not an intended
recipient or an
authorized agent, you are hereby notified that reading, distributing, or
otherwise
disseminating or copying, or taking any action based on the contents of this
transmission is strictly prohibited.  Any unauthorized interception of this

transmission is illegal under the law.  If you have received this transmission
in error, please immediately notify the sender by return email and then
destroy all
copies of the transmission.

< END >

# EXHIBIT 12

·Rip Finst/SV/WGM/US
08/24/2007 01:31 PM

To   MEVENS@skgf.com

cc   edward.reines@weil.com

bcc

Subject   febit biotech - Codon Devices

Dear Mark -

Just checking in on the patent ownership issue.  Do you have a sense if/when we can expect to receive any additional materials from your client?

Best regards,

Rip Finst
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
650-802-3220 office
650-802-3100 fax

< END >

# EXHIBIT 13



**"Mark F. Evens"**
**<MEVENS@skgf.com>**
08/27/2007 05:05 AM

To  Rip.Finst@weil.com
cc
bcc
Subject  RE: febit biotech - Codon Devices

Rip,
            Sorry for my failure to respond. I was out Monday.
This weekend, I moved my daughter into college, and Sunday, I thought I
was going to die.
I don't know if you have kids, but moving boys is a relative piece of
cake.

I am checking where we stand this morning. I know Blake emailed our
client on Thursday to check status.


Mark Fox Evens
Director
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Ave., NW
Washington, DC 20005

202-772-8888 (direct)
202-371-2540 (fax)
202-371-2600 (reception)


-----Original Message-----
From: Rip.Finst@weil.com [mailto:Rip.Finst@weil.com]
Sent: Friday, August 24, 2007 4:32 PM
To: Mark F. Evens
Cc: edward.reines@weil.com
Subject: febit biotech - Codon Devices

Dear Mark -

Just checking in on the patent ownership issue.  Do you have a sense
if/when we can expect to receive any additional materials from your
client?

Best regards,

Rip Finst
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
650-802-3220 office
650-802-3100 fax

< END >


------------------------------------------
The information contained in this email message is intended only for use

of the individual or entity named above. If the reader of this message
is not the intended recipient, or the employee or agent responsible to
deliver it to the intended recipient, you are hereby notified that any
dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please
immediately notify us by email (postmaster@weil.com), and destroy the
original message. Thank you


Notice: The information in this electronic transmission (including any
attachments) may
contain confidential or legally privileged information and is intended solely
for the
individual(s) or entity(ies) named above.  If you are not an intended
recipient or an
authorized agent, you are hereby notified that reading, distributing, or
otherwise
disseminating or copying, or taking any action based on the contents of this
transmission is strictly prohibited.  Any unauthorized interception of this
transmission is illegal under the law.  If you have received this transmission
in error, please immediately notify the sender by return email and then
destroy all
copies of the transmission.

# EXHIBIT 14



**"Mark F. Evens"**
**<MEVENS@skgf.com>**
09/05/2007 09:46 AM

To   edward.reines@weil.com
cc   ·Rip.Finst@weil.com, "Blake Coblentz"
     <BCOBLENT@skgf.com>
bcc
Subject   Response to your letter

Ed,
    I received your hand-delivered September 4, 2007 letter. I am requesting authorization from the client to accept service of your DC Complaint and will advise you when I receive a response.
We still hope to see this case tried in Delaware and hope to receive satisfactory documentation shortly. Summer and other matters have delayed our response.

Mark Fox Evens
Director
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Ave., NW
Washington, DC 20005

202-772-8888 (direct)
202-371-2540 (fax)
202-371-2600 (reception)


Notice: The information in this electronic transmission
(including any attachments) may
contain confidential or legally privileged information and is
intended solely for the
individual(s) or entity(ies) named above.  If you are not an
intended recipient or an
authorized agent, you are hereby notified that reading,
distributing, or otherwise
disseminating or copying, or taking any action based on the
contents of this
transmission is strictly prohibited.  Any unauthorized
interception of this
transmission is illegal under the law.  If you have received this
transmission
in error, please immediately notify the sender by return email
and then destroy all
copies of the transmission.

# EXHIBIT 15



**"Mark F. Evens"**
**<MEVENS@skgf.com>**
09/18/2007 07:08 AM

To ·Rip.Finst@weil.com
cc "Blake Coblentz" <BCOBLENT@skgf.com>
bcc
Subject German

Rip,

    Sorry for the delay. We had received supporting docs in German, but hope to receive the English translations today or tomorrow. Will then send out. I hope our package will address your issues. If not, we will work out a service procedure and move forward.

Mark Fox Evens
Director
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Ave., NW
Washington, DC 20005

202-772-8888 (direct)
202-371-2540 (fax)
202-371-2600 (reception)

Notice: The information in this electronic transmission
(including any attachments) may
contain confidential or legally privileged information and is
intended solely for the
individual(s) or entity(ies) named above.  If you are not an
intended recipient or an
authorized agent, you are hereby notified that reading,
distributing, or otherwise
disseminating or copying, or taking any action based on the
contents of this
transmission is strictly prohibited.  Any unauthorized
interception of this
transmission is illegal under the law.  If you have received this
transmission
in error, please immediately notify the sender by return email
and then destroy all
copies of the transmission.

# EXHIBIT 16



**Sterne Kessler Goldstein Fox**
ATTORNEYS AT LAW

| | | | |
|---|---|---|---|
| Robert Greene Sterne | Peter A. Jackman | Cynthia M. Bouchez | Michael R. Malek* |
| Jorge A. Goldstein | Brian J. Del Buono | Timothy A. Doyle | Carla Ji-Eun Kim |
| David K.S. Cornwell | Mark Fox Evens | Gaby L. Longsworth | Doyle A. Siever* |
| Robert W. Esmond | Vincent L. Capuano | Lori A. Gordon | Ulrike Winkler |
| Tracy-Gene G. Durkin | Elizabeth J. Haanes | Laura A. Vogel | Bryan L. Skelton* |
| Michele A. Cimbala | Michael D. Specht | Bryan S. Wade | Paul A. Calvo |
| Michael B. Ray | Kevin W. McCabe | Bashir M.S. Ali | Robert A. Schwartzman |
| Robert E. Sokohl | Glenn J. Perry | Shannon A. Carroll | C. Matthew Rozier |
| Eric K. Steffe | Edward W. Yee | Anbar F. Khal | Alexandra K. Pechhold |
| Michael Q. Lee | Grant E. Reed | Michelle K. Holoubek | |
| John M. Covert | Virgil Lee Beaston | Marsha A. Rose | Registered Patent Agents• |
| Robert C. Millonig | Theodore A. Wood | Scott A. Schaller | Karen R. Markowicz |
| Donald J. Featherstone | Joseph S. Ostroff | Lei Zhou | Matthew J. Dowd |
| Timothy J. Shea, Jr | Jason D. Eisenberg | Young Tang | Katrina Yujian Pei Quach |
| Michael V. Messinger | Tracy L. Muller | Christopher J. Walsh | Julie A. Heider |
| Judith U. Kim | Jon E. Wright | W. Blake Coblentz* | Mita Mukherjee |
| Jeffrey T. Helvey | LuAnne M. DeSantis | James J. Pohl | |
| Eldora L. Ellison | Ann E. Summerfield | John T. Haran | |
| Donald R. Banowit | Helene C. Carlson | Mark W. Rygiel | |

Scott M. Woodhouse
Peter A. Socarras
Jeffrey K. Mills
Danielle L. Letting
Lori Brandes
Steven C. Oppenheimer
Aaron S. Lukas
Gaurav Asthana

*Of Counsel*
Edward J. Kessler
Kenneth C. Bass III
Marvin C. Guthrie
Christopher P. Wrist

*Admitted only in Maryland
*Admitted only in Virginia
•Practice Limited to
 Federal Agencies

September 19, 2007

*WRITER'S DIRECT NUMBER:*
(202) 772-8550
(202) 772-8888
*INTERNET ADDRESS:*
EKESSLER@SKGF.COM
MEVENS@SKGF.COM

Edward R. Reines, Esq.
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065

*Via Email*

     Re:   febit biotech GmbH v. Codon Devices Inc.,
             U.S. District Court for the District of Delaware, Case No. 1:2007cv00385

Dear Ed:

     Following up on our previous correspondence, enclosed herewith is the requested information that should answer your questions regarding ownership of the patent in suit so that we can move this case forward expeditiously. We are providing these documents with the understanding that you will treat them as "Attorneys Eyes Only" until we work out a Protective Order in this case and that by providing these documents we are not waiving any privileges or work product doctrine.

     Our client's German counsel reviewed the relevant corporate documentation and prepared the attached Statement. The German documents relied upon in the attached Statement are also attached. We have provided English translations for some of the documents, and we will send the rest of the English translations when we receive them. In summary, the documents show that febit biotech GmbH is the current owner of U.S. Patent No. 6,586,211 ("the '211 patent"). As explained in the attached Statement, our client has recently undergone a name change from "febit biotech GmbH" to "febit holding GmbH" (hereinafter, "febit"). This name change was instituted after both febit's and Codon Devices' complaints were filed. Thus, we will take the proper steps to have febit's complaint in the U.S. District Court for the District of Delaware amended to reflect this change. Finally, we have redacted some financial information regarding corporate assets, but we have not redacted any information regarding the ownership of the '211 patent or the appropriate corporate name.

Edward R. Reines
September 19, 2007
Page 2

Please let us know if you have any further questions regarding this matter.

Very truly yours,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Mark Fox Evens

MFE/WBC:cpn
Enclosures
699304_1.DOC



**"Mark F. Evens"**
**<MEVENS@skgf.com>**
09/19/2007 10:48 AM

To    edward.reines@weil.com

cc    Rip.Finst@weil.com, "Ed Kessler"
      <EKESSLER@skgf.com>, "Blake Coblentz"
      <BCOBLENT@skgf.com>

bcc

Subject   FW: Name change documents

Dear Ed,

Please see the attached letter regarding the name change documents for febit biotech GmbH. The name change documents are also attached for your reference.

With best regards,

Mark

Mark Fox Evens
Director
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Ave., NW
Washington, DC 20005

202-772-8888 (direct)
202-371-2540 (fax)
202-371-2600 (reception)

Notice: The information in this electronic transmission
(including any attachments) may
contain confidential or legally privileged information and is
intended solely for the
individual(s) or entity(ies) named above. If you are not an
intended recipient or an
authorized agent, you are hereby notified that reading,
distributing, or otherwise
disseminating or copying, or taking any action based on the
contents of this
transmission is strictly prohibited. Any unauthorized
interception of this
transmission is illegal under the law. If you have received this
transmission
in error, please immediately notify the sender by return email
and then destroy all
copies of the transmission.



Letter.pdf  Statement.pdf  A1.pdf  A2.pdf  A3.pdf  A3 Part 2.pdf  A4.pdf  A5.pdf  A6.pdf  A7.pdf  A8.pdf  A9.pdf  A10.pdf  A11.pdf

# EXHIBIT 17



"Mark F. Evens"
<MEVENS@skgf.com>
09/28/2007 03:26 PM

To   edward.reines@weil.com
cc   ·Rip.Finst@weil.com
bcc
Subject   FW: Name change documents

Here are the remaining documents, translated into English.

Mark Fox Evens
Director
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Ave., NW
Washington, DC 20005

202-772-8888 (direct)
202-371-2540 (fax)
202-371-2600 (reception)

**From:** Blake Coblentz
**Sent:** Friday, September 28, 2007 5:58 PM
**To:** Mark F. Evens
**Subject:** Name change documents

Mark,

Here are the remaining english translated name change documents.

Thanks,
Blake

Notice: The information in this electronic transmission
(including any attachments) may
contain confidential or legally privileged information and is
intended solely for the
individual(s) or entity(ies) named above.  If you are not an
intended recipient or an
authorized agent, you are hereby notified that reading,
distributing, or otherwise
disseminating or copying, or taking any action based on the
contents of this
transmission is strictly prohibited.  Any unauthorized
interception of this
transmission is illegal under the law.  If you have received this
transmission
in error, please immediately notify the sender by return email
and then destroy all

copies of the transmission.



