```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4    FEBIT HOLDING GMBH,              :   CIVIL ACTION
                                       :
 5              Plaintiff,             :
                                       :
 6         v.                          :
                                       :
 7    CODON DEVICES, INC.,             :
                                       :   NO. 07-85 (GMS-LPS)
 8              Defendant.

 9                              - - -

10                       Wilmington, Delaware
                     Monday, June 9, 2008 at 2:02 p.m.
11                       TELEPHONE CONFERENCE

12                              - - -

13    BEFORE:    HONORABLE LEONARD P. STARK, Magistrate Judge

14                              - - -
      APPEARANCES:
15
           MORRIS JAMES, LLC
16         BY:  MARY B. MATTERER, ESQ.

17              and

18         STERNE, KESSLER, GOLDSTEIN & FOX, P.L.L.C.
           BY:  MARK FOX EVENS, ESQ., and
19              W. BLAKE COBLENTZ, ESQ.
                (Washington, District of Columbia)
20
                     Counsel for Plaintiff
21

22         MORRIS, NICHOLS & TUNNELL, LLP
           BY:  JACK B. BLUMENFELD, ESQ.
23
                and
24
                                         Brian P. Gaffigan
25                                       Official Court Reporter
```

```
 1    APPEARANCES: (Continued)

 2

 3           WEIL, GOTSHAL & MANGES, LLP
             BY:  EDWARD R. REINES, ESQ., and
 4                RIP FINST, ESQ.
                  (Redwood Shores, California)
 5
                       Counsel for the defendant
 6

 7

 8                            - oOo -

 9                    P R O C E E D I N G S

10              (REPORTER'S NOTE:  The following telephone

11    conference was held in chambers, beginning at 2:02 p.m.)

12              THE COURT:  Good afternoon.  It's Judge Stark.

13    Is counsel there?

14              MR. BLUMENFELD:  Yes, Your Honor.

15              THE COURT:  Okay.  Tell me who we have, please.

16              MS. MATTERER:  Your Honor, this is Mary Matterer

17    for the plaintiff.  And I have Mark Evens and Blake Coblentz

18    from Evens & Coblentz on the line as well.

19              THE COURT:  Okay.  Good afternoon.

20              MR. EVENS:  Good afternoon.

21              MR. BLUMENFELD:  Your Honor, it's Jack

22    Blumenfeld for Codon.  And we got a little cut off on I'm

23    calling in but I'm hoping Ed Reines and Ed Finst from Weil

24    Gotshal are on.

25              MR. REINES:  Yes, we're on.  Thank you, Your
```

1  Honor.

2              THE COURT:  I'm sorry.  Could you repeat those
3  names, Mr. Blumenfeld?

4              MR. BLUMENFELD:  Yes.  Ed Reines, R-E-I-N-E-S,
5  and Rip Finst, F-I-N-S-T.

6              THE COURT:  Okay.  And we're all here then.
7  Great.  Glad to hear that.

8              So this is, of course, the time for our Rule 16
9  teleconference in febit holding versus Codon Devices.  It's
10 our case 07-385-GMS-LPS.

11             I've seen your submission; and I know, of
12 course, there is the pending motion to dismiss as well, of
13 course.  I guess I have a number of questions and areas I
14 wanted to talk about with you all today, and that will help
15 me to decide the few disputes between you with respect to
16 scheduling.

17             The first issues do all go to the motion to
18 dismiss.  First, just as a bit of housekeeping, since you
19 have all decided to consent to my jurisdiction with respect
20 to handling the motion to dismiss, there is a form that is
21 on the Court's website, on my page which you all need to
22 execute and submit to us.  Ideally, if you could do that
23 before the end of the week, that would be great.  That is
24 just a form that we need in order to dot all of our I's for
25 establishing the consent jurisdiction.

