## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **FEBIT HOLDING GMBH** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| vs. | ) | **C.A. No. 07-cv-00385-GMS-LPS** |
| | ) | |
| **CODON DEVICES, INC.** | ) | **PUBLIC VERSION** |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |
| | ) | |

## PLAINTIFF FEBIT HOLDING GMBH'S OPPOSITION TO
## DEFENDANT CODON DEVICES, INC.'S MOTION TO DISMISS

P. Clarkson Collins, Jr. (#739)
Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

*Of Counsel*

Mark Fox Evens
Edward J. Kessler
Byron L. Pickard
W. Blake Coblentz
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1100 New York Avenue, NW
Washington, D.C.  20005-3934
(202) 371-2600

*Attorneys for Plaintiff*

Originally filed:  August 29, 2008
Public version filed: September 16, 2008

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................................1

II.  BACKGROUND ................................................................................................3

     A.   PROCEDURAL BACKGROUND.................................................................3

     B.   STATEMENT OF FACTS ............................................................................3

          1.   The '211 Patent Chain of Title.............................................................4

               (a)   febit holding Acquired the '211 Patent from TechnoStart ............................4

               (b)   TechnoStart Acquired the '211 Patent Out of febit AG's bankruptcy ..........5

               (c)   febit AG was the original patentee of the '211 patent...................................6

                     ........................................................................................6

III. ARGUMENT.....................................................................................................7

     A.   SUMMARY ....................................................................................................7

     B.   THE PURCHASE CONTRACTS MEET THE REQUIREMENTS
          OF 35 U.S.C. §261.........................................................................................8

          1.   The Contract Documents Between the Insolvency Administrator and
               TechnoStart Satisfy the Requirements of 35 U.S.C. §261......................8

          2.   The Purchase Contract Between TechnoStart and Neckarburg Satisfies the
               Requirements of 35 U.S.C. §261 ......................................................12

     C.

                     ........................................................................................15

          1.   Applicable Law Requires febit holding, as the Owner of the '211 Patent, to
               Bring Any Suit for Patent Infringement...............................................15

          2.   Codon's Cases Are Inapposite, and It Does Not State the Cases Correctly.........17

IV.  CONCLUSION.................................................................................................20

i

## **TABLE OF AUTHORITIES**

### **Cases**

*Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995) ................................ 15, 16

*Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574 (Fed. Cir. 1991) ............... 9, 10, 11, 15, 16

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24 (1923) .................................... 16

*Enzo APA & Son Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998) ................................... 8, 12

*Intellectual Prop. Dev. Inc. v. TCI Cablevision of Cal., Inc.*,
    248 F. 3d 1333 (Fed. Cir. 2000)............................................................................................... 19

*IpVenture, Inc. v. ProStar Computer, Inc.*, 503 F.3d 1324 (Fed. Cir. 2007) ...................... 9, 10, 11

*Propat*, 473 F.3d 1187 (Fed. Cir. 2007) ............................................................................... 17, 18

*Speedplay, Inc. v. Bebob, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) ............................. 8, 11, 14, 15, 17

*Vaupel Textile KG v. Meccanica Euro Italia, S.A.A.*, 944 F.2d 870 (Fed. Cir. 1991) .................. 12

### **Statutes**

28 U.S.C. § 1927............................................................................................................................ 20

35 U.S.C. §261 ..................................................................................................................... 3, 8, 9, 13

35 U.S.C. §361 ................................................................................................................................. 4

35 U.S.C. §371 ................................................................................................................................. 4

35 U.S.C. §375................................................................................................................................. 4

## I.   PRELIMINARY STATEMENT

Codon Devices, Inc.'s ("Codon") motion is its latest effort in a series of transparent attempts to multiply the costs of this litigation and to avoid confronting the merits of febit holding GmbH's ("febit holding") claims that Codon willfully infringes febit holding's patent rights. febit holding owns U.S. Patent No. 6,586,211 (the "'211 patent"). There is no legitimate dispute about febit holding's ownership. While Codon characterizes the transfer of ownership as "an intricate web of dealings," (Codon's Brief at 1), the chain of title is unremarkable in its simplicity.[1] The inventors assigned the patent to FeBit Ferrarius Biotechnology GmbH ("FeBit Ferrarius"). FeBit Ferrarius became febit AG. After febit AG went into bankruptcy, the insolvency administrator sold the patent to TechnoStart, previously an investor in FeBit Ferrarius and febit AG, which then sold the patent to Neckarburg. Ultimately, Neckarburg changed its name to febit holding.[2]

