# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FEBIT HOLDING GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-385 (GMS) (LPS) |
| | ) | |
| CODON DEVICES, INC., | ) | **REDACTED -** |
| | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

## CODON DEVICES, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT OF FEBIT HOLDING GMBH

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Defendant
Codon Devices, Inc.*

*Of Counsel*:

Edward R. Reines
Nicholas A. Brown
Rip J. Finst
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

September 11, 2008 - Original Filing Date
September 18, 2008 - Redacted Filing Date

# TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ....................................................................................................... 1

II. TWO DEFECTS IN THE CHAIN OF TITLE ARE FATAL TO FEBIT
   HOLDING'S CLAIM OF OWNERSHIP OF THE '211 PATENT ........................................ 2

   A.   The Alleged Assignment To TechnoStart Never Occurred ................................. 2

   B.   The Alleged Assignment To Neckarburg Never Mentions The '211 Patent ...................... 5

III. FEBIT HOLDING HAS DIVESTED ITSELF OF ANY STANDING TO
    MAINTAIN SUIT THAT IT HAD ................................................................................ 8

IV. CONCLUSION ....................................................................................................... 10

## TABLE OF AUTHORITIES

CASES PAGES

*Abbott Laboratories v. Diamedix Corp,*
 47 F.3d 1128 (Fed. Cir. 1995)...................................................................9-10

*Arachnid, Inc. v. Merit Industries, Inc.,*
 939 F.2d 1574 (Fed. Cir. 1991)...................................................................3-5

*Enzo APA & Son, Inc. v. Geapag A.G.,*
 134 F.3d 1090 (Fed. Cir. 1998).....................................................................3, 5

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.,*
 248 F.3d 1333 (Fed. Cir. 2000).........................................................................9

*IpVenture, Inc. v. proStar Computer, Inc.,*
 503 F.3d 1324 (Fed. Cir. 2007)...................................................................3-5

*Myers Investigative & Sec. Servs. v. United States,*
 275 F.3d 1366 (Fed. Cir. 2002)........................................................................2

*PIN/NIP, Inc. v. Platte Chem. Co.,*
 304 F.3d 1235 (Fed. Cir. 2002).........................................................................2

*Propat Int'l Crop. v. Rpost, Inc.,*
 473 F.3d 1187 (Fed. Cir. 2007).....................................................................8-9

*Six Wheel Corp. v. Sterling Motor Truck Co. of Cal.,*
 50 F.2d 568 (9th Cir. 1931) .........................................................................8-9

*Speedplay, Inc. v. Bebop, Inc.,*
 211 F.3d 1245 (Fed. Cir. 2000)...............................................................Passim

STATUTES

35 U.S.C. § 261 ..................................................................................1, 3, 5, 7

## I.   INTRODUCTION

Subject matter jurisdiction is a necessary threshold issue in every case.  Where there is reason to believe that there may be a defect in the plaintiff's standing to sue, it makes sense for the parties to present the issue to the court as quickly and efficiently as possible, so the court can properly evaluate whether it has jurisdiction to proceed.

Here, febit holding bears the burden of proving that it owns the '211 patent and has standing to sue Codon for its alleged infringement.  From the outset of the case, Codon has pointed out what appear to be defects in febit holding's ownership claim.  As a result, febit holding has had ample opportunity to present evidence that could establish its ownership of the '211 patent and its standing to sue.  The documentary record is now clear, undisputed, and apparently complete.  Thus, all that remains is for the Court to decide as a matter of law whether this record establishes that febit holding has standing to sue.

It does not.  febit holding claims ownership of the '211 patent through a chain of title that is broken in two places.  First, there is an alleged transfer from a German bankruptcy proceeding to a company called TechnoStart.  There is no dispute that the only writings evidencing this transfer are ████████████████████████.  As Codon explained in its opening brief, ████████████ is not an assignment, and ████████████████ ████████ do not change that fact.  Regardless of what these documents achieve as a matter of German contract law, they do not constitute the written assignment required by the United States patent law.  Second, there is an alleged transfer of the '211 patent from TechnoStart to Neckarburg (febit holding's predecessor).  There is no dispute that ████████████████ ███████████████████████████████████████ febit holding claims this is a mere scrivener's error, and offers various explanations, but none of them are legally adequate to excuse the failure to comply with the statutory requirement of 35 U.S.C. § 261 ("Applications for patent, patents or any interest therein, shall be assignable in law by an instrument in writing.").