A4 english translation.pdf     A5 english translation.pdf     A8englishtranslation.pdf

# EXHIBIT 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CODON DEVICES, INC.<br>One Kendall Square<br>Building 300, 3rd Flr.<br>Cambridge, MA 02139,<br><br>          Plaintiff,<br><br>     v.<br><br>FEBIT BIOTECH GMBH<br>Im Neuenheimer Feld 519<br>D-69120 Heidelberg, Germany,<br><br>FEBIT FERRARIUS BIOTECHNOLOGY<br>GMBH<br>Kafertaler Strasse 190<br>D-68167 Mannheim, Germany,<br><br>     and<br><br>FEBIT, GMBH<br>c/o Sterne, Kessler, Goldstein and Fox<br>1100 New York Avenue, N.W.<br>Washington, DC 20005,<br><br>          Defendants. | Case: 1:07-cv-01177<br>Assigned To : Walton, Reggie B.<br>Assign. Date : 6/29/2007<br>Description: General Civil<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Codon Devices, Inc. ("Codon"), by and through its attorneys, alleges as

follows:

## NATURE OF ACTION

1.    This action is for a declaratory judgment that United States Patent No. 6,586,211

(the "'211 Patent") is invalid, unenforceable and not infringed by Codon.

## PARTIES

2.      Codon is a Delaware corporation having its principal place of business at One Kendall Square, Building 300, Cambridge, Massachusetts.

3.      Upon information and belief, Defendant febit biotech GmbH ("febit biotech") is a German corporation having its principal place of business at IM Neuenheimer Feld 519, Heidelberg, Germany, D-69120.

4.      Upon information and belief, Defendant Febit Ferrarius Biotechnology GmbH ("Febit Ferrarius") is a German company having its principal place of business at Kafertaler Strasse 190, Mannheim, Germany, D-68167.

5.      Upon information and belief, Defendant febit, GmbH ("febit, GmbH") is a foreign company having its last known address through its counsel and agent at Sterne, Kessler, Goldstein and Fox, 1100 New York Avenue, N.W., Washington, DC, 20005.

## JURISDICTION AND VENUE

6.      This is an action arising under the patent laws of the United States, Title 35 of the United States Code, and the laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§ 2201 and 2202.  Based on the allegations set forth in paragraphs 10 through 43, there is a conflict of asserted rights between the parties and an actual controversy exists between Codon and Defendants with respect to the ownership, infringement, validity, scope and enforceability of the '211 Patent.

7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

8.      Upon information and belief, no Defendant has designated with the United States Patent and Trademark Office ("PTO") a person residing in the United States on whom process or

2

notice of proceedings affecting the '211 Patent or rights thereunder may be served. Defendants are thus subject to personal jurisdiction in the District of Columbia under 35 U.S.C. § 293.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) and (d).

## BACKGROUND

10.      Codon repeats and realleges each and every allegation contained in paragraphs 1 through 9 hereof with the same force and effect as if fully set forth herein.

11.      On December 6, 2006, an attorney from a law firm in Washington, D.C., proclaiming to represent febit, GmbH sent Codon a letter alleging that febit, GmbH owned the '211 Patent and "[i]t appears that it is difficult, if not impossible, for Codon Devices to operate as it does in the area of synthetic gene manufacturing without practicing one or more claims of febit's '211 patent." In that letter, febit, GmbH demanded that Codon immediately discontinue using the allegedly infringing methods.

12.      On June 15, 2007, febit biotech filed suit against Codon in the U.S. District Court for the District of Delaware for infringement of the '211 Patent: *febit biotech GmbH v. Codon Devices, Inc.*, C.A. No. 07-385 (D. Del.) (the "Delaware Action").

13.      Febit Ferrarius and febit, GmbH are not named as parties to the Complaint in the Delaware Action.

14.      On June 18, 2007, the Chairman of the Board of febit biotech sent to a member of Codon's Board of Directors a letter alleging that Codon infringed "febit's intellectual property rights" and, thus, "febit" had commenced "legal action." The letter further stated that the Complaint in the Delaware Action had not been served and that the company "ha[d] 120 days for doing so." The letter demanded a "pre-emptive settlement."

15.     On information and belief, febit biotech has not served on Codon the Complaint in the Delaware Action.

16.     On information and belief, febit, GmbH, Febit Ferrarius and febit biotech are alter egos and/or agents of one another.

17.     On information and belief, febit, GmbH may be a fictitious entity or an alias for Febit Ferrarius, febit biotech and/or another company.

## CONFLICTING CLAIMS OF OWNERSHIP

18.     Codon repeats and realleges each and every allegation contained in paragraphs 1 through 17 hereof with the same force and effect as if fully set forth herein.

19.     Febit Ferrarius is the sole named assignee on the face of the '211 Patent.

20.     On information and belief, Febit Ferrarius is also identified as the sole assignee of the '211 Patent on the assignment Abstract of Title for the '211 Patent ("Abstract of Title") on file with the PTO.

21.     In its Complaint in the Delaware Action, febit biotech alleged that it, not Febit Ferrarius, "is the owner of the entire right, title and interest in and to U.S. Patent No. 6,586,211 B1."

22.     On June 15, 2007, the same day febit biotech filed its Complaint, a "Report On The Filing Or Determination Of An Action Regarding A Patent Or Trademark" ("Report") was filed in the Delaware Action that identified Febit Ferrarius, not febit biotech, as the sole "Holder of Patent."

23.     By letter dated December 6, 2006, counsel and agent for febit, GmbH alleged that febit, GmbH is "the owner" of the '211 Patent.

4

24.    Thus, each Defendant has independently alleged that it is the sole owner of the '211 Patent.  Accordingly, an apparent controversy exists among Defendants regarding which, if any, of febit biotech, Febit Ferrarius and/or febit, GmbH is the legal assignee and owner of the '211 Patent.

25.    Codon wishes to be free from claims of infringement of the '211 Patent brought by any and all Defendants, regardless of which Defendant may be the legal assignee and owner of the '211 Patent.  Based on the allegations set forth in paragraphs 26 through 43, any Defendant that may be the legal assignee and owner of the '211 Patent holds an invalid, unenforceable patent that Codon does not presently infringe and has not in the past infringed.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment of Noninfringement of the '211 Patent

26.    Codon repeats and realleges each and every allegation contained in paragraphs 1 through 25 hereof with the same force and effect as if fully set forth herein.

27.    In the Complaint in the Delaware Action, febit biotech claims that Codon infringes the '211 Patent.

28.    In a letter dated December 6, 2006, febit, GmbH alleged that Codon infringes the '211 Patent.

29.    Codon contends that it does not infringe the '211 Patent, regardless which Defendant, if any, is the assignee and owner of the '211 Patent.

30.    Accordingly, an actual controversy exists between Codon and Defendants as to the infringement of the '211 Patent.  Codon desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is

necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties.

## SECOND CLAIM FOR RELIEF

### Declaratory Judgment of Invalidity of the '211 Patent

31.     Codon repeats and realleges each and every allegation contained in paragraphs 1 through 25 hereof with the same force and effect as if fully set forth herein.

32.     febit biotech claims that the '211 Patent is valid.

33.     febit, GmbH alleges that the '211 Patent is valid.

34.     Codon contends that the '211 Patent is invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112, regardless which Defendant, if any, is the assignee and owner of the '211 Patent.

35.     Accordingly, an actual controversy exists between Codon and Defendants as to the validity of the '211 Patent. Codon desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties.

## THIRD CLAIM FOR RELIEF

### Declaratory Judgment of Unenforceability of the '211 Patent

36.     Codon repeats and realleges each and every allegation contained in paragraphs 1 through 25 hereof with the same force and effect as if fully set forth herein.

37.     febit biotech claims that the '211 Patent is enforceable.

38.     febit, GmbH alleges that the '211 Patent is enforceable.

39.     Codon contends that the '211 Patent is unenforceable by reason of inequitable conduct committed by Defendants, the named inventors of the '211 Patent, and/or their attorneys

(collectively and individually, the "Applicants") during prosecution of the '211 Patent before the PTO.

40.    In particular, the Applicants failed to disclose to the PTO certain prior art and information material to the application for the '211 Patent, including United States Patent No. 5,755,942 (the "'942 Patent") and United States Patent No. 5,723,320 (the "'320 Patent"). The '942 Patent and '320 Patent are highly material to the subject matter claimed in the '211 Patent because, *inter alia*, each reference describes a system and method for parallel synthesis of a plurality of polymers using a microelectronic and fluidic array.

41.    Upon information and belief, the Applicants had knowledge of the '942 Patent and '320 Patent prior to and during prosecution of the application for the '211 Patent and, upon information and belief, the Applicants failed to disclose these references with intent to deceive. The Applicants learned of the '942 Patent and '320 Patent from an International Search Report, dated May 11, 2000, for WO 00/13018, a foreign counterpart to United States Patent No. 7,097,974 to the same named inventors of the '211 Patent.

42.    Despite the materiality of the '942 Patent and '320 Patent and the Applicants' knowledge of such reference prior to and during prosecution of the application for the '211 Patent, the Applicants did not disclose the '942 Patent and '320 Patent to the PTO. The '211 Patent is, therefore, unenforceable by reason of the Applicants' inequitable conduct.

43.    By reason of the facts set forth in paragraphs 36 through 42, an actual controversy exists between Codon and Defendants as to the enforceability of the '211 Patent. Codon desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties.

## PRAYER FOR RELIEF

WHEREFORE, Codon prays for judgment as follows:

A.     Declaring that Codon has not, and does not, infringe, directly or indirectly, any valid and enforceable claim of the '211 Patent;

B.     Declaring that the claims of the '211 Patent are invalid;

C.     Declaring that the '211 Patent is unenforceable;

D.     Declaring the true ownership of the '211 Patent;

E.     Declaring that all Defendants and each of their officers, employees, agents, alter egos, attorneys, and any persons in active concert or participation with them be restrained and enjoined from further prosecuting or instituting any action against Codon claiming that the '211 patent is valid, enforceable, or infringed, or from representing that Codon's products or services infringe the '211 patent;

F.     Declaring this an exceptional case pursuant to 35 U.S.C. § 285, and awarding Codon its attorney fees, costs, and expenses; and

G.     Awarding Codon such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Codon demands a trial by jury, pursuant to Fed. R. Civ. P. 38(b), on all disputed issues.

Respectfully submitted,

Dated: June 29, 2007

_(signature)_

Adam P. Strochak (D.C. Bar No. 439308)
WEIL, GOTSHAL & MANGES LLP
1300 Eye St. NW, Suite 900
Washington, DC 20005
Telephone: (202) 682-7000

Of Counsel:

Edward R. Reines (Cal. Bar No. 135960)
Nicholas A. Brown (Cal. Bar No. 198210)
Rip Finst (Cal. Bar No. 234478)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: 650-802-3000
Fax: 650-802-3100

*Counsel For Plaintiff*
*Codon Devices, Inc.*

# EXHIBIT 19

# FEDERAL PRACTICE
## AND
## PROCEDURE

---

### WRIGHT AND MILLER

### FEDERAL RULES OF CIVIL PROCEDURE

KF8840
.W92

c.6
men n/a

# FEDERAL PRACTICE

## AND

# PROCEDURE®

By

The Late CHARLES ALAN WRIGHT

Charles Alan Wright Chair in Federal Courts
The University of Texas

and

ARTHUR R. MILLER

Bruce Bromley Professor of Law, Harvard University

## Federal Rules of Civil Procedure

### Rules 7 to 8

———

### Sections 1181 to 1290

## Volume 5

[Date First Edition Volume published:  1969]
[Date Second Edition Volume published: 1990]
[Date Third Edition Volume published: 2004]



**THOMSON**

**WEST**

Mat #40191414

© 2004 West, a Thomson business

**ISBN** 0-314-11099-2

West, a Thomson business, has created this publication to provide you with accurate and authoritative information concerning the subject matter covered. However, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. West is not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

# CONTENTS

## Volume 4

| Chapters | Sections |
|---|---|
| 1. History of Procedure in the Federal Courts | 1001–1010 |
| 2. Scope and Effect of Rules; One Form of Action | 1011–1050 |