1          But let me ask, Mr. Blumenfeld, or your
2  colleagues, with respect to the motion to dismiss, as I
3  understand it, it goes to an allegation about a lack of
4  standing.  And it appears that what you are asking is, as
5  relief, if you were to win, is basically that a more
6  particular complaint be filed.  I want to make sure I
7  understand that that is the relief you are seeking and that
8  also whether you're still interested in oral argument on the
9  merits of that motion.
10          MR. REINES:  Thank you, Your Honor.  This is Ed
11  Reines from Weil Gotshal.  Let me address that, Your Honor.
12          THE COURT:  Yes.
13          MR. REINES:  The motion to dismiss is under
14  12(b)(6) and does simply request dismissal of the complaint
15  for inadequate pleadings.  We are hoping to get a statement
16  in a complaint that sets forth all the numerous trans-
17  actions.  Right now, we have essentially an expert report
18  from a German attorney with many, many German language
19  documents translated that purports to trace ownership
20  through seven different entities or so.  So, certainly, we
21  were hoping at a minimum that the complaint should lay out
22  what the real allegation of ownership is rather than the
23  completely conclusory one that exists.
24          But our request as it relates to the scheduling
25  order is related but not identical.  The request as it

1  relates to the scheduling order, which included in the cover

2  letter and reflected in the proposal that we have in the

3  draft scheduling order, is that whatever allegation ends up

4  out of the pleading proceedings, that generalized discovery

5  on the patent claim not commence until there is some reason

6  to believe -- at least, we have some reason to believe that

7  they actually own the patent that is being asserted.  And

8  we would ask for -- we plan to ask for, any allegation that

9  survived the motion to dismiss, that we have an opportunity

10  to perform discovery before that is complete.

11  So I think another way to look at it is given

12  the Court's concern about managing its calendar, if you

13  wanted to expedite things, we'd be prepared to just do the

14  discovery and go to a 12(b)(1) motion at this stage, given

15  the schedule, but, you know, also believe that the complaint

16  is insufficiently specific in its allegations.

17  THE COURT:  Now, when you say you would be

18  willing to go to discovery, you mean just the discovery

19  targeted to the ownership issue you have raised.

20  MR. REINES:  Deposing the German attorney,

21  potentially getting our own German law expert.  I mean it's

22  not your run-of-the-mill 12(b)(6)/12(b)(1) ownership

23  dispute; right?  Because of the depth of it.

24  THE COURT:  Okay.  Let me have a response to

25  that from you, Ms. Matterer, or one of your colleagues.

| | |
|---|---|
| 1 | MR. EVENS:  Your Honor, this is Mark Evens. |
| 2 | I'll respond to Mr. Reines. |
| 3 | I think the first issue is whether febit holding |
| 4 | has properly pled ownership of the '211 patent; and we say |
| 5 | it has; and at this point, there is no case law supporting |
| 6 | the defendant's position that we need to do more. |
| 7 | Now, we actually went the next step and provided |
| 8 | a declaration of the German attorney explaining the chain of |
| 9 | ownership, custody, and provided those documents to them. |
| 10 | We think this falls within the broadest ambit of the *UD* |
| 11 | *Technology* case decided in Delaware, but it's certainly more |
| 12 | than we need to do under any pleading requirement. |
| 13 | What we would say is that the case, itself |
| 14 | should proceed at this time.  Let Codon Devices take |
| 15 | whatever discovery it wants on standing because I think at |
| 16 | this point, the issue is fairly joined.  They have full |
| 17 | notice of all the issues and the ownership claim.  And at |
| 18 | the end of the day, if ownership is not established in the |
| 19 | course of discovery, then they're free to move for summary |
| 20 | judgment. |
| 21 | You know, I think all of is -- if I could take |
| 22 | two more seconds? |
| 23 | THE COURT:  Yes. |
| 24 | MR. EVENS:  I mean all of this seemed to stem -- |
| 25 | and it's a 12(b)(1), not necessarily a 12(b)(6).  But I |