At the outset of this litigation, harking back to June 2007, Codon professed confusion as to febit holding's ownership of the '211 patent because, Codon claimed, FeBit Ferrarius was listed as the Assignee on the face of the '211 patent, but febit biotech GmbH was the named plaintiff. Trying to avoid a waste of the Court's and the parties' resources and time, febit holding voluntarily provided Codon all of the pertinent '211 patent ownership documents. Those documents showed the uninterrupted chain of title leading to febit holding. The declaration by German attorney Verena Eisenlohr provided an easy road map, explaining the significance and

---

[1] Given that there is no real factual dispute to the chain of title, febit holding filed previously a motion for partial summary judgment on the issue of standing.

[2] febit holding was originally formed under the name "Neckarburg 66. V V GmbH." After acquiring the '211 patent, Neckarburg changed its name to "febit biotech GmbH". (Exs. Z, II, JJ, LL at ¶16, MM at ¶22). On August 6, 2007, febit biotech GmbH changed its name to the present "febit holding GmbH". (Exs. FF, GG, LL at ¶18, MM at ¶23). febit holding and febit biotech GmbH are one and the same entity. (Exs. FF, GG, LL at ¶23).

relationship of the documents.   Codon ignored the documents that addressed its professed confusion and filed its first Motion to Dismiss, claiming that it only wanted "a short and clear statement of the facts that febit biotech actually establishes ownership so that Codon can evaluate them in litigation without wasting its limited resources pursuing unnecessary and costly litigation"[3] - - an odd request given that the documents already voluntarily provided addressed fully Codon's professed need. Docket No. 11.

This Court denied Codon's initial Motion to Dismiss.   Nevertheless, Codon sought expedited discovery on the issue of ownership, contradicting its previously stated position that it "should not bear the hardship and burden of conducting expedited foreign discovery, as well as developing expert discovery,"[4] and then deposed three febit holding witnesses in Germany. Its deposition of these witnesses did not touch on the documents dealing with the '211 patent chain of title. In fact, Codon has never identified any entity with a competing ownership claim to the '211 patent. It does not dispute factually any of the transfers of the '211 patent through which febit holding acquired title. And, Codon does not identify a single witness to dispute factually febit holding's ownership claim.

In its latest motion to dismiss, Codon abandons its previous arguments and presents two new arguments: (1) that two of the transfers of the '211 patent do not meet the requirements of 35 U.S.C. §261 and (2)                **REDACTED**

                                                             As shown below, Codon's arguments lack factual and legal merit. Accordingly, Codon's Second Motion to Dismiss this lawsuit for lack of standing, like Codon's First Motion To Dismiss, should be denied.

---

[3] Codon Devices, Inc.'s Reply Brief In Support Of The Motion To Dismiss Complaint Or, In The Alternative, For A More Definite Statement ("Reply") at 1.

[4] Reply at 8.

2

## II.   BACKGROUND

### A.   PROCEDURAL BACKGROUND

febit holding instituted this action on June 15, 2007, alleging that Codon infringed the '211 patent and asserting that it was and is the owner of the '211 patent. (Complaint (Docket No. 1)). On October 1, 2007, Codon filed its first Motion to Dismiss, arguing a lack of standing, even though febit holding already had provided Codon with the pertinent ownership documents. (Docket No. 11). At the June 9 Hearing, the Court denied Codon's Motion to Dismiss and, at Codon's request, ordered early and expedited discovery relating to ownership.

During the Court-ordered, ownership-focused discovery period, Codon served document requests, interrogatories and requests for admission and timely received responses from febit holding. The ownership related discovery concluded with Codon deposing the three witnesses it requested. On August 4, 2008, Codon filed the instant Motion to Dismiss for lack of standing arguing that certain documents in the '211 patent's chain of title did not meet the requirements of U.S.C. §261 a                                                                              ⅂

### B.   STATEMENT OF FACTS

As set forth below, there is an uninterrupted chain of title through which febit holding acquired the '211 patent. Codon does not dispute factually any of these transfers. Instead, it

---

**REDACTED**

3

presents a highly technical argument that two transactions - - the April 2005 assignment of the patent from TechnoStart to Neckarburg and the December 2004 option purchase between TechnoStart and Christopher Seagon - - lack sufficient writings.