1

Finally, even if febit holding had properly received a written assignment to the '211 patent, it could not maintain this suit because it has granted a license to one of its subsidiaries under terms that split any rights to the '211 patent in a way that divests febit holding of any standing to sue that it had.

In sum, the Court needs to evaluate these three apparent defects in febit holding's ownership claim and resolve for itself the threshold question of whether febit holding has nonetheless established its standing to sue. *See Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (standing is a "threshold jurisdictional issue"); *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002) ("court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits").

## II. TWO DEFECTS IN THE CHAIN OF TITLE ARE FATAL TO FEBIT HOLDING'S CLAIM OF OWNERSHIP OF THE '211 PATENT

### A. The Alleged Assignment To TechnoStart Never Occurred

febit holding has presented three documents that it claims establish an assignment to TechnoStart from the insolvency administrator of febit AG. Those documents are



Opp. at 8-9. Despite having had ample opportunity, febit has presented no other documents.

There is no dispute about the facts. Technostart entered into

There are no other relevant writings. Thus, the only

---

[1]    Unless otherwise noted, references to "Exh." are to the exhibits attached to the Declaration Of Rip Finst In Support Of Defendant Codon Devices, Inc.'s Opening Brief (filed Aug. 4, 2008).

question is whether or not these three ███████████████████████████

███████—qualify as "a written instrument documenting the transfer of proprietary rights in the

patent." *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000); *Enzo APA & Son,*

*Inc. v. Geapag A.G.*, 134 F.3d 1090, 1092 (Fed. Cir. 1998); 35 U.S.C. § 261.

   febit holding does not argue that the ███████████████ is itself an

assignment. Indeed, febit holding acknowledges that *Arachnid*[2] and *IpVenture*[3] stand for the

"proposition that a promise to make a future assignment does not constitute an actual present

assignment of a patent." Opp. at 9. febit does not dispute that the ██████████████ is no

more than a promise to make a future assignment. *Id.* at 8-9.

   Instead, febit holding appears to argue that ████████████████████

████████████████████ is itself a written assignment. Opp. at 9. According to

febit holding, ████████████████████████████████

████████████████████ *Id.* at 9 (emphasis added).[4] The problem with this

argument is that febit holding never explains how ███████████████████████

could have "transferred ownership" when it lacks any language that would effect such a transfer.



---

[2] *Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574 (Fed. Cir. 1991).

[3] *IpVenture, Inc. v. proStar Computer, Inc.*, 503 F.3d 1324 (Fed. Cir. 2007).

[4] This contention is different from febit holding's response to Codon's requests for admission, where it wrote that "<u>febit denies that [this letter] is itself an assignment of the Patent-in-Suit</u>, but admits that [this letter] is notice that the insolvency administrator accepted TechnoStart's timely exercise of the option to acquire the Patent-in-Suit and confirmed that TechnoStart had paid the purchase price." Exh. 1.

Exh. 4 at FEBO 001135. ███████ lacks any language effecting a transfer of ownership. It merely acknowledges that ██████████████████████████████████████ At most, this shows that the insolvency administrator had incurred a contractual obligation to assign the '211 patent. But as febit has acknowledged, the law is clear that an agreement to assign is not an assignment. *Arachnid*, 939 F.2d at 1580-81; *IpVenture*, 503 F.3d at 1327.

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████ febit holding's simple assertion that ███████ "transferred ownership" does not make it so.

febit holding also appears to argue that even if ████████ is not an assignment ████
████████████████████████████████████████████
███████████ Specifically, febit holding argues that ██████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████ Opp. at 11. But the facts of *Speedplay*[5] are not like the facts here, and do not suggest that an assignment occurred in this case. In *Speedplay*, the written agreements between Speedplay and Mr. Bryne stated that "[a]ll inventions covered by the [agreement] 'shall belong exclusively to [Speedplay], and [Bryne] hereby conveys, transfers and assigns to [Speedplay] ... all right, title and interest in and to Inventions.'" *Speedplay*, 211 F.3d at 1253. The Federal Circuit concluded that the agreement was a present assignment, not a "promise to assign a future invention," because the language showed an assignment of rights. *Id.*

---

[5]     211 F.3d 1245.

Here, ███████████████████████████████████████████

████████████████████████ As a result, the facts here are much closer to the facts in

*Arachnid,* where there was contractual obligation to assign, not an actual assignment.  The

dispositive distinction was articulated succinctly in *IpVenture:*

> [T]he agreement in this case tracks that of *Arachnid,* not that of *FilmTec.*  The
> *FilmTec* usage "does hereby grant" is not present; nor is the *Speedplay* usage
> "hereby ... assigns."  Instead, the Hewlett-Packard agreement says "agree to
> assign." ... While that agreement is an agreement to assign, such interest in the
> '235 patent <u>must be implemented</u> by written assignment.