**Rule**

| | |
|---|---|
| 1. Scope and Purpose of Rules | 1011–1040 |
| 2. One Form of Action | 1041–1050 |
| 3. Commencement of Action; Service of Process and Other Papers; Time | 1051–1068.1 |

**Rule**

| | |
|---|---|
| 3. Commencement of Action | 1051–1060 |
| 4. Summons | 1061–1068.1 |

## Volume 4A

| | |
|---|---|
| 3. Commencement of Action; Service of Process and Other Papers; Time—Continued | 1069–1105 |

**Rule**

| | |
|---|---|
| 4. Summons—Continued | 1069–1105 |

## Volume 4B

| | |
|---|---|
| 3. Commencement of Action; Service of Process and Other Papers; Time—Continued | 1106–1180 |

**Rule**

| | |
|---|---|
| 4. Summons—Continued | 1106–1140 |
| 5. Serving and Filing of Pleadings and Other Papers | 1141–1160 |
| 6. Time | 1161–1180 |

## Volume 5

| | |
|---|---|
| 4. Pleadings and Motions | 1181–1290 |

**Rule**

| | |
|---|---|
| 7. Pleadings Allowed; Form of Motions | 1181–1196 |
| 7.1. Disclosure Statement | 1197–1200 |
| 8. General Rules of Pleading | 1201–1290 |

## Volume 5A

| | |
|---|---|
| 4. Pleadings and Motions—Continued | 1291–1340 |

**Rule**

| | |
|---|---|
| 9. Pleading Special Matters | 1291–1320 |
| 10. Form of Pleadings | 1321–1330 |
| 11. Signing Pleadings | 1331-1340 |

# CONTENTS

## Volume 5B

| Chapters | Sections |
|---|---|
| 4. Pleadings and Motions—Continued | 1341–1357 |
| **Rule** | |
| 12. Defenses and Objections—When and How Presented—By Pleading or Motion for Judgment on the Pleadings | 1341–1357 |

## Volume 5C

| Chapters | Sections |
|---|---|
| 4. Pleadings and Motions—Continued | 1358-1397 |
| **Rule** | |
| 12. Defenses and Objections—When and How Presented—By Pleading or Motion for Judgment on the Pleadings—Continued | 1358-1397 |

## Volume 6

| Chapters | Sections |
|---|---|
| 4. Pleadings and Motions—Continued | 1401–1490 |
| **Rule** | |
| 13. Counterclaims and Cross-Claims | 1401–1440 |
| 14. Third-Party Practice | 1441–1470 |
| 15. Amended and Supplemental Pleadings | 1471–1490 |

## Volume 6A

| Chapters | Sections |
|---|---|
| 4. Pleadings and Motions—Continued | 1491–1540 |
| **Rule** | |
| 15. Amended and Supplemental Pleadings—Continued | 1491–1520 |
| 16. Pretrial Procedure; Scheduling; Management | 1521–1540 |
| 5. Parties | 1541–1600 |
| **Rule** | |
| 17. Parties Plaintiff and Defendant; Capacity | 1541–1580 |
| 18. Joinder of Claims and Remedies | 1581–1600 |

## Volume 7

| Chapters | Sections |
|---|---|
| 5. Parties—Continued | 1601–1750 |
| **Rule** | |
| 19. Joinder of Persons Needed for Just Adjudication | 1601–1650 |
| 20. Permissive Joinder of Parties | 1651–1680 |
| 21. Misjoinder and Nonjoinder of Parties | 1681–1700 |
| 22. Interpleader | 1701–1750 |

# CONTENTS

## Volume 7A

| Chapters | Sections |
| --- | --- |
| 5. Parties—Continued | 1751–1786 |
| **Rule** | |
| 23. Class Actions | 1751–1780 |

## Volume 7B

| | |
| --- | --- |
| 5. Parties—Continued | 1781–1820 |
| **Rule** | |
| 23. Class Actions—Continued | 1781–1820 |
| 23.1 Derivative Actions by Shareholders | 1821–1860 |
| 23.2 Actions Relating to Unincorporated Associations | 1861–1900 |
| 24. Intervention | 1901–1950 |
| 25. Substitution of Parties | 1951–2000 |

## Volume 8

| | |
| --- | --- |
| 6. Depositions and Discovery | 2001–2100 |
| **Rule** | |
| 26. General Provisions Governing Discovery; Duty of Disclosure | 2001–2070 |
| 27. Depositions Before Action or Pending Appeal | 2071–2080 |
| 28. Persons Before Whom Depositions May Be Taken | 2081–2090 |
| 29. Stipulations Regarding Discovery Procedure | 2091–2100 |

## Volume 8A

| | |
| --- | --- |
| 6. Depositions and Discovery—Continued | 2101–2300 |
| **Rule** | |
| 30. Depositions Upon Oral Examination | 2101–2130 |
| 31. Depositions Upon Written Questions | 2131–2140 |
| 32. Use of Depositions in Court Proceedings | 2141–2160 |
| 33. Interrogatories to Parties | 2161–2200 |
| 34. Production of Documents and Things and Entry Upon Land for Inspection and Other Purposes | 2201–2230 |
| 35. Physical and Mental Examinations of Persons | 2231–2250 |
| 36. Requests for Admission | 2251–2280 |
| 37. Failure to Make Disclosure or Cooperate in Discovery; Sanctions | 2281–2300 |

# CONTENTS

## Volume 9

| Chapters | | | Sections |
|---|---|---|---|
| 7. | Trials | | 2301–2450 |
| **Rule** | | | |
| 38. | Jury Trial of Right | | 2301–2330 |
| 39. | Trial by Jury or by the Court | | 2331–2350 |
| 40. | Assignment of Cases for Trial | | 2351–2360 |
| 41. | Dismissal of Actions | | 2361–2380 |
| 42. | Consolidation; Separate Trials | | 2381–2400 |
| 43. | Taking of Testimony | | 2401–2430 |
| 44. | Proof of Official Record | | 2431–2440 |
| 44.1. | Determination of Foreign Law | | 2441–2450 |

## Volume 9A

| | | Sections |
|---|---|---|
| 7. Trials—Continued | | 2451–2650 |
| **Rule** | | |
| 45. Subpoena | | 2451–2470 |
| 46. Exceptions Unnecessary | | 2471–2480 |
| 47. Selection of Jurors | | 2481–2490 |
| 48. Selection of Jurors—Participation in Verdict | | 2491–2500 |
| 49. Special Verdicts and Interrogatories | | 2501–2520 |
| 50. Judgment as a Matter of Law in Actions Tried by Jury; Alternative Motion for New Trial; Conditional Rulings | | 2521–2550 |
| 51. Instructions to Jury: Objection | | 2551–2570 |
| 52. Findings by the Court | | 2571–2600 |
| 53. Masters | | 2601–2650 |

## Volume 10

| | | Sections |
|---|---|---|
| 8. Judgment | | 2651–2780 |
| **Rule** | | |
| 54. Judgments; Costs | | 2651–2680 |

## Volume 10A

| | | Sections |
|---|---|---|
| 8. Judgment—Continued | | 2681–2729.1 |
| **Rule** | | |
| 55. Default | | 2681–2710 |
| 56. Summary Judgment | | 2711–2729.1 |

## Volume 10B

| | | Sections |
|---|---|---|
| 8. Judgment—Continued | | 2730–2780 |
| **Rule** | | |
| 56. Summary Judgment—Continued | | 2730–2750 |
| 57. Declaratory Judgments | | 2751–2780 |

VIII

# CONTENTS

## Volume 11

| Chapters | Sections |
|---|---|
| 8. Judgment—Continued | 2781–2930 |

**Rule**

| | |
|---|---|
| 58. Entry of Judgment | 2781–2800 |
| 59. New Trials; Amendment of Judgments | 2801–2850 |
| 60. Relief From Judgment or Order | 2851–2880 |
| 61. Harmless Error | 2881–2900 |
| 62. Stay of Proceedings to Enforce a Judgment | 2901–2920 |
| 63. Inability of a Judge to Proceed | 2921–2930 |

## Volume 11A

| | |
|---|---|
| 9. Provisional and Final Remedies and Special Proceedings | 2931–2980 |

**Rule**

| | |
|---|---|
| 64. Seizure of Person or Property | 2931–2940 |
| 65. Injunctions | 2941–2970 |
| 65.1 Security: Proceedings Against Sureties | 2971–2980 |

## Volume 12

| | |
|---|---|
| 9. Provisional and Final Remedies and Special Proceedings—Continued | 2981–3070 |

**Rule**

| | |
|---|---|
| 66. Receivers Appointed by Federal Courts | 2981–2990 |
| 67. Deposit in Court | 2991–3000 |
| 68. Offer of Judgment | 3001–3010 |
| 69. Execution | 3011–3020 |
| 70. Judgment for Specific Acts; Vesting Title | 3021–3030 |
| 71. Process in Behalf of and Against Persons Not Parties | 3031–3040 |
| 71A. Condemnation of Property | 3041–3060 |
| 10. Appeals (Abrogated) | 3061–3065 |

**Rule**

| | |
|---|---|
| 72. Appeal From a District Court to the Supreme Court (Abrogated) | 3061 |
| 73. Appeal to a Court of Appeals (Abrogated) | 3062 |
| 74. Joint or Several Appeals to the Supreme Court or to a Court of Appeals; Summons and Severance Abolished (Abrogated) | 3063 |
| 75. Record on Appeal to a Court of Appeals (Abrogated) | 3064 |
| 76. Record on Appeal to a Court of Appeals; Agreed Statement (Abrogated) | 3065 |

# CONTENTS

| Chapters | Sections |
|---|---|
| 11. Magistrate Judges ---------------------------------------------- | 3066–3080 |
| **Rule** | |
| 72. Magistrate Judges; Pretrial Orders ----------------- | 3068–3070.2 |
| 73. Magistrate Judges; Trial by Consent and Appeal Options---------------------------------------- | 3071–3073 |
| 74. Method of Appeal From Magistrate Judge to District Judge Under Title 28, U.S.C. § 636(c)(4) and Rule 73(d) ------------------------ | 3074–3074.2 |
| 75. Proceedings on Appeal From Magistrate Judge to District Judge Under Rule 73(d)------------- | 3075–3075.2 |
| 76. Judgment of the District Judge on the Appeal Under Rule 73(d) and Costs ---------------------- | 3076 |
| 12. District Courts and Clerks --------------------------------- | 3081–3130 |
| **Rule** | |
| 77. District Courts and Clerks ----------------------------- | 3081–3090 |
| 78. Motion Day--------------------------------------------- | 3091–3100 |
| 79. Books and Records Kept by the Clerk and Entries Therein---------------------------------------- | 3101–3120 |
| 80. Stenographer; Stenographic Report or Transcript as Evidence ------------------------------ | 3121–3130 |
| 13. General Provisions------------------------------------------ | 3131–3200 |
| **Rule** | |
| 81. Applicability in General --------------------------------- | 3131–3140 |
| 82. Jurisdiction and Venue Unaffected ------------------ | 3141–3150 |
| 83. Rules by District Courts --------------------------------- | 3151–3160 |
| 84. Forms-------------------------------------------------- | 3161–3170 |
| 85. Title ---------------------------------------------------- | 3171–3180 |
| 86. Effective Date ------------------------------------------ | 3181–3200 |
| 14. Supplemental Rules for Certain Admiralty and Maritime Claims ----------------------------------------- | 3201–3300 |
| **Rule** | |
| A. Scope of Rules --------------------------------------------- | 3201–3210 |
| B. Attachment and Garnishment: Special Provisions------------------------------------------------------ | 3211–3220 |
| C. Actions in Rem: Special Provisions -------------------- | 3221–3230 |
| D. Possessory, Petitory, and Partition Actions ------- | 3231–3240 |
| E. Actions in Rem and Quasi in Rem: General Provisions ---------------------------------------------------- | 3241–3250 |
| F. Limitation of Liability ----------------------------------- | 3251–3300 |

x

# CONTENTS

## Volume 12A

### Appendices

App.