1  think all of this stemmed from the fact that on the face of
2  the patent, there is a different there is an assignee and
3  that is different from the plaintiff in this action, and so
4  the claim came in that you haven't demonstrated ownership.
5  And I think the papers more than adequately address that
6  issue.  But, you know, again, as I said, I think we went
7  much further than we needed to on the pleadings stage at
8  this time.
9              THE COURT:  Would you in any way be prejudiced
10 if I required you to file, I guess it would be an amended
11 complaint that set forth in detail the ownership allegation?
12             MR. EVENS:  No, I don't think we would, Your
13 Honor.  In fact, we have prepared -- if we want to cut this
14 short, we've actually prepared a complaint in anticipation
15 that simply sets forth the ownership that was set forth by
16 Verena Eisenlohr, the German attorney with the documents
17 that we presented.  Again, it was a kind of hope to shortcut
18 the lawyering and get to the merits of this case.  And we
19 could do that, frankly, by the end of today or tomorrow.
20             THE COURT:  Mr. Reines, if I ordered them to do
21 that, wouldn't that take care of your concerns for the time
22 being?
23             MR. REINES:  Certainly to the pleading question,
24 that would absolutely be.  I think it's the right thing to
25 do, for the Court and for the parties, that we have a clear

```
 1   statement of what the theory is of ownership.
 2              THE COURT:  Okay.  Well, it seems to me that if
 3   I deny the motion to dismiss but at the same time order
 4   febit to file an amended complaint setting forth its
 5   ownership contentions, then I've cleared the way to start
 6   discovery.  And if you find, in discovery, you have a basis
 7   to continue to question ownership, you have mechanisms for
 8   bringing that issue to the table.
 9              So before I actually say that's a ruling, I want
10   to make sure I understand where we are.  Are you saying, Mr.
11   Reines, that maybe that is not your ideal approach but that
12   would cut things short and we could get the case moving?
13              MR. REINES:  It's two things.  One is, as to the
14   pleadings, whether we call it granting the motion to dismiss
15   or denying the motion to dismiss, as long as they have to
16   amend their pleading to include the actual allegations of
17   ownership, that is certainly fine with us.  The nomenclature
18   on the title of the document doesn't bother us, one way or
19   the other.
20              On the scheduling order, the issue that we have
21   there is Codon is an incredibly small company.  I can't
22   emphasis that enough.  Tiny by any reasonable measure of
23   my experience.  And the cost of going through over all
24   discovery would be crushing in general.  In that context --
25   and if we have to put together some proof of that, we could
```

1  back up those statements.  So what we think is we're not
2  comforted that just because they could find a German legal
3  expert or whatever it was that could piece together 32
4  documents or however many they are and translate them and
5  come to a theory, through insolvency and everything else,
6  that this patent has gone from febit mount and back, it's
7  sufficient to demonstrate ownership.
8         So we would ask the Court -- we can do it in a
9  relatively short order -- to set a focused discovery period
10 or standing so that we can determine and probe that.  So if
11 they don't actually own the patent they're asserting against
12 us, we're not in claim construction, infringement, validity,
13 and everyone knows, you know, the multi-million dollar deal
14 that can be.  And if it's a question of going to question
15 this German patent attorney, getting our own German patent
16 attorney that is ready to testify, if need be, on a
17 12(b)(1) proceeding, you know, your recent opinion I
18 think makes it very clear and the law is very clear that
19 subject matter jurisdiction, that is, does the court have
20 case-in-controversy jurisdiction, is threshold.  So just
21 saying do they own the patent before we start litigating,
22 and if they do, what happens, it seems to me to be
23 reasonable, measured.  It's not going to delay anything.
24 It's consistent with this case schedule both sides have
25 agreed upon.  So we're not suggesting dates need to extend

 1    or anything like that.  It's just let's phase discovery so
 2    we get first things first.
 3               THE COURT:  Tell me how quickly you think you
 4    can do that.
 5               MR. REINES:  I would say within two months, I
 6    would like to think we could complete it, assuming
 7    cooperation.
 8               THE COURT:  So within two months, you would
 9    propose to have all of the ownership-related discovery done
10    and to have filed whatever motion you think is derived from
11    that.
12               MR. REINES:  Precisely.
13               THE COURT:  Okay.  Mr. Evens, what is your view?
14               MR. EVENS:  Your Honor, we would oppose that.
15    We filed this case over a year ago.  We think we more than
16    properly pled it and don't see any case law that says we
17    haven't.  We are willing to try to allay their fears by
18    going above and beyond the pleading requirement and put
19    in the specificity that, frankly, has been in front of
20    Codon since we filed the briefs back in, what, November --
21    October.  And no effort was made by them to say let's have
22    focused discovery on that issue or could we proceed.
23               I would say this:  I think the case ought to,
24    having been fairly joined, ownership through the pleading
25    requirement established -- and this is going to be expensive