**REDACTED**

### 1.   The '211 Patent Chain of Title

febit holding owns all right, title and interest in and to the '211 patent.

**(a)   febit holding Acquired the '211 Patent from TechnoStart**

On April 18, 2005, febit holding purchased the '211 patent from TechnoStart along with a number of other assets pursuant to a written contract. (Exs. LL at ¶13, MM at ¶¶15-16, AA, BB, CC, DD, EE). Throughout, the purchase contract references expressly that febit holding is acquiring the '211 patent. Annex 2 of that contract identifies the intellectual property assets that TechnoStart transferred to febit holding. That annex contains a row identifying specifically the "Gensynthi" patents with internal file reference numbers of "DE10/WO04" and "21118P" among the transferred assets. (Exs. AA at FEBO 001238; BB at FEBO 001318). Both the "Gensynthi" designation and the internal file reference numbers were used by each owner of the '211 patent (including TechnoStart, febit holding, and febit AG) to signify an entire family of patents. (Exs. LL at ¶¶14-15; MM at ¶¶16-17). This patent family claims priority to a February 18, 2000 Patent Cooperation Treaty ("PCT") application[6] and related German patent applications. The

---

[6] Under the PCT, a party may file an international patent application at a PCT receiving office. 35 U.S.C. §361(a). By so doing, the applicant can later enter the so-called national phase, at which time the earlier international application is examined at a national patent office (here, the U.S.P.T.O.). 35 U.S.C. §371. Any patent issued from the national phase claims priority back to the date of the original international application. 35 U.S.C. §375. Here, the '211 patent claims priority to several German patent applications by virtue of a February 18, 2000

4

Gensynthi family of patents includes the '211 patent.   (Ex. LL at ¶14, MM at ¶16).
Underscoring the fact that the '211 patent was identified expressly among the transferred assets,
the descriptive name given to Gensynthi family of patents in Annex 2, "Procedure for
Manufacture of Polymers," is a near verbatim German description of the title to the '211 patent,
"Method for Producing Polymers." (Ex. BB at FEBO 001318; Ex. KK)

**(b)    TechnoStart Acquired the '211 Patent Out of febit AG's bankruptcy**

For its part, TechnoStart acquired the '211 patent from the insolvency administrator
appointed in connection with a bankruptcy of febit AG, the then owner of the '211 patent.  In
particular, on September 24, 2004, TechnoStart entered into a written agreement with the
insolvency administrator, Christopher Seagon (the Court having authorized Mr. Seagon to sell
febit AG's assets), acquiring certain febit AG[7] assets, including an option to acquire the '211
patent. (Exs. L-Q, LL at ¶¶8-13, MM at ¶¶8-11, NN at ¶8-9).  Section 7 of the purchase contract
states "[t]he vendor [insolvency administrator] grants the purchaser [TechnoStart] the exclusive
right to acquire the patents and patent registrations listed in Annex 4 [the '211 patent, among
others]. . . ." (Exs. L, M).  In a December 17, 2004 letter, TechnoStart's Michael Mayer timely
exercised the purchase option stating "I hereby declare that [TechnoStart] exercises the purchase
option . . .." (Exs. N, O).  The insolvency administrator later confirmed TechnoStart's exercise of
the option by letter dated January 17, 2005, stating: "[f]ollowing *the timely exercise* of the option
by your company, and the receipt of the purchase price into our trust account in the meantime, I

---

international application filed under the PCT.  The face of the '211 patent identifies these
German patent application numbers and the PCT application number. (Ex. KK).

[7] febit AG is the same entity as FeBit Ferrarius, the original patentee listed on the face of
the '211 patent.  On May 4, 2001, the shareholders of FeBit Ferrarius resolved to change the
legal form of the company to a stock corporation (*Aktiengesellschaft*) with the name "febit AG,"
(Exs. G, H, MM at ¶4, NN at ¶6).

5

am sending you an original document regarding the Gensynthi patent rights." (Exs. P, Q, LL at ¶11, MM at ¶13, NN at ¶9). Significantly, Codon never sought to examine Messrs. Seagon or Mayer about the TechnoStart transactions.

(c)     febit AG was the original patentee of the '211 patent.

febit AG, formerly known as FeBit Ferrarius, acquired ownership of the '211 patent when it took an assignment from the original inventors of the United States patent application that resulted in the '211 patent.[8]  (Exs. KK, LL at ¶3).