*IpVenture,* 503 F.3d at 1327 (emphasis added).  In light of this law, the Court must decide

whether the three documents at issue here—none of which contain any language of present

conveyance or present assignment—show an actual assignment, or an agreement to assign that

"must be implemented" by a subsequent written assignment.

**B.    The Alleged Assignment To Neckarburg Never Mentions The '211 Patent**

febit holding does not dispute that the only document that could be a written

assignment from TechnoStart to Neckarburg is ████████████████████████████████

████████  *See* Opp. at 12. ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ febit holding acknowledges all this.

Opp. at 14.  Thus, the facts are not in dispute.

The sole question is a legal one: whether the ████████████████████ meets the

written assignment requirement of 35 U.S.C. § 261, despite ████████████████████

████████████████████████████████████████ The law on that question is clear: it does not.  *See*

*Enzo APA & Son,* 134 F.3d at 1092 ("By its terms, the J & K-Geapag License does not extend,

---

[6] Exh. 5, § 1(2) (FEBO 001302) ("The vendor ... sells to the undertaking purchaser the following
assets ... (2) Patents, brand, utility models, name rights, other intellectual property rights and
registrations in relation to these, <u>insofar as theses are contain in Appendix 2.</u>").

either implicitly or explicitly, to related or corresponding foreign patent applications or any

patents maturing therefrom. In fact, it is specifically limited to the Italian applications and two

other Italian patent applications listed on the face of the agreement.")



     febit holding offers various explanations in support of its positions that the ██████

██████ agreement somehow transferred "all rights to the '211 patent" to Neckarburg without ever

mentioning it. Opp. at 12-14. febit holding's primary argument is that the lack of any explicit

mention of the '211 patent in ████████████████ is unimportant and can be disregarded

because it "was the result of a scrivener's error in the [Annex 2] spreadsheet." Opp. at 14. This

position is untenable for a number of reasons. To begin with, it is undermined by ████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████ Everything about the ██████████████ suggests

that it was carefully drafted to set forth precisely what was intended to be transferred. Exh 5 at

FEBO 001318. ███████████████████████████████████████████████

As a result, the agreement is very different from the agreement in the *Speedplay* case that febit

holding relies on for the proposition that a court can ignore a scrivener's error. In *Speedplay*, the

agreement contained a definition of "Licensed Patents" that referred to a patent that was

completely unrelated to transaction described in the remainder of the agreement. Speedplay, 211

F.3d at 1250-51. The agreement was expressly about a clipless bicycle pedal system, and

contained other express references to the patent-in-suit as well to the named inventors of the

patent-in-suit. *Id*. Thus, in *Speedplay*, it was readily apparent from the agreement itself that the

single reference to a completely unrelated patent was a scrivener's error. The circumstances here

are entirely different, because ██████████████████████████████████████████████

██████████████████

     febit holding also argues that ████████████████████████████████

████████ recite that "the contract acknowledges that TechnoStart obtained certain assets from

the insolvency administrator, <u>including the '211 patent.</u>" Opp., p. 13.  This is incorrect. ████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

████ This paragraph is thus completely different from the paragraphs in the *Speedplay*

contract, where there were specific references to both the correct patent number and the name of

its inventor.  In *Speedplay*, those references made clear that the single reference to a completely

unrelated patent in the licensing clause was a scriveners' error.  In contrast, here ████████

████████████████████████████████████████

████ Finally, febit holding argues that one can infer that the '211 patent was included

in ██████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████

████ In sum, there is no dispute that ██████████████████
████████████████████ and there is no clear evidence that this was a

mere scrivener's error.  The Court must evaluate whether febit holding has nonetheless

established that this agreement assigned the '211 patent to Neckarburg in a manner that satisfies

35 U.S.C. § 261.

### III.   FEBIT HOLDING HAS DIVESTED ITSELF OF ANY STANDING TO MAINTAIN SUIT THAT IT HAD

Even if febit holding had properly received a written assignment to the '211 patent, it still may not have standing, because it has granted a license to one of its subsidiaries under terms that split any rights to the '211 patent in a way that divests it of any standing it had.

febit holding does not dispute that, after it filed its lawsuit against Codon, it

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████  Thus, the only issue is

████████████████████████████████████████  whether as a matter of law the rights granted to febit synbio by febit holding preclude febit holding from maintaining this suit.