A.  Time Table for Lawyers in Federal Civil Cases.

B.  Orders of the Supreme Court of the United States Adopting and
     Amending Rules.

C.  Advisory Committee Notes for the Federal Rules of Civil Proce-
     dure for the United States District Courts.

D.  Appendix of Forms.

E.  Advisory Committee Notes to the Supplemental Rules for Cer-
     tain Admiralty and Maritime Claims.

F.  1955 Report of the Advisory Committee Proposed Amendments
     to the Rules of Civil Procedure for the United States District
     Courts.D.  dix of Forms.E.  Advisory Committee Notes to the
     Supplemental Rules for Cer-
        tain Admiralty and Maritime Claims.

F.  1955 Report of the Advisory Committee Proposed Amendments
     to the Rules of Civil Procedure for the United States District
     Courts.

\*

**§ 1285**        STANDARDS FOR PLEADING        Ch. 4
Rule 8

Rule 11(c) provides that if a pleading is signed in violation of the rule, the district court upon motion with notice and an opportunity to respond or on its own initiative may impose sanctions after the expiration of a twenty-one day "safe harbor" period during which the notified party may amend or withdraw the challenged pleading. If the "safe harbor" is not properly utilized by the pleader and corrective action taken, the court may impose upon the signer, the law firm, the represented party, or all of them, an appropriate sanction "to deter repetition" of the offending conduct.[6] The sanction may include "directives of a nonmonetary nature," an order to pay a penalty into court, or "when warranted for effective deterrence," an order to pay the other party's expenses incurred because of the filing of the offending pleading. These expenses may include a reasonable attorney's fee. These sanctions are discussed more fully in this Treatise under Rule 11.[7]

## I.  CONSTRUCTION OF PLEADINGS

## § 1286.  Construction of Pleadings

Federal Rule 8(f) establishes a fundamental proposition about the way the pleadings are to be construed in federal civil litigation. The rule's principle has been echoed in countless cases by courts at every level of the federal judicial system and throughout the country; the provision requires, and the large number of illustrative cases in the note below demonstrate, that all pleadings be construed by the district judge to do substantial justice.[1] This provision

**6. Rule 11 sanctions imposed**

Savino v. Computer Credit, Inc., D.C.N.Y.1997, 960 F.Supp. 599 (suggesting in dictum that party's sudden and unexplained reversal of position laid out in pleadings may indicate prior behavior subject to Rule 11 sanctions, but denying motion for sanctions in instant case).

Eastman Kodak Co. v. Knight, D.C.N.H. 1994, 1994 WL 258538 (suggesting in dictum that filing inconsistent claims in separate action may be subject to Rule 11 sanctions, but denying motion for sanctions in instant case).

A former employee's claims for an employer's breach of a collective bargaining agreement, a union's breach of its duty of fair representation, and age discrimination were flawed hopelessly from the beginning and were pursued recklessly, vexatiously, and in bad faith, warranting the assessment of attorney fees and expenses. Fisher v. CPC International, Inc., D.C.Mo.1984, 591 F.Supp. 228.

**But see**

A party's inconsistent pleadings, allowed under Rule 8(e)(2), are not grounds for imposition of Rule 11 sanctions for frivolousness. Pivot Point Int'l, Inc. v. Charlene Prods., Inc., D.C.Ill.2001, 170 F.Supp.2d 828.

**7.  Sanctions**

See the discussion in vol. 5A, § 1336.

**§ 1286**

**1.  Substantial justice**

**Supreme Court**

Imposing a heightened pleading standard in employment discrimination

permissiveness toward the pleadings by the judicial system eventually may be reflected as an unwarranted increase in the burden on the other parties and the district judge. Furthermore, a pleader's conclusory allegations of law, unsupported factual assertions, and unwarranted inferences do not have to be accepted by the federal court as true, particularly on a Rule 12(b)(6) motion to dismiss or a Rule 12(c) for judgment on the pleadings.[18]

Cherry v. Dealers Transp. Co., D.C.Mo.1946, 64 F.Supp. 682.

**See also**

In Meltzer v. Hotel Corp. of America, D.C.Ohio 1959, 25 F.R.D. 62, modified on other grounds D.C.Ohio 1960, 25 F.R.D. 64, the plaintiff was allowed to amend his complaint to name the real defendant even though the statute of limitations had run. Originally, the court held that the defendant's denials were adequate to apprise the plaintiff that the defendant was not the real defendant.

**18. Conclusory allegations**

Terra Venture, Inc. v. JDN Real Estate, D.C.Kan.2003, 2003 WL 21003504.

Old Colony Ventures I v. SMWNPF Holdings, Inc., D.C.Kan.1995, 910 F.Supp. 543.

Stephens v. Herring, D.C.Va.1993, 827 F.Supp. 359.

Perry v. Grant, D.C.Pa.1991, 775 F.Supp. 821, 824, citing Conley v. Gibson, 1957, 78 S.Ct. 99, 355 U.S. 41, 2 L.Ed.2d 80.

Although the complaint is to be liberally construed in favor of the plaintiff on a motion to dismiss, conclusory allegations of law, unsupported conclusions, and unwarranted inferences need not be accepted as true. Pennsylvania House, Inc. v. Barrett, D.C.Pa.1991, 760 F.Supp. 439.

**§§ 1287–1290 are reserved for supplementary material.**

†

# EXHIBIT 20

# FEDERAL PRACTICE
## AND
## PROCEDURE

### WRIGHT AND MILLER

### FEDERAL RULES OF CIVIL PROCEDURE

KF8840
.W92

c.6
men n/a

# FEDERAL PRACTICE

## AND

# PROCEDURE®

By

The Late CHARLES ALAN WRIGHT

Charles Alan Wright Chair in Federal Courts
The University of Texas

and

ARTHUR R. MILLER

Bruce Bromley Professor of Law, Harvard University

## Federal Rules of Civil Procedure
### Rule 12

———

### Sections 1358 to 1397

## Volume 5C

[Date First Edition Volume published:  1969]
[Date Second Edition Volume published: 1990]
[Date Third Edition Volume published: 2004]



Mat #40274665

© 2004 West, a Thomson business

ISBN 0–314–11776-8

West, a Thomson business, has created this publication to provide you with accurate and authoritative information concerning the subject matter covered. However, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. West is not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

# CONTENTS

## Volume 4

| Chapters | Sections |
|---|---|
| 1. History of Procedure in the Federal Courts ------------ | 1001–1010 |
| 2. Scope and Effect of Rules; One Form of Action -------- | 1011–1050 |

**Rule**

| | |
|---|---|
| 1. Scope and Purpose of Rules ---------------------------- | 1011–1040 |
| 2. One Form of Action ----------------------------------- | 1041–1050 |
| 3. Commencement of Action; Service of Process and Other Papers; Time ----------------------------------- | 1051–1068.1 |

**Rule**

| | |
|---|---|
| 3. Commencement of Action ---------------------------- | 1051–1060 |
| 4. Summons --------------------------------------------- | 1061–1068.1 |

## Volume 4A

| | |
|---|---|
| 3. Commencement of Action; Service of Process and Other Papers; Time—Continued------------------------ | 1069–1105 |

**Rule**

| | |
|---|---|
| 4. Summons—Continued -------------------------------- | 1069–1105 |

## Volume 4B

| | |
|---|---|
| 3. Commencement of Action; Service of Process and Other Papers; Time—Continued------------------------ | 1106–1180 |

**Rule**

| | |
|---|---|
| 4. Summons—Continued -------------------------------- | 1106–1140 |
| 5. Serving and Filing of Pleadings and Other Papers------------------------------------------------ | 1141–1160 |
| 6. Time--------------------------------------------------- | 1161–1180 |

## Volume 5

| | |
|---|---|
| 4. Pleadings and Motions ------------------------------- | 1181–1290 |

**Rule**

| | |
|---|---|
| 7. Pleadings Allowed; Form of Motions---------------- | 1181–1196 |
| 7.1. Disclosure Statement ------------------------------- | 1197–1200 |
| 8. General Rules of Pleading--------------------------- | 1201–1290 |

## Volume 5A

| | |
|---|---|
| 4. Pleadings and Motions—Continued ----------------- | 1291–1340 |

**Rule**

| | |
|---|---|
| 9. Pleading Special Matters --------------------------- | 1291–1320 |
| 10. Form of Pleadings --------------------------------- | 1321–1330 |
| 11. Signing Pleadings--------------------------------- | 1331-1340 |

v

# CONTENTS

## Volume 5B

| Chapters | Sections |
|---|---|
| 4. Pleadings and Motions—Continued | 1341–1357 |
| **Rule** | |
| 12. Defenses and Objections—When and How Presented—By Pleading or Motion for Judgment on the Pleadings | 1341–1357 |

## Volume 5C

| 4. Pleadings and Motions—Continued | 1358-1397 |
|---|---|
| **Rule** | |
| 12. Defenses and Objections—When and How Presented—By Pleading or Motion for Judgment on the Pleadings—Continued | 1358-1397 |

## Volume 6

| 4. Pleadings and Motions—Continued | 1401–1490 |
|---|---|
| **Rule** | |
| 13. Counterclaims and Cross-Claims | 1401–1440 |
| 14. Third-Party Practice | 1441–1470 |
| 15. Amended and Supplemental Pleadings | 1471–1490 |

## Volume 6A

| 4. Pleadings and Motions—Continued | 1491–1540 |
|---|---|
| **Rule** | |
| 15. Amended and Supplemental Pleadings—Continued | 1491–1520 |
| 16. Pretrial Procedure; Scheduling; Management | 1521–1540 |
| 5. Parties | 1541–1600 |
| **Rule** | |
| 17. Parties Plaintiff and Defendant; Capacity | 1541–1580 |
| 18. Joinder of Claims and Remedies | 1581–1600 |

## Volume 7

| 5. Parties—Continued | 1601–1750 |
|---|---|
| **Rule** | |
| 19. Joinder of Persons Needed for Just Adjudication | 1601–1650 |
| 20. Permissive Joinder of Parties | 1651–1680 |
| 21. Misjoinder and Nonjoinder of Parties | 1681–1700 |
| 22. Interpleader | 1701–1750 |

VI

# CONTENTS

## Volume 7A

| Chapters | Sections |
|---|---|
| 5. Parties—Continued------------------------------------------- | 1751–1786 |
| Rule | |
| 23.  Class Actions ----------------------------------------- | 1751–1780 |

## Volume 7B

| | |
|---|---|
| 5. Parties—Continued ----------------------------------------- | 1781–1820 |
| Rule | |
| 23.   Class Actions—Continued --------------------------- | 1781–1820 |
| 23.1 Derivative Actions by Shareholders --------------- | 1821–1860 |
| 23.2 Actions Relating to Unincorporated Associa-tions----------------------------------------------------- | 1861–1900 |
| 24.   Intervention----------------------------------------- | 1901–1950 |
| 25.   Substitution of Parties-------------------------------- | 1951–2000 |

## Volume 8

| | |
|---|---|
| 6. Depositions and Discovery------------------------------- | 2001–2100 |
| Rule | |
| 26.  General Provisions Governing Discovery; Duty of Disclosure---------------------------------------- | 2001–2070 |
| 27.  Depositions Before Action or Pending Appeal --- | 2071–2080 |
| 28.  Persons Before Whom Depositions May Be Taken------------------------------------------------------ | 2081–2090 |
| 29.  Stipulations Regarding Discovery Procedure ---- | 2091–2100 |

## Volume 8A

| | |
|---|---|
| 6. Depositions and Discovery—Continued ------------------ | 2101–2300 |
| Rule | |
| 30.  Depositions Upon Oral Examination -------------- | 2101–2130 |
| 31.  Depositions Upon Written Questions-------------- | 2131–2140 |
| 32.  Use of Depositions in Court Proceedings --------- | 2141–2160 |
| 33.  Interrogatories to Parties ----------------------- | 2161–2200 |
| 34.  Production of Documents and Things and Entry Upon Land for Inspection and Other Purposes | 2201–2230 |
| 35.  Physical and Mental Examinations of Persons -- | 2231–2250 |
| 36.  Requests for Admission -------------------------- | 2251–2280 |
| 37.  Failure to Make Disclosure or Cooperate in Dis-covery; Sanctions ------------------------------------- | 2281–2300 |