 1  or for another small company, our company, but we have
 2  patent rights to enforce.  But we would be more than happy,
 3  as we have done in the past, to work with Codon on focused
 4  discovery on ownership, just as the rest of the a case.  We
 5  think the case should proceed and, you know, if they want to
 6  do focused discovery on ownership, that's fine, but we think
 7  the case should proceed as we've set out in the scheduling
 8  order.
 9             THE COURT:  Let me ask Mr. Reines.  There isn't
10  anything to prevent you from serving your discovery request,
11  your focused discovery requests to tomorrow; right?  And
12  jump starting that process.  That is, even if I give you, as
13  I do in most cases, a period in which all discovery is on
14  the table, you can get the ball rolling right away
15  presumably on the issue you want addressed first.
16             MR. REINES:  Right.  Precisely.  We're not
17  seeking authority for the right to go forward to do dis-
18  covery to prove that you have subject matter jurisdiction.
19  We are asking to be relieved of the obligation to expose
20  ourselves to all of the infringement, validity, discovery
21  that is surely going to come when you give that opening
22  until we can get some comfort beneath.  I mean, you know,
23  you have the record on the motion to dismiss.  There is
24  seven different entities.  I think their German attorney put
25  a 30-page declaration together to try and explain how they

1  think they have sufficient rights to proceed.  This is not a
2  run-of-the-mill case, and we're just waiting for standing
3  discovery.  There is a real, real reason to believe they
4  don't have standing.  They may.  It certainly looks like
5  they don't to us.  And we just are saying, respectfully
6  asking for a grace period of two months -- it won't affect
7  any of the schedule dates -- to be free from all the expense
8  of all the discovery, invasive as it can be, on the merits
9  of the case until we have an opportunity to bring whatever
10  motion it is.  And we I think agreed to do it within two
11  months.  And just the prejudice to them of forbearing from
12  that isn't clear to us.
13              THE COURT:  And do you have any cases you can
14  cite for me where something like that, a grace period, has
15  been done?
16              MR. REINES:  Certainly not off the top of my
17  head.  I mean it's a case management issue.  I'm sure it's
18  happened on many occasions where standing is established
19  before you move forward with the case.  And if the Court
20  wants us to find a decision, it's probably more likely an
21  unpublished run-of-the-mill case management decision rather
22  than high court decision or something like that.
23              But clearly for the Court to say first let's
24  establish that there is subject matter jurisdiction before
25  we get into the expensive merit litigation, that is routine,

```
 1   in and out of patent litigation, when the circumstances
 2   warrant, not willy-nilly.  And here, where there is a
 3   sufficient question being cast -- and everyone agrees that
 4   both companies are small, that's not in debate -- and
 5   certainly ours is tiny.  It's a startup company based in
 6   Boston that China put together, technology on nucleic acid
 7   sciences -- they shouldn't have to be exposed to the full
 8   brunt of merits discovery before we establish that through
 9   this chain of very intricate transactions that can't be
10   proven in less than a 30-page declaration from an expert
11   that there is real jurisdiction.
12                THE COURT:  All right.  I understand that.  Let
13   me ask you this:  Could you do it in one month?
14                MR. REINES:  It involves German discovery.  I
15   don't know that they would want to do it in one month,
16   because we need to have their German attorney.  There is
17   translation.  I'm not trying to protract the matter by any
18   measure.  Discovery is now opening and we're ready to do
19   forward, but, you know, we would have to get depositions
20   together.  And then if you want the motion filed, I think
21   it's reasonably aggressive to do all discovery, including
22   foreign discovery and get the motion filed all within two
23   months.  I don't know whether it's prudent for me to promise
24   anything more.
25                THE COURT:  Right.  Mr. Evens, what would be the
```