**REDACTED**

---

[8] Notably, this assignment of the '211 patent bears the same internal file reference, "21118P", as appears in Annex 2 of the contract between TechnoStart and Neckarburg. (Ex. KK at FEBO 001527).

**REDACTED**

### III.   ARGUMENT

**A.   SUMMARY**

Codon advances two razor-thin arguments that febit holding does not have standing to maintain this suit.  First, Codon claims there is not sufficient written documentation showing the

---

**REDACTED**

transfers of title of the '211 patent to satisfy the requirements of 35 U.S.C. §261.[11]

**REDACTED**

. Codon's arguments lack merit and are built on an

overreaching use of case law and a disingenuously selective recitation of the factual record.

Indeed, the factual record and the cases cited by Codon demonstrate that there is no legitimate

dispute that febit holding owns the '211 patent.

**B.     THE PURCHASE CONTRACTS MEET THE REQUIREMENTS OF 35 U.S.C. §261.**

Codon has distilled its concerns over the chain of title of the '211 patent to two purchase

contracts: the contract between the insolvency administrator and TechnoStart and the contract

between TechnoStart and Neckarburg (later febit biotech GmbH).[12]

**1.     The Contract Documents Between the Insolvency Administrator and TechnoStart Satisfy the Requirements of 35 U.S.C. §261**

Codon argues that the Federal Circuit "requires that a party alleging to own a patent must

produce a written instrument documenting the transfer or proprietary rights in the patents."

(Codon Brief at 2) (citing *Speedplay, Inc. v. Bebob, Inc.,* 211 F.3d 1245 (Fed. Cir. 2000) and

*Enzo APM & Son, Inc. v. Geapag, A.G.,* 134 F.3d 1090, 1092 (Fed. Cir. 1998)). The writings

produced by febit holding show a clear transfer of title to the '211 patent from the insolvency

administrator to TechnoStart and thus easily satisfy the Federal Circuit's test. The contract

between TechnoStart and the insolvency administrator contains an explicit provision, Section 7,

giving TechnoStart an option to purchase the '211 patent. (Exs. L and M). TechnoStart properly

---

[11] This argument, besides being factually and legally incorrect, is tinged in irony since Codon vigorously opposed febit holding's Motion For Partial Summary Judgment in part *because of the significant number of documents supporting febit holding's ownership of the '211 patent.* (Codon's August 6, 2008 Letter to Chambers).

[12] As noted above, Codon did not seek to examine anyone about either of these transactions.

8

exercised the option. (Exs. N, O). The insolvency administrator accepted the exercise and the payment and transferred ownership. (Exs. P, Q).

Despite these clear writings, Codon contends that the documents concerning TechnoStart's option purchase of the '211 patent from the insolvency administrator Mr. Seagon do not satisfy the requirements of 35 U.S.C. §261, arguing that no writing shows the transfer of the '211 patent to TechnoStart from the insolvency administrator. (Codon Brief at 2). As shown above, Codon's statement is not correct. Codon also incorrectly argues that febit holding *admits* that none of the three documents is itself an assignment, but that the three documents together "collectively compromise the contract." *Id.* This statement is not correct. And, Codon incorrectly argues that the three documents "Even taken together . . . do not show an assignment." (Codon Brief at 3.) That statement is also not correct.[13]

Codon does not cite a single case involving a challenge to a purchase option contract for a patent as is at issue here. Instead, Codon cites two cases, *Arachnid* and *IpVenture*,[14] for the unremarkable proposition that a promise to make a future assignment does not constitute an actual present assignment of a patent. Neither *Arachnid* nor *IP Venture* involve facts present in this case. Both cases involve promises to make a future assignment of patents for inventions that might later be conceived. Further, Codon omits any mention of the Federal Circuit's emphasis in those cases on considering evidence of the intent and conduct of the parties in addition to the language of the agreement. *See Arachnid*, 939 F.3d at 1580; *IpVenture*, 503 F.3d at 1326.

---

[13] febit holding refers the Court to its actual responses to Codon's Request for Admissions, attached to Codon's Brief as Exhibit 1, rather than relying on Codon's mischaracterizations. febit holding's responses properly address the writings that show TechnoStart exercised its option and obtained the '211 patent.