febit holding, of course, insists that it has retained the right to maintain this lawsuit. However, febit holding's entire argument is predicated on a titles and labels approach that focuses on who is the "patentee" or "licensor," and who is the "licensee." In other words, febit holding insists that because it is the "owner and licensor," it "has standing and is the proper plaintiff to maintain this suit." Opp. at 15-16. This titles and labels approach is wrong. The Federal Circuit's standing analysis has always focused on the respective rights allocated to each party under the agreement, and not on the parties titles. *E.g., Propat Int'l Crop. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007); *Speedplay, Inc.*, 211 F.3d at 1252; *see Six Wheel Corp. v. Sterling Motor Truck Co. of Cal.*, 50 F.2d 568, 571 (9th Cir. 1931) ("[T]he label that parties may give themselves is not conclusive; the actual legal effect of the agreements through which they seek to be clothed with authority must be determined by the court...."). The Federal Circuit's approach of focusing on the actual bundle of rights allocated to each party, rather than their titles, makes sense because if it were otherwise, sophisticated parties could manipulate the outcome of the standing analysis simply by restructuring their transactions.

Here, ████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████

The Federal Circuit has made clear that control over litigation is a critical component of the bundle of rights a party needs to have in order to maintain suit. For example, in *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2000), the Federal Circuit found that an obligation to consult with and obtain consent from a third party about any patent litigation seriously crippled the plaintiff's patent rights and removed its standing to sue. Similarly, in *Propat* the Federal Circuit found that the right to veto litigation decisions "constitutes significant restriction on [a party's] interest in the patent" and therefore precludes standing to sue. *Propat*, 473 F.3d at 1191. febit holding's only real attempt to distinguish these cases is based on its misguided argument that the titles and labels of the parties matters to the standing analysis. *E.g.*, Opp. at 17 ("Codon's reliance on *Propat* ...is misplaced [because] Propat was a licensee, not the owner of the patent."). However, as explained above, that is not correct. What matters to the standing analysis is the actual bundle of rights allocated to each party. Here, because febit holding has ████████████████████████████████
██████████████████████ the Court may properly conclude that febit holding does not have standing.

*Abbott*, which febit holding relies upon, does not support febit holding's position. There, the patent owner had the right to prosecute an infringement action even if the licensee declined to do so. *Abbott Laboratories v. Diamedix Corp*, 47 F.3d 1128, 1132 (Fed. Cir. 1995). febit holding does not enjoy such freedom. ███████████████████████████

████████████ Thus, febit holding -- like the licensee in *Abbott* – "does not enjoy the right to indulge infringements," which accompanies a right to sue. *Id.*

████████ febit holding also argues that ████████████████████

████████████████████████████ s inoperative here because it is ████████████████████

████████████████████████████ Opp. at 7, 18.

The problem with this argument is that its premise is wrong. ████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████

## IV.    CONCLUSION

For the reasons set forth in Codon's opening brief and herein, Codon's motion to dismiss should be granted and febit holding's Amended Complaint dismissed with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Defendant*
*Codon Devices, Inc.*

10

*Of Counsel:*

Edward R. Reines
Nicholas A. Brown
Rip J. Finst
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

September 11, 2008 - Original Filing Date
2485492
September 18, 2008 - Redacted Filing Date

11

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on September 11, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Mary Matterer, Esquire
MORRIS JAMES

I also certify that copies were caused to be served on September 11, 2008 upon the following in the manner indicated:

**BY ELECTRONIC MAIL
and HAND DELIVERY**

Mary Matterer, Esquire
MORRIS JAMES
500 Delaware Avenue
Suite 1500
Wilmington, DE  19801

**BY ELECTRONIC MAIL
and FIRST CLASS MAIL**

Mark Fox Evens, Esquire
Edward J. Kessler, Esquire
W. Blake Coblentz, Esquire
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1100 New York Avenue, NW
Washington, DC  20005-3934

Jack B. Blumenfeld (#1014)

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Mary Matterer, Esquire
> MORRIS JAMES LLP

I also certify that copies were caused to be served on September 18, 2008 upon the following in the manner indicated:

**BY ELECTRONIC MAIL**
**and HAND DELIVERY**

Mary Matterer, Esquire
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE  19801

**BY ELECTRONIC MAIL**

Mark Fox Evens, Esquire
Edward J. Kessler, Esquire
W. Blake Coblentz, Esquire
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1100 New York Avenue, NW
Washington, DC  20005-3934

*/s/ James W. Parrett, Jr.*
_____
James W. Parrett, Jr. (#4292)