# CONTENTS

## Volume 9

| Chapters | | Sections |
|---|---|---|
| 7. Trials | | 2301–2450 |
| **Rule** | | |
| 38. | Jury Trial of Right | 2301–2330 |
| 39. | Trial by Jury or by the Court | 2331–2350 |
| 40. | Assignment of Cases for Trial | 2351–2360 |
| 41. | Dismissal of Actions | 2361–2380 |
| 42. | Consolidation; Separate Trials | 2381–2400 |
| 43. | Taking of Testimony | 2401–2430 |
| 44. | Proof of Official Record | 2431–2440 |
| 44.1. | Determination of Foreign Law | 2441–2450 |

## Volume 9A

| | | |
|---|---|---|
| 7. Trials—Continued | | 2451–2650 |
| **Rule** | | |
| 45. | Subpoena | 2451–2470 |
| 46. | Exceptions Unnecessary | 2471–2480 |
| 47. | Selection of Jurors | 2481–2490 |
| 48. | Selection of Jurors—Participation in Verdict | 2491–2500 |
| 49. | Special Verdicts and Interrogatories | 2501–2520 |
| 50. | Judgment as a Matter of Law in Actions Tried by Jury; Alternative Motion for New Trial; Conditional Rulings | 2521–2550 |
| 51. | Instructions to Jury: Objection | 2551–2570 |
| 52. | Findings by the Court | 2571–2600 |
| 53. | Masters | 2601–2650 |

## Volume 10

| | | |
|---|---|---|
| 8. Judgment | | 2651–2780 |
| **Rule** | | |
| 54. | Judgments; Costs | 2651–2680 |

## Volume 10A

| | | |
|---|---|---|
| 8. Judgment—Continued | | 2681–2729.1 |
| **Rule** | | |
| 55. | Default | 2681–2710 |
| 56. | Summary Judgment | 2711–2729.1 |

## Volume 10B

| | | |
|---|---|---|
| 8. Judgment—Continued | | 2730–2780 |
| **Rule** | | |
| 56. | Summary Judgment—Continued | 2730–2750 |
| 57. | Declaratory Judgments | 2751–2780 |

# CONTENTS

## Volume 11

| Chapters | Sections |
|---|---|
| 8. Judgment—Continued | 2781–2930 |

Rule

| | |
|---|---|
| 58. Entry of Judgment | 2781–2800 |
| 59. New Trials; Amendment of Judgments | 2801–2850 |
| 60. Relief From Judgment or Order | 2851–2880 |
| 61. Harmless Error | 2881–2900 |
| 62. Stay of Proceedings to Enforce a Judgment | 2901–2920 |
| 63. Inability of a Judge to Proceed | 2921–2930 |

## Volume 11A

| | |
|---|---|
| 9. Provisional and Final Remedies and Special Proceedings | 2931–2980 |

Rule

| | |
|---|---|
| 64. Seizure of Person or Property | 2931–2940 |
| 65. Injunctions | 2941–2970 |
| 65.1 Security: Proceedings Against Sureties | 2971–2980 |

## Volume 12

| | |
|---|---|
| 9. Provisional and Final Remedies and Special Proceedings—Continued | 2981–3070 |

Rule

| | |
|---|---|
| 66. Receivers Appointed by Federal Courts | 2981–2990 |
| 67. Deposit in Court | 2991–3000 |
| 68. Offer of Judgment | 3001–3010 |
| 69. Execution | 3011–3020 |
| 70. Judgment for Specific Acts; Vesting Title | 3021–3030 |
| 71. Process in Behalf of and Against Persons Not Parties | 3031–3040 |
| 71A. Condemnation of Property | 3041–3060 |
| 10. Appeals (Abrogated) | 3061–3065 |

Rule

| | |
|---|---|
| 72. Appeal From a District Court to the Supreme Court (Abrogated) | 3061 |
| 73. Appeal to a Court of Appeals (Abrogated) | 3062 |
| 74. Joint or Several Appeals to the Supreme Court or to a Court of Appeals; Summons and Severance Abolished (Abrogated) | 3063 |
| 75. Record on Appeal to a Court of Appeals (Abrogated) | 3064 |
| 76. Record on Appeal to a Court of Appeals; Agreed Statement (Abrogated) | 3065 |

IX

# CONTENTS

| Chapters | Sections |
|---|---|
| 11.  Magistrate Judges----------------------------------------- | 3066–3080 |
| Rule | |
| 72.  Magistrate Judges; Pretrial Orders ----------------- | 3068–3070.2 |
| 73.  Magistrate Judges; Trial by Consent and Appeal Options--------------------------------------- | 3071–3073 |
| 74.  Method of Appeal From Magistrate Judge to District Judge Under Title 28, U.S.C. § 636(c)(4) and Rule 73(d) ----------------------- | 3074–3074.2 |
| 75.  Proceedings on Appeal From Magistrate Judge to District Judge Under Rule 73(d)------------- | 3075–3075.2 |
| 76.  Judgment of the District Judge on the Appeal Under Rule 73(d) and Costs ---------------------- | 3076 |
| 12.  District Courts and Clerks -------------------------------- | 3081–3130 |
| Rule | |
| 77.  District Courts and Clerks ---------------------------- | 3081–3090 |
| 78.  Motion Day------------------------------------------ | 3091–3100 |
| 79.  Books and Records Kept by the Clerk and Entries Therein------------------------------------------ | 3101–3120 |
| 80.  Stenographer; Stenographic Report or Transcript as Evidence --------------------------------- | 3121–3130 |
| 13.  General Provisions----------------------------------------- | 3131–3200 |
| Rule | |
| 81.  Applicability in General --------------------------------- | 3131–3140 |
| 82.  Jurisdiction and Venue Unaffected ----------------- | 3141–3150 |
| 83.  Rules by District Courts --------------------------------- | 3151–3160 |
| 84.  Forms-------------------------------------------------- | 3161–3170 |
| 85.  Title --------------------------------------------------- | 3171–3180 |
| 86.  Effective Date ------------------------------------------ | 3181–3200 |
| 14.  Supplemental Rules for Certain Admiralty and Maritime Claims ------------------------------------- | 3201–3300 |
| Rule | |
| A.  Scope of Rules------------------------------------------- | 3201–3210 |
| B.  Attachment and Garnishment: Special Provisions-------------------------------------------------- | 3211–3220 |
| C.  Actions in Rem: Special Provisions-------------------- | 3221–3230 |
| D.  Possessory, Petitory, and Partition Actions ------- | 3231–3240 |
| E.  Actions in Rem and Quasi in Rem: General Provisions -------------------------------------------------- | 3241–3250 |
| F.  Limitation of Liability ------------------------------------ | 3251–3300 |

X

# CONTENTS

## Volume 12A
### Appendices

App.
A. Time Table for Lawyers in Federal Civil Cases.
B. Orders of the Supreme Court of the United States Adopting and
   Amending Rules.
C. Advisory Committee Notes for the Federal Rules of Civil Proce-
   dure for the United States District Courts.
D. Appendix of Forms.
E. Advisory Committee Notes to the Supplemental Rules for Cer-
   tain Admiralty and Maritime Claims.
F. 1955 Report of the Advisory Committee Proposed Amendments
   to the Rules of Civil Procedure for the United States District
   Courts.D. dix of Forms.E. Advisory Committee Notes to the
   Supplemental Rules for Cer-
      tain Admiralty and Maritime Claims.
F. 1955 Report of the Advisory Committee Proposed Amendments
   to the Rules of Civil Procedure for the United States District
   Courts.

*

Ch. 4        RELEVANCE AND CONSTRUCTION        **§ 1363**
Rule 12

example, in Greenhood v. Orr & Sembower, Inc.,[10] one defendant, Klein, moved to dismiss the complaint for lack of personal jurisdiction. He also joined with his codefendant in a motion to dismiss based on a failure to state a claim on which relief could be granted and on the ground that the action was estopped by earlier litigation. Alternatively, the two defendants asked that certain paragraphs of the complaint and the plaintiff's request for a jury trial be stricken. The plaintiff contended that Klein, by joining with his codefendant in the other motions going to the merits of the action, waived any objection to the district court's jurisdiction over his person. The district court rejected this contention citing the joinder sentence in Rule 12(b) and observing: "A defendant no longer needs to protect his rights by appearing specially solely to object to the jurisdiction of the court but may properly join the defense of lack of jurisdiction with other defenses without thereby waiving his rights."[11] However, if a party joins a permissive counterclaim or a cross-claim with a challenge to venue or personal jurisdiction, he or she may have waived the objection because a request for affirmative relief is not an objection or defense, as contemplated by the third sentence of Rule 12(b) and may be viewed by the court as being inconsistent with his objection to the district court's venue or jurisdiction.[12]

## § 1363.  Relevance and Construction of the Pleading on a Rule 12(b) Motion

In the course of determining a motion to dismiss under Federal Rule 12(b), the district court often is obliged to examine the contents of the challenged pleading and construe its relevant allega-

tion and to strike certain portions of both counts, the fact that the defendant joined the motions did not constitute a waiver of his right to object to the court's jurisdiction over his person. Wedekind v. McDonald, D.C.Fla. 1948, 82 F.Supp. 678.

Glazier v. Van Sant, D.C.Mo.1940, 33 F.Supp. 113 (motion to dismiss for misjoinder of parties joined with motion to dismiss for defective service of process).

Devine v. Griffenhagen, D.C.Conn.1940, 31 F.Supp. 624.

See also

Sadler v. Pennsylvania Ref. Co., D.C.S.C.1940, 33 F.Supp. 414.

Young v. Aetna Life Ins. Co., D.C.Pa. 1940, 32 F.Supp. 389, affirmed C.A.3d, 1940, 113 F.2d 601.

**10.  Greenhood case**

D.C.Mass.1958, 158 F.Supp. 906.

**11.  Quotation**

Id. at 907 (Ford, J.).

**12.  Counterclaim or cross-claim**

Waiver of defenses by seeking affirmative relief is discussed in detail in § 1397.

§ 1363
Rule 12

PLEADINGS AND MOTIONS

Ch. 4

The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed[39] or by other allegations or exhibits attached to or incorporated in the

Britt v. Cyril Bath Co., D.C.Ohio 1968, 290 F.Supp. 934, reversed on other grounds C.A.6th, 1969, 417 F.2d 433.

Stewart v. Hevelone, D.C.Neb.1968, 283 F.Supp. 842.

Sinchak v. Parente, D.C.Pa.1966, 262 F.Supp. 79.

Camero v. Kostos, D.C.N.J.1966, 253 F.Supp. 331.

Barnett v. Anaconda Co., D.C.N.Y.1965, 238 F.Supp. 766.

Cooper Agency, Inc. v. McLeod, D.C.S.C. 1964, 235 F.Supp. 276, affirmed C.A.4th, 1965, 348 F.2d 919.

Williamson v. Waugh, D.C.W.Va.1958, 160 F.Supp. 72.

Smith v. U.S., D.C.Del.1953, 113 F.Supp. 131.

See also the cases cited in vol. 5B, § 1357 nn. 22–27, 29, 31.

**39. Judicial notice contradicts allegations**

Droppleman v. Horsley, C.A.10th, 1967, 372 F.2d 249.

In re Woodmar Realty Co., C.A.7th, 1961, 294 F.2d 785, certiorari denied 82 S.Ct. 643, 369 U.S. 803, 7 L.Ed.2d 550.

Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd., C.A.9th, 1956, 245 F.2d 67.

Interstate Natural Gas Co. v. Southern California Gas Co., C.A.9th, 1953, 209 F.2d 380.

Cohen v. U.S., C.A.8th, 1942, 129 F.2d 733.

Fletcher v. Jones, C.A.1939, 105 F.2d 58, 70 U.S.App.D.C. 179, certiorari denied 60 S.Ct. 116, 308 U.S. 555, 84 L.Ed. 467.

Nev–Cal Electrical Secs. Co. v. Imperial Irrigation Dist., C.A.9th, 1936, 85 F.2d 886, certiorari denied 57 S.Ct. 493, 300 U.S. 662, 81 L.Ed. 871.

Booker v. Ward, D.C.Ill.1995, 888 F.Supp. 869, citing **Wright & Miller.**

Romiti v. Kerner, D.C.Ill.1966, 256 F.Supp. 35.