1  prejudice to you if I gave them one month to take whatever
2  ownership-related discovery and gave them maybe 10 days
3  after that to file any motions they wanted but in the
4  meantime, after a month, you know, it would be open season
5  on discovery and I'd deal with the motion in due course?
6              MR. EVENS:  Your Honor, I don't want to
7  overstate things.  If the Court is so inclined to an order
8  like that, I can see specifically any more harm from the
9  fact it's been a year with the case on the table.  I would
10 simply kind of back up a second and say when the defendant
11 Codon filed its motion to dismiss, it seems at the end of
12 the day it based its argument on two cases.  One was the
13 Supreme Court case in *Bell Atlantic*, and that was the
14 antitrust case of no applicability here.  It dealt with
15 essentially claimed pleading and whether the plaintiff in
16 that antitrust action had pledged sufficient facts to state
17 a cause of action under Section 1 of the Antitrust Act.  And
18 the Court very carefully said while you have pled parallel
19 actions, you being the plaintiff, you have not pled --
20             THE COURT:  Okay.  I'm familiar with that case.
21             MR. EVENS:  And the same thing with *UD Tech*.
22 There, it really came down to a factual determination and
23 the Court took issue with the defendant saying you should
24 have come in with documents establishing ownership.  And we
25 did that, but we went a step further.  We didn't get a

1   German expert by any means.  We got the lawyer on the case
2   who could explain the documents so that the defendant Codon
3   would see here is the chain of documents according to the
4   German attorney, and they had that.  And it set forth the
5   chain in Germany by which febit holding obtained ownership.
6   So they've got that.
7              I think the better course and the prudent course
8   is to treat this just as what it is, which is a rightfully
9   pled case, and we proceed with discovery.  And, again, I
10  worked with opposing counsel on many a case to try to
11  simplify the case and do what is right, and we will work.
12  We can turn our attention first to this jurisdiction issue,
13  if they want.  I think we provided the documents there are,
14  and we'll go from there; but I think the scheduling order
15  in this case should encompass the entire case and the
16  case should not be held up while the plaintiff conducts a
17  segregated, discrete aspect of discovery and then comes
18  back with a motion or otherwise delays matters.
19              THE COURT:  Okay.  Well, here is what we're
20  going to do.  We are going to end up with a scheduling
21  order that goes through the whole case; and I'm not going to
22  hold things up very long to create what I consider a narrow
23  window to try and straighten out, if we can, the ownership
24  issue, which does seem to be a slightly more complicated
25  ownership issue than in some cases.  And I'm also mindful

1   of the fact that I was contemplating, when I got on this
2   call, of scheduling oral argument on just the motion to
3   dismiss as filed now, and I wasn't going to be able to get
4   to that for about a month.
5           So all in all, what I think is going to, you
6   know, balance the interest here most effectively is, as I
7   have already said, I will be, I'm going to call it, denying
8   the motion to dismiss.  I'm going to order that the amended
9   complaint with the specific ownership allegations be filed
10  by the end of the day tomorrow, and I'm going to be entering
11  a scheduling order by tomorrow that covers the whole case.
12  But it will indicate that for one month, any discovery that
13  either side wants to take will be related solely to the
14  issue of the ownership of the patent at issue here and will
15  make any motion or brief regarding what is found in that
16  discovery due within 10 days after the end of that discovery
17  period, but also on that, at that point, after that 30 days,
18  it will be open season on discovery of all sorts.  And we'll
19  have the discovery cutoff that the parties have agreed upon,
20  which I believe was May of 2009.  And we'll get this all out
21  to you in an order.
22          Let me, with the few minutes I have remaining
23  with you, I have a few other quick questions.
24          MR. REINES:  Your Honor, before you move on, can
25  I just raise one clarifying point?

```
 1                 THE COURT:  Yes, very quickly.
 2                 MR. REINES:  Understood.  So the written
 3    discovery, we haven't served written discovery, which has a
 4    30-day time line.  I would ask, I just don't think their
 5    side is going to be prejudiced or maybe couldn't care,
 6    could we make the discovery period 45 days, so we have an
 7    opportunity for doing written discovery in the normal form,
 8    and then, you know, 10 days of depositions, and then make it
 9    60 days after the motion?  And that is just an adjustment of
10    five days on the time to prepare the motion and 15 days on
11    the discovery period so we have time to actually do the
12    written.
13                 THE COURT:  I'm not going to extend it that long
14    unless Mr. Evens tells me he wants to extend it that long.
15    What I would do is I would make written discovery due in
16    20 days and give you the 10 days after that for the rest of
17    it.  But, Mr. Evens, do you have a preference?
18                 MR. EVENS:  Your Honor, I'll keep with the
19    schedule you have set forth.  I think we see exactly the
20    problem I was concerned about, which is we start to agree to
21    one thing and then it keeps getting extended and extended
22    and extended.  So I would stay with the schedule that Mr.
23    Reines proffered and Your Honor has accepted, and we'll live
24    with that.
25                 THE COURT:  Okay.  It's not quite I know what he
```