[14] *Arachnid, Inc. v. Merit Industries, Inc.,* 939 F.2d 1574 (Fed. Cir. 1991), *IpVenture, Inc. v. ProStar Computer, Inc.*, 503 F.3d 1324 (Fed. Cir. 2007)

9

In *Arachnid,* the parties to the contract actually disputed whether a transfer of patent ownership occurred. The *Arachnid* plaintiff sued on a patent that it contended had been assigned by its contractor, IDEA. Previously, IDEA had agreed that any *future* inventions it conceived "shall be the property of [Arachnid], and all rights thereto *will be assigned*" to Arachnid. *Arachnid,* 939 F.2d at 1580-81 (emphasis added). The Federal Circuit rejected Arachnid's argument that this provision was a self-executing transfer of the patent, noting the importance of the fact that the parties to the contract disputed the effect of that transfer provision:

> Such a hindsight view ignores a key fact in this case, namely, that ...a bona fide dispute existed as to whether IDEA had in fact conceived the invention of the '781 patent while under contract to Arachnid. That dispute was considered sufficiently genuine to be submitted to a jury, notwithstanding the jury finding in Arachnid's favor.

*Id.* Unlike the case in *Arachnid,* here neither the insolvency administrator nor TechnoStart contest the sale of the '211 patent.

In *IpVenture,* the plaintiff sued on a patent that it acquired from the inventor. The defendants argued that the transfer was ineffective because the inventor had assigned the patent to Hewlett-Packard ("HP") under a prior employment agreement. That employment agreement contained language describing a future assignment: the inventor "agree[s] to assign [Proprietary Developments] to HP." *IpVenture,* 503 F.3d at 1326. HP executed a document after the litigation had commenced in which it acknowledged that it "never [had] any legal or equitable rights" to the patent. *Id.* at 1326. The Federal Circuit concluded that the district court erred in dismissing IpVenture's case and vacated the dismissal. In criticizing the district court's dismissal, the Federal Circuit explained: "The district court should have considered [HP's] statement, although it was written after this suit was filed, for it serves to remove any uncertainty arising from the language of the employment agreement." *Id.*

10

Taken together, *Arachnid* and *IpVenture* establish that in assessing whether a contemporaneous assignment has been made, district courts should consider both the language of the parties' agreement and other evidence of their intent *(i.e.,* did the parties dispute the assignment, as in *Arachnid,* or did they agree on the effect of the contract, as in *IpVenture).*

The Federal Circuit's decision in *Speedplay* does not support Codon's argument because the court found the contract was sufficient to effect an assignment where its language provided that all inventions "'shall belong exclusively to [Speedplay], and [Bryne] hereby conveys, transfers and assigns to [Speedplay] . . . all right, title and interest in and to Inventions." *Speedplay,* 211 F.3d at 1253. Underscoring the minimal requirements for formality that are required by 35 U.S.C. Section 261, the Federal Circuit held that nothing further was required of the parties; "the transfer of title would occur by operation of law." *Id.*

TechnoStart, like Speedplay, has written instruments documenting the transfer of property rights in the patent at issue. *Id.* at 1250. As in *Speedplay,* transfer of title occurs by operation of law. The contract provides TechnoStart with an option to obtain the '211 patent and states the means by which TechnoStart can exercise its option: "The purchase option...can be exercised by the purchaser only by a written declaration issued to the vender." (Exs. L, M). TechnoStart's exercise of the option is unequivocal: "I *hereby* declare that TechnoStart Consulting Firm for Investment Fund GmbH *exercises* the purchase option..." (Exs. N, O). As in *Speedplay,* the language of the contract and the letter exercising the option make clear that at the moment of the exercise the assignment is complete, nothing further is required.

What is more, the evidence of the parties' intent surrounding this transaction supports this conclusion. Mr. Seagon confirmed the exercise of the option in a separate letter. (Exs. P, Q) The parties to the sale do not dispute that TechnoStart's exercise of the purchase option effected

11

an assignment of the '211 patent. The declaration of Mr. Mayer removes any uncertainty that TechnoStart took an assignment at the time it sent the exercise letter. (Ex. MM ¶¶11-13). In short, the language of the contract and exercise letter plus the evidence concerning the parties' intent demonstrates an assignment occurred.

### 2. The Purchase Contract Between TechnoStart and Neckarburg Satisfies the Requirements of 35 U.S.C. §261

Codon contends that the purchase contract between TechnoStart and Neckarburg does not satisfy 35 U.S.C. §261 because the U.S. patent number for the '211 patent is not listed explicitly in Annex 2 of the contract.[15] (Codon Brief at 4.) Codon's argument misstates the law and overlooks the contract language and clear intent of the parties.