Lang v. American Motors Corp., D.C.Wis.1966, 254 F.Supp. 892.

Golaris v. Jewel Tea Co., D.C.Ill.1958, 22 F.R.D. 16.

Louisiana Farmers' Protective Union, Inc. v. Great Atl. & Pac. Tea Co., D.C.Ark.1941, 40 F.Supp. 897, reversed on other grounds C.A.8th, 1942, 131 F.2d 419.

American–Mexican Claims Bureau, Inc. v. Morgenthau, D.C.D.C.1939, 26 F.Supp. 904.

**See also**

In Grand Opera Co. v. Twentieth Century–Fox Film Corp., C.A.7th, 1956, 235 F.2d 303, 307, the court took a limited view of the availability of judicial notice: "It is elementary that the district judge, in considering the motions to dismiss the amended complaint, had no right * * * to hear evidence. He had no right to take judicial notice of anything, with the possible exception of facts of common knowledge which controvert averments * * * in the amended complaint. Judicial notice is merely a substitute for the conventional method of taking evidence to establish facts." (Schnackenberg, J.)

**But compare**

Despite the judge's personal knowledge of how a strike began, he must accept the allegations of the complaint as true on a motion to dismiss. Carras v.

120

pleading.[40] On the other hand, a number of federal courts have held that the allegations of the pleading will be supplemented by any relevant matter that can be judicially noticed[41] or by the contents of any exhibits that are attached to the pleading or any matter validly

Monaghan, D.C.Pa.1946, 65 F.Supp. 658.

**40.  Exhibits contradict allegations**

Olpin v. Ideal Nat. Ins. Co., C.A.10th, 1969, 419 F.2d 1250, certiorari denied 90 S.Ct. 1522, 397 U.S. 1074, 25 L.Ed.2d 809.

Ott v. Home Savs. & Loan Ass'n, C.A.9th, 1958, 265 F.2d 643.

Interstate Natural Gas Co. v. Southern California Gas Co., C.A.9th, 1953, 209 F.2d 380.

Vilter Mfg. Co. v. Loring, C.A.7th, 1943, 136 F.2d 466.

Cohen v. U.S., C.A.8th, 1942, 129 F.2d 733.

Zeligson v. Hartman–Blair, Inc., C.A.10th, 1942, 126 F.2d 595.

Simmons v. Peavy–Welsh Lumber Co., C.A.5th, 1940, 113 F.2d 812, certiorari denied 61 S.Ct. 63, 311 U.S. 685, 85 L.Ed. 442.

Jenkins v. S & A Chaissan & Sons, Inc., D.C.N.Y.1978, 449 F.Supp. 216, 227, **citing Wright & Miller.**

Van Daele v. Vinci, D.C.Ill.1968, 294 F.Supp. 71.

Imperial Oil & Gas Prods. Co. v. United Gas Pipe Line Co., D.C.La.1948, 77 F.Supp. 336.

**41.  Judicial notice supplements allegations**

Mack v. South Bay Beer Distrib., Inc., C.A.9th, 1986, 798 F.2d 1279, **citing Wright & Miller.**

Droppleman v. Horsley, C.A.10th, 1967, 372 F.2d 249.

Picking v. Pennsylvania R.R. Co., C.A.3d, 1945, 151 F.2d 240, certiorari denied 68 S.Ct. 38, 332 U.S. 776, 92 L.Ed. 361.

Fletcher v. Jones, C.A.1939, 105 F.2d 58, 70 U.S.App.D.C. 179, certiorari denied 60 S.Ct. 116, 308 U.S. 555, 84 L.Ed. 467.

Locicero v. Leslie, D.C.Mass.1996, 948 F.Supp. 10.

Briggs v. Newberry County School Dist., D.C.S.C.1992, 838 F.Supp. 232, affirmed C.A.4th, 1993, 989 F.2d 491.

Lang v. American Motors Corp., D.C.Wis.1966, 254 F.Supp. 892.

U.S. ex rel. Peters v. Carson, D.C.Pa. 1954, 126 F.Supp. 137.

Hood v. Defense Homes Corp., D.C.D.C. 1949, 83 F.Supp. 365.

National Maritime Union of America v. Herzog, D.C.D.C.1948, 78 F.Supp. 146, affirmed 1949, 68 S.Ct. 1529, 334 U.S. 854, 92 L.Ed. 1776.

Odom v. Langston, D.C.Mo.1948, 75 F.Supp. 651.

U.S. v. Samuel Dunkel & Co., D.C.N.Y. 1945, 61 F.Supp. 697.

Earle v. Brink's, Inc., D.C.N.Y.1943, 54 F.Supp. 676.

Boice v. Boice, D.C.N.J.1943, 48 F.Supp. 183, affirmed C.A.3d, 1943, 135 F.2d 919.

Louisiana Farmers' Protective Union, Inc. v. Great Atl. & Pac. Tea Co., D.C.Ark.1941, 40 F.Supp. 897, reversed on other grounds C.A.8th, 1942, 131 F.2d 419.

**See also**

Although in the proper situation the court will take judicial notice of the public statutes of all the states, the statutes must have some bearing on the merit of the proceedings on the motion to dismiss. U.S. v. Cattaraugus County, D.C.N.Y.1946, 67 F.Supp. 294.

# EXHIBIT 21

*Westlaw.*

Slip Copy
Slip Copy, 2007 WL 28295 (D.Del.)
**(Cite as: Slip Copy)**

UD Technology Corp. v. Phenomenex, Inc.
D.Del.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
UD TECHNOLOGY CORPORATION, Plaintiff,
v.
PHENOMENEX, INC., Defendant.
**C.A. No. 05-842-GMS.**

Jan. 4, 2007.

Michael P. Kelly, McCarter & English, LLP, Wilmington, DE, for Plaintiff.
John W. Shaw, Young, Conaway, Stargatt & Taylor, Chad Michael Shandler, Richards, Layton & Finger, Wilmington, DE, for Defendant.

GREGORY M. SLEET, United States District Judge.

### I. INTRODUCTION

**\*1** The plaintiff, UD Technology Corporation ("UDTC"), filed the above captioned suit, against Defendants Phenomenex, Inc. ("Phenomenex") and Research Corporation Technologies ("RCT"), alleging patent infringement, breach of contract, violation of the covenant of good faith and fair dealing, misappropriation of trade secrets, violation of the Uniform Deceptive Trade Practices Act, unjust enrichment, and conversion. On July 21, 2006, UDTC filed a stipulation of dismissal, dismissing RCT from the case, with prejudice. (D.I.37.) Presently before the court is Phenomenex's motion to dismiss UDTC's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), and UDTC's motion to amend its complaint. For the reasons set forth below, the court will (1) grant-in-part and deny-in-part Phenomenex's motion to dismiss and (2) grant-in-part and deny-in-part UDTC's motion to amend.

### II. BACKGROUND

In March of 1990, the University of Delaware (the "University") entered into a contract with RCT for "Disclosure, Evaluation and Commercialization of Inventions" (the "DECI"). (D.I.26, Ex. A.) In the DECI contract, the University granted RCT certain rights to market and promote the University's proprietary technologies. *Id.*

In or around 1991, Drs. Mary Wirth and Hafeez O. Fatunmbi were working in the Department of Chemistry and Biochemistry at the University on the study of surface chemistries relating to substrates such as silica beads used in chromatographic processes. (D.I.1, Compl.¶¶ 12, 14.) This work culminated in an application for a patent. (D.I.1, Compl.¶¶ 14-15.) On June 17, 1992, RCT filed U.S. Patent Application No. 900,215 (the "Application") to protect Drs. Wirth and Fatunmbi's research. *Id.*

In August 1992, RCT and Phenomenex entered into the "Materials Treatment Agreement," which allowed Phenomenex to submit certain materials for treatment according to the technology in the Application, and an opportunity to use the treated materials for noncommercial research purposes. (D.I.26, Ex. B.) According to the Materials Treatment Agreement, Drs. Wirth and Fatunmbi (the "Inventors") had assigned the Application to RCT. *Id.*

In March 1993, RCT and Phenomenex entered into the "Evaluation License Agreement," in which RCT granted Phenomenex a license to make and use products, and to practice processes, using the technology in the Application, for evaluation of the "invention" described in the Application. (D.I.26, Ex. C.)

During RCT's ownership of the Application and claimed technology, U.S. Patent No. 5,599,625 ("the 625 patent"), entitled "Products Having Multiple-Substituted Polysiloxane Monolayer," issued to Drs. Wirth and Fatunmbi (the "Inventors"), on February 4, 1997. (D.I.1, Compl.¶ 27.) On August 10, 2001, RCT assigned to the University its "entire right, title and interest" in the 625 patent. (D.I.26, Ex. E.) This assignment was pursuant to an "Agreement to Assign" between RCT and the University, effective July 24, 2001. *Id.*

**\*2** Plaintiff UDTC owns and manages intellectual property developed through the University's scientific research and doctorate programs. (D.I.1, Compl.¶ 1.)

### III. STANDARDS OF REVIEW

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 28295 (D.Del.)
(Cite as: Slip Copy)

### A. Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of a plaintiff's complaint. A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction can take two forms: it can attack the complaint on its face (facial attack), or it can attack the existence of subject matter jurisdiction in fact (factual attack). *Mortensen v. First Federal Savings and Loan,* 549 F.2d 884, 891 (3d Cir.1977). When reviewing a facial attack, the court must consider the allegations of the complaint as true, making all reasonable inferences in the plaintiff's favor. *Id.*

When reviewing a factual attack, however, the court is free to weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and to satisfy itself as to the existence of its power to hear the case. *Mortensen,* 549 F.2d at 891. Therefore, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating the merits of jurisdictional claims for itself. *Id.* The plaintiff bears the burden to prove that jurisdiction does in fact exist. *Id.* However, the plaintiff's burden is relatively light, since "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy.' " *Kulick v. Pocono Downs Racing Ass'n,* 816 F.2d 895, 899 (3d Cir.1987)(quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666 (1974)).

### B. Rule 12(b)(6) Standard

In ruling on a motion to dismiss for failure to state a claim, the factual allegations of the complaint must be accepted as true. *See Graves v. Lowery,* 117 F.3d 723, 726 (3d Cir.1997); *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). Moreover, a court must view all reasonable inferences that may be drawn from the complaint in the light most favorable to the non-moving party. *See Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969); *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991). A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations." *See Graves,* 117 F.3d at 726; *Nami,* 82 F.3d at 65 (both *citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

### C. Motion to Amend Standard

Leave to amend a pleading should be "freely given when justice so requires." Fed.R.Civ.P. 15(a). The court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive or undue prejudice to the opposing party, or when the amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997).

### IV. DISCUSSION

*3 "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In Re Corestates Trust Fee Litig.,* 837 F.Supp. 104, 105 (E.D.Pa.1993), *aff'd* 39 F.3d 61 (3d Cir.1994). Therefore, the court will first turn its attention to the 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

### A. Patent Infringement (Count I)

UDTC first contends that Phenomenex has infringed and continues to infringe one or more claims of the 625 patent by its offer of sale and sale of certain Phenomenex products, including products marketed under the name Jupiter. (D.I.1, Compl.¶ 28.) Phenomenex argues that UDTC lacks standing to assert a claim for patent infringement arising prior to 2001 because UDTC does not allege that UDTC was transferred the right to sue for past infringement, and its right to sue for post-2001 patent infringement is insufficiently pled.

Standing to sue for infringement has traditionally been confined to those with an ownership interest in the patent at the time of the infringement. *Arachnid, Inc. v. Merit Indus., Inc.,* 939 F.2d 1574, 1579 (Fed.Cir.1991) ( "The general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the legal title to the patent during the time of the infringement."). Where a plaintiff, who is not the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 28295 (D.Del.)
**(Cite as: Slip Copy)**

inventor, seeks to sue for infringement, both past and present, the plaintiff must have obtained an assignment of the patent, coupled with an assignment of a right of action for past infringements. *Id.* The latter assignment must be express, and cannot be inferred from an assignment of the patent itself. *Id.* *(citing Moore v. Marsh,* 74 U.S. (7 Wall.) 515, 522 (1868)). Applying these principles to the facts alleged in UDTC's complaint and the contracts available for the court's review, the court concludes that UDTC does not demonstrate standing to sue for any period of infringement of the 625 patent.