1  proffered.  I have cut it back.  But I understand what you
2  are saying.  And understand, too, I'm not faulting the
3  plaintiff here in any way.  I'm just trying to balance what
4  I consider to be valid interests on both sides.
5           So, Mr. Reines, we'll make clear in our order
6  instead of the typical 30-day turnaround for responses to
7  written, discovery, it's going to have to be 20 days.  And
8  that will give you the 10-day window to hopefully do
9  whatever else you have to do.
10          MR. REINES:  Thank you.
11          THE COURT:  The next question:  length of trial
12  here.  I believe both parties said a seven-day jury trial.
13  I just want to understand why we think we need a full seven
14  day.  First, Mr. Evens.
15          MR. EVENS:  Your Honor, I guess it's dealing
16  with the abstract.  Our hope is to frankly do the trial
17  within a normal five-day period, but I think we just want to
18  give us some padding.  Five days would be fine.
19          THE COURT:  Okay.  Mr. Reines.
20          MR. REINES:  Yes, that's fine.  Again, it is
21  sort of guessing out into the future.  So if five days is
22  preferred, that's fine.
23          THE COURT:  Okay.  It will be five days is what
24  we'll put it down for.
25          In the scheduling order, you will also see I'm

1  going to add in a tutorial requirement which is something I
2  find helpful for myself.  I'm open to either doing that in
3  court or by submission of DVDs.  Do either counsel have a
4  preference offhand?
5             MR. EVENS:  Your Honor, this is Mr. Mark Evens
6  again.  Our preference I think would be to do it in court,
7  and that way we could address any specific questions the
8  Court might have.
9             THE COURT:  Okay.  Mr. Reines.
10            MR. REINES:  Agreed, Your Honor.
11            THE COURT:  So it will be in court, and I'll
12 pick a date for that.
13            And, finally, the claim construction and
14 summary judgment and summary judgment status conference are
15 all going to be handled by me in this case.  And I don't
16 necessarily have to follow exactly the order in which Judge
17 Sleet does that, so I'll just give you each an opportunity
18 if you want to persuade me, one way or another, if I should
19 do claim construction and get that resolved earlier on,
20 ahead of, or at the same time as summary judgment.  I'm
21 open to any possibilities there.  Mr. Evens, do you have a
22 preference?
23            MR. EVENS:  Your Honor, I think we found that
24 claim construction before summary judgment makes sense.  We
25 would urge that.  And I think that is what we had kind of

1  written into the schedule.
2             MR. REINES:  Agreed, Your Honor.
3             THE COURT:  So both sides would prefer that.
4  Okay.  Well, that is what we will do.
5             So you will be hearing from us.  We'll get an
6  order out today or tomorrow, but you have my rulings on
7  the issues that we've discussed today.
8             Is there anything further?  Mr. Evens, is there
9  anything further?
10            MR. EVENS:  No, Your Honor.  Thank you.
11            THE COURT:  Mr. Reines, anything further?
12            MR. REINES:  Nothing further.  Thank you.
13            THE COURT:  Okay.  Thank you, all.  Good-bye.
14            (The attorneys respond, "Thank you, Your
15  Honor.")
16            (Telephone conference ends at 2:28 p.m.)
17
18
19
20
21
22
23
24
25