In determining whether the contract referenced the patent, the court should be guided by the touchstone of contract interpretation: the substance of the intention of the parties and the language of the grant. *Vaupel Textile KG v. Meccanica Euro Italia, S.A.A.*, 944 F.2d 870, 873 (Fed. Cir. 1991). Codon's reliance on the Federal Circuit's decision in *Enzo APA & Son Inc. v. Geapag A.G.*, 134 F. 3d 1090, 1092 (Fed. Cir. 1998)[16] is misplaced. There, the Federal Circuit reversed the trial court's decision that, *inter alia,* Geapag, a non-exclusive licensee, had standing to sue Enzo for patent infringement. The facts showed that the pertinent license agreements did not provide Geapag either explicitly or implicitly with rights to the patent-in-suit. *Id.*, 134 F.3d at 1092.

This is not the case here. The purchase contract between TechnoStart and febit holding expressly transferred all rights to the '211 patent. The purchase contract contains express

---

### REDACTED

[16] Codon's Brief at 4.

12

language that makes abundantly clear the purpose of the parties: transfer of ownership of the '211 patent to febit holding. First, in the Preliminary Remarks section, the contract acknowledges that TechnoStart obtained certain assets from the insolvency administrator, including the '211 patent, and intended to assign those same assets to the purchaser (ultimately febit holding). Second, the purchase contract replaced a prior Memorandum of Understanding, attached as an exhibit to the contract, that expressly addressed the transfer of the '211 patent. (Exs. AA, BB §7, Appendix 2). Third, lest there be any doubt that the '211 patent was transferred, the purchase price in the transaction between TechnoStart and Neckarburg was identical to the purchase price in the contract between TechnoStart and Mr. Seagon.[17] These transactions conveyed the same patents, including the '211 patent. In short, the contract explicitly referenced the '211 patent. And, at a minimum it made an implicit reference. In either case the law is satisfied. There can be no legitimate doubt that the '211 patent was conveyed to febit holding.[18]

Codon ignores the purchase contract and argues that solely because Annex 2 of the purchase agreement does not explicitly reference the U.S. Patent number for the '211 patent, the contract does not meet the writing requirements of 35 U.S.C. §261. Codon's argument misstates Annex 2 in addition to ignoring the totality of the contract and the intent of the parties. Annex 2

---

**REDACTED**

[18] As further evidence that TechnoStart obtained the '211 patent from Mr. Seagon, the contract between TechnoStart and Neckarburg includes in its Annex 5 two separate contracts between TechnoStart and a company named "perspective" that specifically referenced TechnoStart's interest in finding a purchaser for its '211 patent. (Exs. AA, BB). Of note, among those listed as parties interested in purchasing the '211 patent from TechnoStart were Synbio Corporation, Codon's predecessor, and Flagship Ventures, an investor in Synbio Corporation and Codon. Because TechnoStart was not transferring assets to the purchasers identified by perspective, Section 8 of the agreement contains an indemnification by Neckarburg for any obligations due perspective by TechnoStart.

expressly lists the PCT application and the German Patent Applications to which the '211 patent claims priority. Annex 2 further identifies the internal file reference numbers "DE10/WO04" and "21118P" and the "Gensynthi" patent family as those transferred. The parties to the contract had a clear understanding that the '211 patent was included by the use of those terms. (Exs. LL ¶15, MM at ¶17). Given the detail provided in Annex 2 and the contract language, there can be no legitimate doubt that the '211 patent was conveyed to febit holding.

Finally, the evidence shows that any failure to make explicit mention of the U.S. patent number in Annex 2 was the result of a scrivener's error in the spreadsheet. The U.S. patent number for the '211 patent was mistakenly excluded from Annex 2, even though other references to the patent remained on the annex. (Ex. MM at ¶18). In *Speedplay*, the Federal Circuit dealt with a similar scrivenor error issue. There, the plaintiff relied upon a Contribution and License Agreement (CLA) with the inventor to show that it owned the '778 patent. *Speedplay*, 211 F.3d at 1250. The definition section, of the CLA, however, cited a different patent number than the '778 patent. *Id.* The Federal Circuit held that it was apparent that the '778 patent was included, as evidenced by other portions of the CLA. *Id.* at 1250-51. The court agreed with *Speedplay* "that despite the patent number erroneously set forth in the CLA, the explicitly defined Licensed Patents must be construed to mean the '778 and related foreign patents." *Id.* at 1251.