UDTC's complaint alleges two assignments from the University to UDTC (D.I.1, Compl.¶ 8), but does not identify any time frame or relate such assignments chronologically with an alleged assignment from RCT to the University on July 24, 2001 (D.I.1, Compl.¶ 30). UDTC cites to RCT's Answer to UDTC's original complaint as support for its claim that RCT assigned its rights to the 625 patent and all related contractual interests to the University. (D.I. 26 at 11, Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss.) UDTC not only argues that RCT admits UDTC's allegation of a complete transfer of rights, but UDTC also points out that RCT asserts no rights under the 625 patent in this action. *Id.* Nevertheless, RCT's Answer to UDTC's complaint bears no weight or relevance as to the propriety and sufficiency of UDTC's complaint against Phenomenex.

**\*4** Even if RCT's Answer was arguably relevant to the issue of the sufficiency of UDTC's complaint, the substance of the cited portion of RCT's Answer does not help UDTC. Indeed, it does nothing more than admit the averments of paragraph 30 of the Complaint. Paragraph 30 alleges that, pursuant to a July 24, 2001 Agreement to Assign, RCT assigned all of its right, title, and interest in and to the 625 Patent and the inventions described therein to the University on August 10, 2001. This "admission" does not address the issue of whether UDTC has the right to sue for past infringement. Likewise, it offers no insight into the question of when or by what instrument UDTC was assigned all of the University's "past, present and/or future right, title and interest in and to the technology and any agreements, causes of action and/or third party beneficiary rights associated with the 625 Patent to UDTC."(D.I .1, Compl.¶ 8.)

*1. Right to Sue for Past Infringement, Prior to August 10, 2001*

In its opposition brief, UDTC cites to *Minco, Inc. v.*

*Combustion Engineering, Inc.*[FN2] for the proposition that "the intent of the parties control."(D.I. 26 at 12, Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss.) This assertion, however, misconstrues the holding in *Minco.*The Federal Circuit did indeed affirm the trial court's decision that the plaintiff could recover damages for infringement occurring before the date of the assignment to the plaintiff, but the Federal Circuit did so by analyzing whether *"the assignment agreement manifests an intent"* to transfer the right to sue for prior infringement. *Minco,* 95 F.3d at 1117 (emphasis added). In other words, in *Minco,* the Court of Appeals found clear intent from the words of the assignment itself. *Id.* ("The express reference to past infringement in the MAC assignment expanded the scope of the term 'right, title, and interest' to encompass the right to sue for prior infringement.").

FN2.95 F.3d 1109, 117 (Fed.Cir.1996).

*Chisum* has aptly summarized a long line of Supreme Court and Federal Circuit cases as holding that if ownership of the patent is transferred, the transferor retains the right to sue for pre-transfer infringements unless that right is expressly relinquished in the transfer. CHISUM § 21.03[2][g][I]. In spite of this well-settled federal law, UDTC urges the court to apply Delaware and Arizona state law regarding the interpretation of contract language to "fix the scope and breadth of [the] assignment ."(D.I. 26 at 12.) Determining whether the right to sue for prior infringement has been transferred turns on the proper construction of the assignment agreements, which is a matter of state contract law. *Minco,* 95 F.3d at 1117. The Delaware and Arizona cases to which UDTC directs the court's attention, however, concern contracts with ambiguous terms. None of these cases permit resort to extrinsic evidence for unambiguous contract language, as in the case here. Further, the court has not found any Arizona or Delaware case law that sanctions the contract interpretation UDTC asks the court to adopt under the facts of this case.

**\*5** Moreover, the agreements that the court has in its possession and to which the court must confine its analysis, in the absence of any other evidence from UDTC, do not manifest any intent to confer a right to sue for past infringement. In the absence of an express provision to sue for past damages, as is the case here, the court cannot confer standing on UDTC to pursue damages for alleged patent infringement that occurred before it was assigned the 625 patent.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 28295 (D.Del.)
**(Cite as: Slip Copy)**

Page 4

Additionally, UDTC directs the court's attention to the litigation conduct of RCT as a reason to infer a provision not expressed in the assignment. Specifically, UDTC suggests that because RCT did not file a cross-claim, counter-claim, or otherwise assert an affirmative defense, the totality of circumstances indicates that RCT conveyed to the University any rights it had to sue for past infringement. (D.I. 26 at 13.) Simply put, the conduct of third-party RCT in litigation is not evidence from which the court can now conclude that UDTC was assigned a right to sue for past infringement.

The court therefore rejects UDTC's contention that it has sufficiently alleged a right to sue for past infringement. Moreover, the court is left wondering whether UDTC indeed possesses the right to sue for patent infringement alleged to have occurred during any period.

### 2. Right to Sue for Infringement After August 10, 2001 Assignment

The court notes that UDTC does not even attach as an exhibit to its complaint, responsive briefs, or amended complaint, the instrument that purportedly conferred to UDTC the rights to bring this lawsuit. The party asserting the existence of subject matter jurisdiction bears the burden of proof when contesting a Rule 12(b)(1) motion. *See, e.g. Mortensen,* 549 F.2d at 891 n. 16 (3d Cir.1977). Here, UDTC states that "[a]t such time as it becomes necessary (because it is not now in the context of a motion to dismiss), UDTC will adequately evidence the assignment from the University to UDTC."(D.I. 26 at 9.) Unfortunately, for UDTC, as the saying goes, there is no time like the present. More specifically, the necessary time was immediately after subject matter jurisdiction was challenged, i.e. when UDTC filed its opposition to Phenomenex's motion to dismiss. *See Cedars-Sinai Medical Center v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993) ("Once challenged, allegations alone are insufficient to meet the complainant's burden [to support its contention regarding the court's jurisdiction].").

In Phenomenex's Opening Brief in Support of its Motion to Dismiss, Phenomenex states that "UDTC's claims are insufficient as pled and must be dismissed, insofar as UDTC has failed to state claims upon which relief can be granted and improperly alleged subject matter jurisdiction for its claim of patent infringement."(D.I. 23 at 1, Def.'s Br. ISO Mot. to Dismiss.) In apparent deference to UDTC's

conclusory allegation that the University assigned its rights in the 625 patent to UDTC, Phenomenex appears to retreat from its initial argument as to UDTC's lack of standing to pursue post-2001 patent infringement. *See* Def.'s Reply Br. ISO Mot. to Dismiss (D.I. 32 at 2). The court will not, however, cover Phenomenex's withdrawal. *See Mennen Co. v. Atlantic Mt. Ins. Co.,* 147 F.3d 287 (3d Cir.1998) ("A party may not confer or defeat jurisdiction by mere pleading. Subject matter jurisdiction depends upon facts, and *when any question arises as to the existence of jurisdiction, a federal court is obligated to make an independent determination of those facts.*").

**\*6** Phenomenex has raised a colorable question as to whether this court has jurisdiction to hear UDTC's pre-2001 patent infringement claims. The court agrees with Phenomenex that UDTC cannot pursue its claim for past infringement of the 625 patent before this forum. Fulfilling its obligation to make an independent determination, the court also finds proof of subject-matter jurisdiction lacking for UDTC's post-2001 patent infringement claims. The court will, however, give UDTC another opportunity to demonstrate that it has the right to pursue post-2001 infringement claims, as set forth in the accompanying order.

### B. Contract Claims (Counts II-V)[FN3]

> FN3. Counts IX-X were also contract-related counts against RCT. Since RCT has been dismissed from this action, the court will not address counts IX-X, as they are moot.

### 1. Breach of Contract

UDTC alleges that Phenomenex has breached the Materials Agreement between RCT and Phenomenex and the Evaluation License Agreement between the same parties. Neither UDTC or the University of Delaware contend they were parties to either contract. Phenomenex argues that UDTC has not pled facts sufficient to confer standing to assert claims for breaches of the Materials Treatment and Evaluation License Agreements. The court agrees.

A fundamental principle of contract law provides that only those entities that are parties to a contract or conferred rights to or under a contract have standing to enforce it. *See Insituform of North America, Inc. v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 28295 (D.Del.)
(Cite as: Slip Copy)

*Chandler*, 534 A.2d 257 (Del. Ch.1987) ("Analysis of the standing issue begins with recognition of the general rule that strangers to a contract ordinarily acquire no rights under it unless it is the intention of the promisee to confer a benefit upon such third party.").*See generally* 2 *Williston on Contracts* § 356 (1959); 4 *Corbin on Contracts* § § 772, 774 (1951). The developed law has characterized persons who, while not being parties to a contract, nonetheless benefit from its performance in one of three ways: as donee beneficiaries, as creditor beneficiaries, or as incidental beneficiaries. Restatement of Contracts § 133 (1932); *see generally Restatement of Contracts (Second)* § 302 (1979). Where a contract only incidentally or remotely benefits a third party, but is not expressly made for the benefit of the party, that party cannot recover thereon. *Fobes v. Blue Cross and Blue Shield of Arizona, Inc.,* 861 P.2d 692, 696 (Ariz.Ct.App.1993); *see also German Alliance Ins. Co. v. Home Water Supply Co.,* 226 U.S. 220, 230 (1912) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit.").

As a threshold matter, the court finds the factual allegations in the complaint facially deficient. *See*Fed.R.Civ.P. 8(a) and 9(f).Rule 8(a) requires a claimant to set forth (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim *showing that the pleader is entitled to relief,* and (3) a demand for judgment for the relief the pleader seeks. Rule 9(f) states: "For the purpose of testing the sufficiency of a pleading, *averments of time and place are material* and shall be considered like all other averments of material matter."FN4

> FN4."Whether or not statements in a pleading of time and place are required is determined by the substantive nature of the suit ... A specific statement of time has been required in numerous types of cases. For example, in pleading claims based on a written contract or promissory note, it usually is necessary to allege the time it was signed ... because this helps identify the document that is the subject matter of the dispute."5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1309 (2d ed.1995).

*7 Notably, UDTC's complaint fails to specifically allege that it possesses rights to enforce the Materials Treatment and Evaluation License Agreements. The closest averment the court can find within the complaint is the conclusory allegation of paragraph 8, which alleges two unidentified assignments from the University to UDTC. (D .I.1, Compl.¶ 8.) As noted above, however, neither the University nor UDTC are parties to the agreements UDTC is attempting to enforce. Additionally, the alleged assignments of paragraph 8 of the complaint provide no temporal context. That is, the averment does not identify either contract by name or time frame, nor does it relate either assignment contextually and chronologically with an alleged assignment from RCT to the University on August 10, 2001. *See* Compl. ¶ 30. (D.I.1.) Moreover, the alleged assignment from RCT to the University averred in paragraph 30, does not confer an assignment of contractual rights, only prospective ownership rights to the 625 patent. *Id.*

In response to Phenomenex's challenge to UDTC's standing, UDTC states that it has alleged "rights to pursue its claims as (i) a party (either as a principal to its agent RCT or directly), (ii) as a disclosed and intended third party beneficiary thereto, and (iii) as previously stated, via total assignment of rights. (D.I.1-Compl.¶ ¶ 7-8)." (D.I. 26 at 13-14). First, the only contracts the court has in its possession clearly show that UDTC was not a party. Phenomenex correctly points out that UDTC did not plead agency and cannot defeat a motion to dismiss by now advancing the theory that RCT, originally a defendant in this action, was an agent for UDTC.

Second, UDTC did not plead that it was an intended third party beneficiary and the Materials Treatment and Evaluation License Agreements don't disclose it as such.FN5Furthermore, the Evaluation License Agreement contains the following language: *"No Third-Party Beneficiaries.*None of the provisions of this Agreement shall be for the benefit of, or enforceable by, any third party."While not as explicit as the Evaluation License Agreement, the Materials Treatment Agreement contains no mention of UDTC and only passively refers to the University of Delaware in further identifying the Inventors of what has become the 625 patent. *See* D.I. 26, Ex. B ("Drs. M.J. Wirth and H.O. Fatunmbi ("INVENTORS") of the University of Delaware have invented a Multiple-Substituted Polysiloxane Monolayer ('INVENTION') as described in U.S. Patent Application No. 900,215, filed 06/17/92 ('APPLICATION')."). This passing reference gives

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 28295 (D.Del.)
(Cite as: Slip Copy)

no indication that the University was an intended third party beneficiary. Furthermore, the Materials Treatment Agreement itself states that the Inventors assigned the technology at issue to RCT.