Similarly, febit holding relies on the purchase contract between TechnoStart and Neckarburg, including the supporting documents, *e.g.*, the contract between TechnoStart and the insolvency administrator, to show the parties' intent to transfer the '211 patent. As in *Speedplay*, other portions of the purchase contract and its appendices (as outlined above), in addition to a fair reading of Annex 2, evidence that the parties clearly intended to include the '211 patent. Although, Annex 2 mistakenly did not reference specifically the '211 patent, it listed the priority

14

applications to the '211 patent, including the PCT. Thus, as was the case in *Speedplay*, this Court should construe the purchase contract to include the '211 patent.

REDACTED

1.    **Applicable Law Requires febit holding, as the Owner of the '211 Patent, to Bring Any Suit for Patent Infringement.**

The law is clear. A party's standing to sue on a patent "is ordinarily an incident of legal title to the patent." *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995).[19] The Federal Circuit's opinion in *Abbott* undercuts Codon's argument. In that case, the licensee although it had an exclusive license, did not retain rights in the patent sufficient to demonstrate ownership; the licensor retained all rights of ownership and even rights in any litigation brought by the licensee. *Id*, 47 F.3d at 1132. Therefore, the licensee was not the proper party to bring that action.

REDACTED

As recognized by the Federal Court in *Arachnid*, a case relied on by Codon, but which does not support Codon's position:

> [A] bare licensee, who has no right to exclude others from making, using or selling the licensed products, has no legally recognized interest that entitles it to

---

[19] While *Abbott Laboratories* -- the leading case on standing to sue for patent infringement -- is referenced in cases cited by Codon, Codon surprisingly does not mention this case.

15

> bring or join an infringement suit." *Id.* Further, the Supreme Court has held "[w]ith a single exception the plaintiff in an action at law *must* be the person or persons in whom the legal title to the patent resided at the time of the infringement."

*Arachnid, Inc.*, 939 F.2d at 1578. (quoting *Crown Die & Tool Co. v. Nye Tool & Mach. Works*,

261 U.S. 24 (1923)).

## REDACTED

The facts show that Codon's argument has no merit.

## REDACTED

**REDACTED**

2. **Codon's Cases Are Inapposite, and It Does Not State the Cases Correctly.**

The cases cited by Codon are not on point, and Codon misreads them. Codon does not cite a single case where a court found that a licensor lacked standing because it transferred all substantial rights. Codon's reliance on *Propat*, 473 F.3d 1187 (Fed. Cir. 2007) is misplaced. Codon's Brief at 7-8. Propat was a licensee, not the owner of the patent. For that reason, it stands more closely akin to febit synbio, not to febit holding, the actual owner of the '211 patent. In *Propat*, the Federal Circuit found that the licensee did not have all substantial rights to the patent-in-suit because the licensor continued to hold legal title to the patent and was responsible for its maintenance. Thus the licensee did not have all substantial rights to the patent-in-suit. *Id.*

**REDACTED**

17

**REDACTED**

Further, the Federal Circuit found the fact that the licensee could lose its interest in the patent for failure to perform was additional evidence that all substantial rights in the patent were *not* transferred.

**REDACTED**

18

**REDACTED**

As it did with *Propat*, Codon also turns the *Intellectual Property* case on its head. (Codon Brief at 8)(citing *Intellectual Prop. Dev. Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2000)). *Intellectual Property* held that the licensor did *not* transfer all substantial rights in the patent to the licensee. Indeed, a key holding of that case is that unless the transferee obtains an unfettered sole right to sue infringers then the transferee has not obtained all substantial rights in the patent and cannot maintain standing to sue. *Id.*

**REDACTED**

**REDACTED**

## IV. CONCLUSION

For the foregoing reasons, febit has standing before this Court. Codon should never have filed this motion. It has misstated the facts and the law. The ownership of the '211 patent was adequately addressed before Codon filed its Motion to Dismiss. It is both a waste of the Court's time and febit's resources to address this motion. Accordingly, the Court should award febit holding its reasonable attorneys' fees and cost pursuant to 28 U.S.C. §1927.

Date: August 29, 2008      By:

P. Clarkson Collins, Jr. (#739)
Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

Mark Fox Evens
Edward J. Kessler
Byron L. Pickard
W. Blake Coblentz
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1100 New York Avenue, NW
Washington, D.C. 20005-3934
(202) 371-2600

*Attorneys for Plaintiff*

20