> FN5. The court need not engage the purely academic exercise of determining whether, under Arizona or Delaware law, UDTC qualifies as an intended third party beneficiary as it fails to plead third-party beneficiary status.

Finally, UDTC offers no support for its allegation that RCT assigned any contractual rights to the University. Given Phenomenex's subject-matter jurisdictional challenge, UDTC must first establish that RCT assigned both agreements to the University, before it can rely on an alleged assignment of those rights from the University to UDTC. Instead, UDTC alleged that RCT retained contractual rights to "police and monitor all third party use of the Licensed Technology."(D.I.1, Compl.¶ 34.) This allegation formed part of the basis for UDTC's now-dismissed suit against RCT. At the time of the complaint, UDTC claimed that RCT was still responsible for monitoring the Licensed Technology. (D.I.1, Compl.¶ 33) ("Pursuant to the Marketing Agreement, RCT was *and is* responsible for monitoring the Licensed Technology...."). These allegations, which find support in the Marketing Agreement, the July 2001 Agreement to Assign, and the accompanying August 2001 Deed of Assignment, contradict UDTC's argument that it can pursue its contract claims pursuant to "total assignment" of rights. For these reasons, UDTC's breach of contract claims must be dismissed.

### 2. Breach of the Covenant of Good Faith & Fair Dealing

**\*8** The court agrees with Phenomenex's contention that UDTC does not have standing to pursue an alleged breach of the covenant of good faith and fair dealing,. See *Leal v. Allstate Ins. Co.,* 17 P.3d 95, 99 (Ariz.Ct.App.2000) ( "Courts imply a covenant of good faith and fair dealing in every contract. The duty to act in good faith arises by virtue of a contractual relationship. Thus, a third-party claimant, a stranger to the contract, cannot sue the insurer for tortious breach of the duty of good faith."); *Superior Vision Servs. v. Reliastar Life Ins. Co.,* 2006 Del. Ch. LEXIS 160 (Del. Ch., Aug. 25, 2006, Decided) ("[I]mposing an obligation on a contracting party

through the covenant of good faith and fair dealing is a cautious enterprise and instances should be rare."). The court can find no grounds upon which to impose a duty of good faith and fair dealing flowing from Phenomenex to UDTC. In the absence of any evidence demonstrating an assignment of contractual rights to UDTC,[FN6] the court concludes that UDTC's contract-related claims must be dismissed.

> FN6. The court acknowledges that Phenomenex has set forth additional grounds for the dismissal of UDTC's contract claims, however, the court has concluded that UDTC lacks standing and therefore, the court will not reach the merits of Phenomenex's additional arguments.

### 3. Misappropriation of Trade Secrets

In Counts IV and V of its complaint, UDTC alleges that Phenomenex willfully misappropriated the University's trade secrets, in violation of Ariz.Rev.Stat. Sec. 44 and 6 Del. C. Sec.2001. According to paragraphs 60 and 68 of its complaint, UDTC predicates its claims of trade secret misappropriation on an agreement between Phenomenex and RCT that allegedly required Phenomenex to keep the University's secrets. (D.I.1, Compl.¶ ¶ 60, 68.) Where the duty to keep a divulged trade secret arises from a contract, it follows that only those parties to the contract have standing to pursue a claim of trade secret misappropriation based on a breach of that contract. For the reasons previously stated, the court concludes that UDTC does not have standing to pursue contract-based claims against Phenomenex. Therefore, UDTC's trade secret misappropriation claim must be dismissed.

### C. Claims for Violation of the Uniform Deceptive Trade Practices, Unjust Enrichment, and Conversion (Count VI-VIII)

In Count VI of its complaint, UDTC alleges that Phenomenex engaged in conduct designed "to deceive the public to whom Phenomenex markets such that it represents expertise, experience and product design *that are the result of secret misappropriation of the Licensed Technology and the 625 Patent.*"(D.I.1, Compl.¶ 73) (Emphasis added). In Count VII, UDTC alleges that Phenomenex benefited from "Phenomenex's unauthorized use of the Licensed Technology and 625 Patent."(D.I.1, Compl.¶ 79.) UDTC's allegations

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 7
Slip Copy, 2007 WL 28295 (D.Del.)
**(Cite as: Slip Copy)**

of trade secret misappropriation preempt its claims of deceptive trade practices and unjust enrichment. This is so because the latter claims are based expressly upon the alleged misappropriation of trade secrets. The misappropriation is alleged to stem from Phenomenex's alleged use of and benefit from the University's confidential information. *See On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH,* 386 F.3d 1122, 1146 (Fed.Cir.2004); *Ethypharm S.A. v. Bentley Pharm., Inc.,* 388 F.Supp.2d 426, 433 (D.Del.2005) (granting motion to dismiss fraud and unjust enrichment claims as preempted). Since no additional facts, independent of those alleged in support of its trade secret misappropriation claim, have been averred to support these claims, UDTC's deceptive trade practice and unjust enrichment claims are therefore dismissed, as preempted.

*9 The eighth count of the complaint alleges conversion. (D.I.1, Compl.¶ 82.) The extent to which UDTC's conversion action is predicated only on the same facts upon which it bases its deceptive trade practice and unjust enrichment claims, the conversion claim is clearly preempted. *Ethypharm,* 388 F.Supp.2d at 433.

It is conceivable that UDTC also presents a claim for conversion of tangible property in addition to its claim of conversion of intellectual property. In its complaint, UDTC refers to "other property" (D.I.1, Compl.¶ 82) ("Phenomenex, by exercising control and dominion over the Licensed Technologies and the 625 Patent and *other property* in an unauthorized manner, systematically and secretly deprived UDTC of its interest in its intellectual property.") (emphasis added). UDTC later defines Licensed Technology to include "other technology, including any trade secrets and/or know how associated therewith, that is encompassed by any of the Marketing Agreement, the Materials Agreement and the Evaluation Agreement, including Licensed products and Licensed Processes as defined in those Agreements."(D.I.1, Compl. ¶ 35.) In its opposition brief, however, UDTC resolves any ambiguity in its conversion claim by stating what it believes to be the elements of its conversion claim: "(i) UDTC has a *property interest in the confidential information, trade secrets and patents;* (ii) that UDTC had right to prevent others from using such information, trade secrets and patents; and (iii) that UDTC has sustained damages. *See Facciolo Constr. Co. v. Bank of Del.,* 514 A.2d 413 (Del.1986); *Goodrich v. E.F. Hutton Group, Inc.,* 542 A.2d 1200, 1203 (Del. Ch.1988)." (D.I. 26 at 32.) Aside from the fact that UDTC cites the *Facciolo* and *Goodrich* cases, which involve

tangible property and do not discuss the interplay between conversion and claims concerning intellectual property, UDTC's listing of the necessary elements of its conversion claim makes no mention of tangible property. Where UDTC makes no claim of conversion of tangible property, the court sees no obligation to preserve this otherwise potentially viable, albeit narrow, subset of its conversion claim.

For at least these reasons, Count VIII of UDTC's complaint for conversion must be dismissed.

### D. Claims for Relief (Count XI-XII)

In Counts XI and XII of its complaint, UDTC does not state a claim for relief, but rather incorporates the allegations of its previous ten claims, and requests additional remedies. In Count XI, UDTC demands that "Phenomenex provide to it an accounting of all past, present and future uses of the Licensed Technology and the 625 Patent and account for all revenues, benefits or otherwise accrued from such use."(D.I. 1, Compl. at 24.) In Count XII, UDTC asks the court to impose a constructive trust for the benefit of UDTC "in an amount to be determined at the time of trial."(D.I. 1, Compl. at 26.) As these counts do not allege any different claims for which relief can be granted, other than claims previously alleged, the court will treat these counts as an additional prayer for relief. Counts XI and XII are therefore dismissed.

### E. Motion to Amend

*10 Recognizing that motions to amend shall be granted freely, the court views this motion differently than the typical motion to amend. First, in its terse motion, UDTC states that the reasons for its motion are "in the interest of judicial economy" in light of the fact that the "dismissal [of RCT] made extraneous certain allegations of the Complaint."(D.I. 38, Pl.'s Mot. to Amend at 1.) In its reply brief, UDTC states that its motion to amend the complaint was an effort "to simplify the pleadings for the Court."(D.I. 43, Pl.'s Reply Br. at 1.) The court finds these stated reasons curious in light of UDTC's letter of July 21, 2006 (D.I.39), and the actual proposed amendments to the complaint, which also attempt to bolster the standing deficiencies.[FN7] UDTC's July 21st letter states that the motion to amend and presumably, the proposed amendments, "reflect[s] that UDTC no longer seeks to prosecute such claims [against RCT]."*Id.* While UDTC's proposed amendments do eliminate Counts IX-X against RCT, they also

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                   Page 8
Slip Copy, 2007 WL 28295 (D.Del.)
**(Cite as: Slip Copy)**

remove contextual background necessary for the standing analysis of the remaining counts, found in paragraphs 16-17 and 33-34 of the original complaint.

FN7. The court is also in receipt of UDTC's May 15, 2006 letter (D.I .36), in which UDTC makes reference to a "Clarification" that would be presented to the court, rendering moot RCT's Motion to Dismiss. According to UDTC, the "Clarification" would be a stipulation that would restate prior assignments and "for the avoidance of any further doubt, assign any such right, title and interest as RCT still may have to UDTC." To date, the court has not received the aforementioned "Clarification." Even if the court was in receipt of such a "Clarification," the court is not inclined to accept assignments that post-date the civil action upon which the lawsuit relies. "As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day."*Gaia Technologies, Inc. v. Reconversion Technologies, Inc.,* 93 F.3d 774, 780 (Fed.Cir.1996), *as amended on rehearing,* 104 F.3d 1296 (Fed.Cir.1996).

Further, UDTC's proposed amendments add substance to the complaint, which would only serve to bolster arguments made in its Opposition to Phenomenex's Motion to Dismiss. For example, UDTC seeks to change paragraph 7 of the original complaint to add that RCT acted "on behalf of" the University instead of "agreed with the" University to market intellectual property. This change would appear to lend support to the later-argued, but not alternatively pled, position that RCT acted as an

agent for the University. UDTC also seeks to add a new paragraph asserting that "At all times relevant, University was the owner of the intellectual property at issue herein, including the right to sue for past, present and future infringement, and to pursue contract damages pursuant to the contracts identified herein, between RCT and Phenomenex."(D.I.38, Ex. B.)

Even if the court were to allow these substantive amendments, the amendments would be futile, in that Phenomenex has asserted factual challenges to subject matter jurisdiction and UDTC's standing. UDTC's proposed additions are nothing more than conclusory and bald assertions, which the court is not obliged to credit. *See United States v. Vespe,* 868 F.2d 1328, 1340 (3d Cir.1989) (stating conclusory statements need not be credited).

Insofar as UDTC's amended complaint seeks to make substantive changes that either remove necessary context or add further conclusory allegations regarding ownership or standing, and such amendments do not change the outcome of Phenomenex's motion to dismiss, these amendments are denied. The court will permit UDTC to amend its complaint to remove Counts IX-X.

IT IS HEREBY ORDERED that:
1. Phenomenex's Motion to Dismiss (D.I.22) is GRANTED IN PART and DENIED IN PART.
*11 (a) UDTC's claim for patent infringement alleged to have occurred prior to August 10, 2001, is dismissed.
(b) UDTC's claim for patent infringement alleged to have occurred after August 10, 2001, is conditionally dismissed. The court will grant UDTC leave to provide a more definite statement, including evidence of an assignment from the University of Delaware to UDTC for alleged patent infringement occurring after August 10, 2001, within 30 days of this Order.
(c) Counts II-XII are dismissed.

2. UDTC's Motion to Amend (D.I.38) is GRANTED IN PART and DENIED IN PART.

D.Del.,2007.
UD Technology Corp. v. Phenomenex, Inc.
Slip Copy, 2007 WL 28295 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.